## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| STEPHANIE WOZNICKI,<br>on behalf of herself and all others<br>similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RAYDON CORPORATION, DONALD<br>K. ARIEL, DAVID P. DONOVAN, THE<br>ESOP COMMITTEE OF THE RAYDON<br>CORPORATION EMPLOYEE STOCK<br>OWNERSHIP PLAN, LUBBOCK<br>NATIONAL BANK,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 6:18-cv-2090 |

## CLASS ACTION COMPLAINT - INJUNCTIVE RELIEF SOUGHT

## I.    INTRODUCTION

1.     Plaintiff Stephanie Woznicki brings this class action against Defendants Raydon Corporation, Donald K. Ariel, David P. Donovan, the ESOP Committee of the Raydon Corporation Employee Stock Ownership Plan and Lubbock National Bank (collectively "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., on behalf of herself and a Class of participants in, and beneficiaries of, the Raydon Corporation Employee Stock Ownership Plan ("the ESOP" or "the Plan") to restore losses to the Plan, disgorge any profits through the use of Plan assets, and to obtain other remedial and appropriate equitable relief in order to redress violations and enforce the provisions of Title I of ERISA.

2.     These claims arise out of a transaction on September 30, 2015 in which Defendants Donald K. Ariel and David P. Donovan sold 100% of the stock of Raydon Corporation ("the September 2015 ESOP Transaction") to the ESOP for $60,500,000, and subsequent breaches by the fiduciaries of the ESOP.  The Transaction was not designed to be in the best interests of the ESOP participants; the selling shareholders failed to disclose material information to the Trustee, Defendant Lubbock National Bank; and Defendant Lubbock National Bank failed to perform adequate due diligence and caused the ESOP to pay in excess of fair market value.  As a result of violations of ERISA's fiduciary rules by the fiduciaries entrusted with their Plan, Plaintiff and the Class have not received all of the hard-earned retirement benefits or the loyal and prudent management of the ESOP to which they are entitled.

3.     Through this action, Plaintiff seeks to enforce her rights under ERISA, to recover the losses incurred by the Plan as a result of these prohibited transactions and fiduciary breaches. Among the relief sought for these breaches and violations, Plaintiff requests that these prohibited transactions be declared void, that Defendants be ordered to disgorge their profits or surcharged for losses incurred by the Plan, and that any monies recovered for the Plan be allocated to the accounts of Class members.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

5.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District,

the Plan is administered in this District, and one or more of the Defendants may be found in this District.

### III.   <u>PARTIES</u>

6.      Plaintiff Stephanie Woznicki was employed by Defendant Raydon Corporation as a Training Analytics Manager from approximately 2008 to 2017. As a result of her employment, Plaintiff became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.  Plaintiff Woznicki resides in Daytona Beach, Florida.

7.      Defendant Raydon Corporation ("Raydon") is and has been at all relevant times the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Raydon is and has been a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at all relevant times by virtue of its Board of Directors' authority to appoint and remove the Trustee and members of the ESOP Committee.  In addition, Defendant Raydon is and has been a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times.

8.      Defendant Donald K. Ariel ("Ariel") is and has been a member of the Board of Directors of Raydon and Chief Executive Officer of Raydon at all relevant times.  As a result of his membership on the Board of Directors, Ariel is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  Ariel resides in or near Port Orange, Florida.

9.      Defendant David P. Donovan ("Donovan") is and has been a member of the Board of Directors of Raydon and Chief Operating Officer of Raydon at all relevant times.  As a result of his membership on the Board of Directors, Donovan is and has been at all relevant times

a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a

"party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  Donovan

resides in or near Port Orange, Florida.

10.     Prior to the September 30, 2015 ESOP Transaction, Defendants Ariel and

Donovan and/or other members of their families owned Raydon, either directly or through family

trusts.  Defendants Ariel and Donovan and any other members of their families who owned

Raydon shares and/or their family trusts are sometimes referred to herein as the "Selling

Shareholders."  Defendants Ariel and Donovan are also referred to herein as the "Director

Defendants."

11.     Defendant ESOP Committee of the Raydon Corporation Employee Stock

Ownership Plan ("ESOP Committee") is and has been at all relevant times the designated Plan

Administrator of the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A),

and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102.  At

all relevant times, the Defendant ESOP Committee had the authority to control and manage the

operation and administration of the ESOP.

12.     Defendant Lubbock National Bank is and has been at all relevant times the named

Trustee of the ESOP, and a named fiduciary of the ESOP within the meaning of ERISA § 402,

29 U.S.C. § 1102.  Defendant Lubbock National Bank had actual control over the Plan assets,

including the authority and discretion to manage, acquire, dispose of and control the assets and

investments of the ESOP, vote shares of common stock held by the ESOP, and evaluate and

contract or enter into transactions between itself and another entity or individual for the purpose

of acquiring or selling stock of Raydon.  Accordingly, Defendant Lubbock National Bank is and

has been at all relevant times a fiduciary and party in interest with respect to the ESOP within the

4

meaning of ERISA §§ 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A).  Lubbock

National Bank is a nationally chartered bank with its headquarters in Lubbock, Texas.

## IV.   **FACTUAL ALLEGATIONS**

13.     Raydon is a military simulation training contractor located in Port Orange,

Florida.  Raydon was founded in 1988.  Most of Raydon's contracts have been with the National

Guard.

14.     Prior to the September 2015 ESOP Transaction, Raydon had a history of

expansion and contractions.  For example, Raydon laid off nearly 100 employees –

approximately 1/3 of its workforce – as a cost-cutting move in July 2007.  According to

newspaper reports, Raydon cited over-hiring, organizational inefficiencies and delays in contract

payments by the military.

15.     In 2010, Raydon consolidated all of its operations from four different locations

into a new facility in Port Orange.  Raydon hired additional workers and had 312 employees in

early 2011.

16.     In late 2011 and early 2012, Raydon laid off employees.  Raydon officials stated

that layoffs were caused by the U.S. military's drawdown of troops in Iraq and Afghanistan;

however, in 2011 Raydon lost out in bidding for a $63.4 million contract with the U.S. Army for

delivery of Virtual Clearance Training Suites.  One of Raydon's competitors, FAAC

Incorporated, won the contract instead.  By February 2012, Raydon employed just over 250

workers.

17.     In 2013, Program Executive Office for Simulation, Training and Instrumentation

(US Army) ("PEO-STRI") awarded Raydon a multi-year contract with a value in excess of $40

million to design, develop and deliver common driver trainer systems for a variety of tactical

vehicles. The common driver trainer systems contract was Raydon's biggest contract to date and Raydon hoped that it would lead to the expansion of its military contracts beyond the National Guard.

18.     In August 2014, Raydon won a $99.4 million contract – the largest in its history- to provide virtual-reality training simulators to the Army National Guard. Raydon, however, did not have the capacity to successfully execute both the common driver trainer systems contract and the Army National Guard contract.

19.     In order to facilitate the sale of Raydon to the ESOP, Defendant Raydon and the Director Defendants hired Defendant Lubbock National Bank as Trustee of the ESOP in or about 2015.

20.     Prior to the September 2015 ESOP Transaction, PEO-STRI terminated the common driver trainer systems contract because Raydon had failed to meet technical performance requirements.

21.     Prior to pursuing the ESOP transaction, the Selling Shareholders had attempted to sell Raydon to Cubic Corporation, another defense contractor. Cubic Corporation, however, decided not to pursue a transaction after conducting due diligence on Raydon Corporation.

22.     Defendants Raydon and Director Defendants failed to inform Lubbock National Bank prior to the September 2015 ESOP Transaction that PEO-STRI had terminated the common driver systems contract.

23.     On or about September 30, 2015, Lubbock National Bank, acting as Trustee of the ESOP, caused the ESOP to purchase 100% of Raydon stock from the Selling Shareholders for $60,500,000 (the "September 2015 ESOP Transaction").

24.     Soon after the September 2015 ESOP Transaction, Raydon began laying off employees.  For example, Joe Kohlbrand, who had been Director, Contracts & Compliance – and had played a key role in Raydon obtaining both the common driver trainer systems contract and the Army National Guard contract – was laid off in December 2015.

25.     Indeed, Raydon had a history of management turnover prior to and after the September 2015 ESOP Transaction.

26.     In August 2016, Raydon laid off over 30 employees, leaving approximately 150 employees.  In October 2018, Raydon announced an additional layoff of 50 employees.

27.     According to the 2015 Form 5500 filed with the Department of Labor on June 22, 2016, the fair market value for the stock held by the ESOP was only $5,110,000 as of December 31, 2015.

28.     According to the 2016 Form 5500 filed with the Department of Labor on August 29, 2017, the fair market value for the stock held by the ESOP was only $5,530,000 as of December 31, 2016.

29.     According to the 2017 Form 5500 filed with the Department of Labor on July 19, 2018, the fair market value for the stock held by the ESOP was only $4,550,000 as of December 31, 2017.

30.     As shown by the chart below, the value of the ESOP's Raydon stock declined precipitously following the September 2015 ESOP Transaction and has remained far below the purchase price:



31.     The ESOP paid more than fair market value in the September 2015 ESOP Transaction.  Based on the available information, the purchase price for the September 2015 ESOP Transaction was based in part on a valuation report that was unreliable.

32.     Based on the available information, the September 2015 ESOP Transaction price was based on unrealistic financial projections, did not adequately consider Raydon's loss of the common driver trainer systems contract with PEO-STRI, and Raydon's history of financial volatility and management turnover.

33.     A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the Raydon shares and/or the debt incurred in connection with the September 2015 ESOP Transaction was excessive.

34.     All of the Defendants would have had access to the financial information upon which the valuation for the September 2015 ESOP Transaction was based.  The valuation report was not provided to Plaintiff or other members of the proposed Class.

35.     Plaintiff was not involved in negotiations with Cubic Corporation, the September 2015 ESOP Transaction, or providing financial information to Lubbock National Bank for ESOP valuations.

36.     The decline in value of the Raydon stock owned by the ESOP following the September 2015 ESOP Transaction should have caused Defendant Lubbock National Bank as well as the Director Defendants, at a minimum, to investigate whether the ESOP had paid more than fair market value in the September 2015 ESOP Transaction.  To the extent that any of the Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor.  As none of the Form 5500s report any such investigation or corrective actions, none of the Defendants investigated whether fiduciary violations had occurred in the September 2015 ESOP Transaction despite numerous red flags that should have raised concerns.

37.     On or about March 10, 2016, the U.S. Department of Labor filed a lawsuit alleging that Lubbock National Bank caused the Cactus Feeders, Inc. Employee Stock Ownership Plan to pay tens of millions of dollars more than it should have paid for company stock.  *Acosta v. Cactus Feeders, Inc., et. al.*, N.D. Tex., Civil Action No. 2:16-cv-00049-J.

38.     On May 4, 2018, Lubbock National Bank and other defendants agreed to settle the Department of Labor's claims, *inter alia*, in consideration for total payment of approximately $6 million in settlement payments and penalties.  As part of the May 4, 2018 Settlement Agreement with the U.S. Secretary of Labor arising out of ERISA claims in connection with a

different ESOP transaction similar to the claims alleged by Plaintiff herein, Lubbock National

Bank agreed to adopt policies and procedures applicable to its services as Trustee of any ESOP

in connection with transactions in which the ESOP is purchasing or selling employer securities

that are not publicly traded.  *See Acosta v. Cactus Feeders, Inc.*, et. al., N.D. Tex., Civil Action

No. 2:16-cv-00049-J (ECF 92-1), settlement agreement entered May 4, 2018.  These policies and

procedures are process requirements that should be obvious to any Trustee seeking to fulfill its

duty of prudence in an ESOP transaction.  Upon information and belief, Defendant Lubbock

National Bank did not follow certain policies and procedures set forth in the *Cactus Feeders*

settlement in the September 2015 ESOP Transaction.

      39.     Defendants Raydon, ESOP Committee and Director Defendants either knew or

should have known of the *Cactus Feeders* lawsuit and settlement.  Learning about the *Cactus

Feeders* lawsuit and settlement would have caused a prudent and loyal fiduciary concern about

whether the Defendant Lubbock National Bank had followed appropriate procedures in the

September 2015 Raydon ESOP Transaction and whether the price paid was for fair market value.

Upon learning about the *Cactus Feeders* lawsuit and settlement, Defendants Raydon, ESOP

Committee and Director Defendants should have conducted an investigation to determine

whether Defendant Lubbock National Bank had followed appropriate procedures in the

September 2015 Raydon ESOP Transaction and whether the price paid was for fair market value;

however, based on the ESOP Committee's response to Plaintiff's administrative claim and the

absence of any apparent changes and the lack of any other disclosed actions taken concerning the

September 2015 Raydon ESOP Transaction, no fiduciary of the Raydon ESOP took any such

action or conducted any such investigation.

40.     By letter dated September 24, 2018, Plaintiff submitted an administrative claim to the ESOP Committee based on the ESOP purchasing Raydon stock for more than fair market value in the September 2015 ESOP transaction.  Plaintiff's letter alleged Raydon's common driver trainer systems contract with PEO STRI was terminated prior to the September 2015 ESOP Transaction, but Raydon management did not disclose the contract cancellation to the appraiser who prepared the valuation report for the September 2015 ESOP Transaction.  By letter dated October 22, 2018, Michelle Warner, the ESOP Committee Chair, stated the Committee would not respond to Plaintiff's administrative claim.  Ms. Warner's October 22 letter stated, "We will not respond to your assertions in your letter regarding the 2015 ESOP transaction."

41.     By letter dated November 2, 2018, Plaintiff submitted an administrative appeal to the ESOP Committee.  Plaintiff stated that she understood Ms. Warner's October 22 letter to be a denial of her administrative claim.  Plaintiff reiterated her request that the selling shareholders should pay back to the ESOP the difference between the sale price in the September 2015 ESOP Transaction and the fair market value of the Raydon stock.  By letter dated November 8, 2018, Ms. Warner, in her capacity as ESOP Committee Chair, again stated that the Committee would not respond to Plaintiff's claim.  The November 8 letter stated, "We will not entertain your outlandish request."

42.     Plaintiff has exhausted her administrative remedies under ERISA.

V.      **CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants in the Raydon Corporation ESOP from September 30, 2015 or any time thereafter who vested under the terms of the Plan and those participants'

beneficiaries.  Excluded from the Plaintiff Class are Defendants and their immediate family, any

fiduciary of the Plan; the officers and directors of Raydon or of any entity in which a Defendant

has a controlling interest; and legal representatives, successors, and assigns of any such excluded

persons.

44.     This action is properly maintainable as a class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b).

45.     <u>Impracticability of Joinder</u>: The members of the Class are so numerous that

joinder of all members is impracticable.  According to the 2017 Form 5500 filed with the

Department of Labor, which is the most recent available Form 5500, as of January 1, 2017, there

were 138 participants, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.

46.     <u>Commonality</u>: The issues of liability are common to all members of the Class and

are capable of common answers as those issues primarily focus on Defendants' acts (or failure to

act).  Questions of law and fact common to the Plaintiff Class as a whole include, but are not

limited to, the following:

> a.     Whether Defendants engaged in a prohibited transaction under ERISA by
> permitting the ESOP to purchase Raydon stock from the Selling Shareholder Defendants
> for more than adequate consideration in the September 2015 ESOP Transaction;

> b.     Whether Defendant Lubbock National Bank engaged in a prudent
> investigation of the proposed purchase of Raydon stock by the ESOP in the September
> 2015 ESOP Transaction;

> c.     Whether Defendant Lubbock National Bank breached a fiduciary duty to
> ESOP participants by causing the ESOP to purchase Raydon stock in September 2015 for
> more than fair market value;

d.      Whether the Director Defendants breached their fiduciary duties by failing to adequately monitor the ESOP's Trustee;

e.      The amount of losses suffered by the ESOP as a result of Defendants' fiduciary violations and/or other appropriate remedial and equitable relief.

47.      Typicality: Plaintiff's claims are typical of those of the Class because her claims arise from the same event, practice and/or course of conduct.  Specifically, Plaintiff, on behalf of the Class, alleges that Defendants breached their fiduciary duties or otherwise violated ERISA in connection with the sale of stock to the Raydon Corporation ESOP or in performing their fiduciary duties to the Plan.  Plaintiff challenges the legality and appropriateness of a plan-wide transaction, whereby, as explained in the Form 5500s, Raydon stock is allocated to all participants' accounts based on the per share price in the September 2015 ESOP Transaction as the Plan makes each payment of principal and interest.  As a result, Plaintiff, like other ESOP participants in the Plaintiff Class, has received less in her ESOP account based on the same per share purchase price of Raydon stock, and continues to suffer such losses in the present because Defendants have failed to correct the overpayment by the ESOP.

48.      Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.  Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.  Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation and with particular experience and expertise in ESOP litigation.

49.      Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all

similarly situated participants and to act in the best interests of the Plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole.  As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

50.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same.  Resolving whether Defendants fulfilled their fiduciary obligations to the Plan or engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

51.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.  As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

52.     Additionally, and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is

superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class.  Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Raydon stock in the September 2015 ESOP Transaction.  As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

53.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action.  As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan.  The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

54.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a)     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b)     No other litigation concerning this controversy has been filed by any other members of the Class.

c)      This District is most desirable location for concentrating the litigation for reasons

that include (but are not limited to) the following: (i) the ESOP is administered in part in

this District, (ii) certain Defendants can be found in this District, and (iii) certain non-

party witnesses are located in this District.

55.      The names and addresses of the Class are available from the ESOP.  Notice will

be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## COUNT I

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a),
29 U.S.C. §§ 1106(a), Against Selling Shareholder Defendants and Lubbock National Bank]**

56.      Plaintiff incorporates the preceding paragraphs as though set forth herein.

57.      ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall

not cause the plan to engage in a transaction, if he knows or should know that such transaction

constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan

and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of

any assets of the plan."

58.      ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include (A)

"any fiduciary … of such employee benefit plan", (F) a relative -- which includes a spouse,

ancestor, lineal descendant or the spouse of a lineal descendant -- of a fiduciary, (G) a trust of or

in which 50 percent or more the beneficial interest of such trust is held  by a fiduciary of such

plan, and (H) an employee, officer or director or a 10 percent or more shareholder of an

employer covered by the Plan.  Defendants Ariel and Donovan (and their relatives or trusts for

their benefit or the benefit of their relatives) qualified as "parties in interest" within the meaning

of ERISA § 3(14).

59.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

60.     ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary."  ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

61.     As Trustee, Lubbock National Bank caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for the Raydon stock purchased in the September 2015 ESOP Transaction.  Specifically, the ESOP paid more than fair market value for shares sold by the Defendant Selling Shareholders.

62.     As officers and directors of Raydon, as fiduciaries of the ESOP and as the Selling Shareholders, Defendants Ariel and Donovan were aware of sufficient facts that the September 2015 ESOP Transaction constituted a prohibited transaction with parties-in-interest.  As parties-in-interest, Defendant Selling Shareholders are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

## COUNT II

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b),
29 U.S.C. §§ 1106(a)-(b), Against Selling Shareholder Defendants]**

63.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

64.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (2) "deal with the assets of the plan in his own interest or for his own account," or (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

65.     As members of the Board of Directors of Raydon, Defendants Ariel and Donovan were fiduciaries of the ESOP at the time of the September 2015 ESOP Transaction.

66.     By selling their shares of Raydon stock to the ESOP in the September 2015 ESOP Transaction, Defendant Selling Shareholders acted in a transaction involving a plan where their own interests were adverse to those of the ESOP within the meaning of ERISA § 406(b)(1), they dealt with the assets of the Plan, which purchased their Raydon stock, in their own interest within the meaning of ERISA § 406(b)(2) and as a result of the receipt of the proceeds from the sale of their Raydon stock received consideration for the their own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

67.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  The burden is on the fiduciary to demonstrate that conditions for the exemption are met.

68.     ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary."  ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

69.     By selling their shares of Raydon stock to the ESOP in the September 2015 ESOP

Transaction, Defendant Selling Shareholders engaged in a prohibited transaction in violation of

ERISA §§ 406(b), 29 U.S.C. §§ 1106(b), for which they are liable to restore the losses caused by

these prohibited transactions, to disgorge profits or other appropriate remedial and equitable

relief.

## COUNT III

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b),
Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B),
29 U.S.C. §§ 1104(a)(1)(A) and (B), Against Defendant Lubbock National Bank]**

70.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

71.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary

discharge his or her duties with respect to a plan solely in the interest of the participants and

beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the

beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent person acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims.

72.     In the context of a Transaction involving the assets of the Plan, the duties of

loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a

fiduciary to undertake an appropriate investigation to determine that the plan and its participants

receive adequate consideration for the plan's assets and the participants' account in the plan.

73.     Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is

no generally recognized market means the fair market value of the asset determined in good faith

by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the

Department of Labor regulations.

19

74.     To fulfill its fiduciary duties, Lubbock National Bank was required to undertake an appropriate and independent investigation of the fair market value of Raydon stock in the September 2015 ESOP Transaction.  Among other things, Lubbock National Bank was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the September 2015 ESOP Transactions; to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

75.     An appropriate investigation would have revealed that the valuations used for and the price paid by the ESOP in the September 2015 ESOP Transaction did not reflect the fair market value of the Raydon stock purchased by the Plan, the September 2015 ESOP Transaction was not in the best interests of the Plan participants and the September 2015 ESOP Transaction would cause the ESOP to take on excessive debt.

76.     Additionally, Lubbock National Bank was required to remedy the ESOP's overpayment for Raydon stock after the date of the September 2015 ESOP Transaction, including as necessary correcting the prohibited transaction by seeking the overpayment from the Selling Shareholders and/or the breaching Trustee (i.e. itself).

77.     By causing the ESOP to engage in the September 2015 ESOP Transaction and failing to correct the September 2015 ESOP Transaction, Lubbock National Bank breached his fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B), and caused losses to the Plan and the accounts of the Class Members.

## COUNT IV

**[Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), Against Defendant Raydon and Director Defendants]**

78.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

79.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

80.     Under ERISA § 404(a)(1)(A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.  In short, the appointing fiduciary has a duty to monitor the performance of the appointed fiduciary.

81.     According to the ESOP Plan Document, the Raydon Board of Directors has the authority to appoint and remove both the Trustee and the members of the ESOP Committee.

82.     Raydon and the Director Defendants either knew or should have known that Lubbock National Bank engaged in a prohibited transaction and/or breached fiduciary duties in the September 2015 ESOP Transaction.

21

83.     Raydon and the Director Defendants either knew or should have known about the

U.S. Department of Labor's 2016 lawsuit against Lubbock National Bank arising out of the

*Cactus Feeders* ESOP transaction and the Department of Labor's 2018 settlement with Lubbock

National Bank.

84.     Upon information and belief, Defendant Lubbock National Bank did not follow

certain policies and procedures set forth in the *Cactus Feeders* settlement in the September 2015

ESOP Transaction.

85.     Upon discovering the *Cactus Feeders* lawsuit and/or settlement, Raydon and the

Director Defendants should have done at least the following: (a) conducted an investigation into

Lubbock National Bank's administration of the ESOP, including the September 2015 ESOP

Transaction, and (b) taken actions necessary to remedy any fiduciary breaches including

correcting the September 2015 ESOP Transaction, such as appointing an independent fiduciary

or a new Trustee to evaluate the September 2015 ESOP Transaction.

86.     Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C. §

1104(a)(1), because they failed to properly monitor the conduct of Lubbock National Bank

before or after the September 2015 ESOP Transaction and failing to take appropriate action upon

learning of the *Cactus Feeders* lawsuit and/or settlement.

## COUNT V

**[Violation of ERISA § 410 & ERISA § 502(a)(3) against Defendant Lubbock National Bank and Director Defendants]**

87.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

88.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions

not applicable here) that "any provision in an agreement or instrument which purports to relieve

a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."

89.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

90.     To the extent that Lubbock National Bank's engagement agreements with Raydon (or any other agreements) attempt to relieve Lubbock National Bank of its responsibility or liability to discharge its fiduciary duties or to have Raydon (an ESOP-owned company) and thereby the ESOP be responsible for its liability or breaches, Defendant Lubbock National Bank's engagement agreements (or other agreements) are void as against public policy.

91.     To the extent that agreements or other instruments governing the relationship between the Director Defendants and Raydon attempt to relieve the Director Defendants or any of them of his responsibility or liability to discharge his fiduciary duties or to have Raydon (an ESOP-owned company) and thereby the ESOP be responsible for his liability or breaches, such agreements or other instruments are void as against public policy.

92.     To the extent that Defendants would agree to such a provision that is void against public policy under ERISA § 410, Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would

23

use in the conduct of an enterprise of like character and aims, in violation of ERISA §

404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

93.     Any indemnification provision in agreements between Defendants and Raydon or

other agreements or instruments governing the relationship between Defendants and Raydon

should be declared void *ab initio* and should be reformed to strike or modified accordingly.

94.     Defendants should be ordered to disgorge any indemnification payments made by

Raydon and/or the ESOP, plus interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of herself and the Class, prays that judgment be entered

against Defendants on each Claim and be awarded the following relief:

A.     Declare that Defendants have each breached their fiduciary duties under ERISA;

B.     Declare that Defendants Lubbock National Bank and Defendant Selling

Shareholders have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b),

29 U.S.C. §§ 1106(a)-(b), by engaging in the September 2015 ESOP Transaction;

C.     Enjoin Defendants, and each of them, from further violations of their fiduciary

responsibilities, obligations and duties;

D.     Remove each of the Defendants as fiduciaries and Trustee of the ESOP and/or bar

each of them from serving as fiduciaries of the ESOP in the future, and appoint a new

independent fiduciary to manage the ESOP and order the costs of such independent fiduciary be

paid for by Defendants;

E.     Order that Defendants found to have breached his/her/its fiduciary duties to the

ESOP to jointly and severally restore all the losses resulting from their breaches and disgorge all

profits they have made through use of assets of the ESOP;

F.      Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to, by forfeiting their ESOP accounts, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

H.      Declare that any indemnification agreement between the Defendants, or any of them, and Raydon or the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

I.      Issue a preliminary and permanent injunction barring Defendants and each of them from seeking to enforce any indemnification agreement between Defendants and the ESOP or Raydon;

J.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

K.      Order Defendants and each of them to disgorge any fees they received in conjunction with the September 2015 ESOP Transaction;

L.      Order Defendants and each of them to reimburse the ESOP or Raydon for any money advanced by the ESOP or Raydon, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or Raydon;

M.      Order that Defendants and each of them provide other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for

profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by

Defendants;

N.      Award pre-judgment interest and post-judgment interest; and

O.      Award such other and further relief that the Court determines that Plaintiffs and

the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), or pursuant to Rule

54(c) of the Federal Rules of Civil Procedure or that is equitable and just.


Dated: December 5, 2018                  Respectfully submitted,

                                         /s/ Sam J. Smith_____
                                         Sam J. Smith, Florida Bar No. 818593
                                         Trial Counsel
                                         Loren B. Donnell, Florida Bar No. 013429
                                         BURR & SMITH, LLP
                                         111 2nd Avenue N.E., Suite 1100
                                         St. Petersburg, FL  33701
                                         (813) 253-2010
                                         ssmith@burrandsmithlaw.com
                                         ldonnell@burrandsmith.com

                                         Daniel Feinberg, CA 135983 (*pro hac vice pending*)
                                         Trial Counsel
                                         FEINBERG, JACKSON, WORTHMAN & WASOW LLP
                                         2030 Addison Street, Suite 500
                                         Berkeley, CA 94704
                                         (510) 269-7998
                                         dan@feinbergjackson.com

                                         R. Joseph Barton, CA 212340 (*pro hac vice pending*)
                                         Trial Counsel
                                         BLOCK & LEVITON LLP
                                         1735 20th Street, N.W.
                                         Washington, DC 20009
                                         (202) 734-7046
                                         joe@blockesq.com

                                         Counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify on December 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

*/s/ Sam J. Smith*
Sam Smith