UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| STEPHANIE WOZNICKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No:  6:18-cv-2090-Orl-41GJK |
| | § | |
| RAYDON CORPORATION, DONALD | § | |
| K. ARIEL, DAVID P. DONOVAN, THE | § | |
| ESOP COMMITTEE OF THE RAYDON | § | |
| CORPORATION EMPLOYEE STOCK | § | |
| OWNERSHIP PLAN and LUBBOCK | § | |
| NATIONAL BANK, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT LUBBOCK NATIONAL BANK'S DISPOSITIVE MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ....................................................................................................1

II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS ............................................2

III.    ERISA BACKDROP ...........................................................................................4

IV.     STANDARD FOR MOTION TO DISMISS .....................................................5

V.      ARGUMENT ........................................................................................................7

        A.     The Complaint Fails to Allege that Lubbock National
            Bank Caused Plaintiff or the ESOP to Suffer a
            Cognizable Loss ....................................................................................7

        B.     The Complaint Fails to State a Claim Under
            Section 406(a) of ERISA. .....................................................................9

        C.     The Complaint Fails to State a Claim Under
            Section 404(a) of ERISA. ...................................................................15

        D.     Count V Fails to State a Claim For Relief. .........................................18

VI.     CONCLUSION...................................................................................................199

DM_US 158555163-1.098432.0014

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Allison v. Bank One – Denver,*
    289 F.3d 1223 (10th Cir. 2002) .......................................................................................... 7

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) .......................................................................................... 6

*Armstrong v. LaSalle Bank Nat'l Ass'n,*
    446 F.3d 728 (7th Cir. 2006) .............................................................................................. 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 11, 12, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 6, 12, 13

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) .............................................................................................. 6

*Cherepinsky v. Sears Roebuck & Co.,*
    487 F. Supp. 2d 632 (D.S.C. 2006) ................................................................................... 8

*Donovan v. Cunningham,*
    716 F.2d 1455 (5th Cir. 1983) .......................................................................................... 16

*Fifth Third BanCorp v. Dudenhoeffer,*
    573 U.S. 409 (2014) ................................................................................................. *passim*

*Fish v. GreatBanc Trust. Co.,*
    749 F.3d 671 (7th Cir. 2014) ............................................................................................ 10

*Friend v. Sanwa Bank,*
    35 F.3d 466 (9th Cir. 1994) ................................................................................................ 8

*García-Catalán v. United States,*
    734 F.3d 100 (1st Cir. 2013) .............................................................................................. 6

*Gearren v. The McGraw-Hill Companies, Inc.,*
    660 F.3d 605 (2d Cir. 2011) ............................................................................................ 12

*Gelles v. Skrotsky,*
    15 Supp. 2d 1293 (M.D. Fla. 1998) ................................................................................. 14

*Henry v. Champlain Enters., Inc.,*
    445 F.3d 610 (2d Cir. 2006) ............................................................................................ 10

*Hill v. Hill Bros Constr. Co,*
  No. 3:14-cv-213, 2016 WL 1252983 (S.D. Miss. Mar. 3, 2016)........................................ 16

*Howell v. Motorola, Inc.,*
  337 F. Supp. 2d 1079 (N.D. Ill. 2004)............................................................................... 9

*Husvar v. Rapoport,*
  430 F.3d 777 (6th Cir. 2005)............................................................................................. 14

*Keach v. U.S. Trust Co. N.A.,*
  313 F. Supp. 2d 818 (C.D. Ill. 2004)................................................................................. 5

*Metyk v. KeyCorp,*
  560 F. App'x 540 (6th Cir. 2014)...................................................................................... 8

*Plasterers' Local Union No. 96 Pension Plan v. Pepper,*
  663 F.3d 210 (4th Cir. 2011)............................................................................................. 7

*Pugh v. Tribune Co.,*
  521 F.3d 686 (7th Cir. 2008)............................................................................................. 9

*Roth v. Sawyer-Cleator Lumber Co.,*
  16 F.3d 915 (8th Cir. 1994)............................................................................................... 6

*Smith v. Williams,*
  819 F. Supp. 2d 1264 (M.D. Fla. 2011)......................................................................... 6, 14

*Pension Ben. Guar. Corp. ex rel St. Vincent Catholic Medical Center's Retirement Plan
  v. Morgan Stanley Investment Management, Inc.,*
  712 F.3d 705 (2d Cir. 2013)...................................................................................... *passim*

*In re Target Corp. Sec. Litig.,*
  275 F. Supp. 3d 1063 (D. Minn. 2017)........................................................................... 6, 16

*In re Unisys Sav. Plan Litig.,*
  74 F.3d 420 (3d Cir. 1996)................................................................................................. 7

*Wright v. Or. Metallurgical Corp.,*
  360 F.3d 1090 (9th Cir. 2004)........................................................................................... 12

**Statutes**

26 U.S.C. § 401(a)(11)(C) ..................................................................................................... 5

29 U.S.C. § 1002(14)(A)-(I) ............................................................................................... 9, 10

29 U.S.C. § 1002(18) .............................................................................................................. 10

29 U.S.C. § 1106(a)(1)(A) ....................................................................................................... 9

iii

29 U.S.C. § 1108(b)(17).ERISA ................................................................................... 10

29 U.S.C. § 1109(a) ...................................................................................................... 7

ERISA ............................................................................................................... *passim*

ERISA Part IV ............................................................................................................. 18

ERISA § 3(34), 29 U.S.C. § 1002(34) .......................................................................... 5

ERISA § 404 ........................................................................................................... 7, 18

ERISA Sections 404 and 406(a) .................................................................................... 7

ERISA Section 404(a) ................................................................................................. 15

ERISA Section 406(a) ................................................................................................... 9

ERISA Section 406(a)(1)(A) ......................................................................................... 9

ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6) ................................................................. 5

ERISA Section 408(b)(17) .......................................................................................... 10

ERISA Section 409(a) ................................................................................................... 7

ERISA Section 502(a)(3) ............................................................................................ 18

Lubbock National under The Employee Retirement Income Security Act of 1974 ..................................... 1

Tax Reform Act of 1976, § 803(h) ............................................................................... 5

**Other Authorities**

available at https://www.finance.senate.gov/imo/media/doc/ sprt95-23.pdf ................................................. 5

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................... 1

Rule 8 ........................................................................................................................ 18

DM_US 158555163-1.098432.0014

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| STEPHANIE WOZNICKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No:  6:18-cv-2090-Orl-41GJK |
| | § | |
| RAYDON CORPORATION, DONALD | § | |
| K. ARIEL, DAVID P. DONOVAN, THE | § | |
| ESOP COMMITTEE OF THE RAYDON | § | |
| CORPORATION EMPLOYEE STOCK | § | |
| OWNERSHIP PLAN and LUBBOCK | § | |
| NATIONAL BANK, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT LUBBOCK NATIONAL BANK'S DISPOSITIVE MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Lubbock National Bank hereby files it Dispositive Motion to Dismiss and respectfully requests that the Court dismiss all claims asserted against Lubbock National Bank in this civil action by Plaintiff Stephanie Woznicki ("Plaintiff" or "Woznicki").

## I.      INTRODUCTION

Plaintiff's claims in this case arise out of the formation of, and sale of the stock of Raydon Corporation ("Raydon") to, the Raydon Corporation Employee Stock Ownership Plan ("ESOP").  Plaintiff asserts that Lubbock National Bank, acting as trustee for the ESOP, caused the ESOP to pay more than fair market value for the stock of Raydon and thereby breached the fiduciary duties imposed on Lubbock National under The Employee Retirement Income Security Act of 1974 ("ERISA").

In support of her claims, Plaintiff places particular significance on the apparent drop in the value of Raydon after the transaction, asserting that this decline is evidence that something

must have gone awry with the transaction itself. In focusing attention on the alleged stock drop, Plaintiff's Complaint misses the mark.

It is well-settled that a plaintiff cannot sustain a claim for breach of fiduciary duty under ERISA by pointing to a decline in the value of the stock after the transaction was completed and simply concluding in hindsight that a fiduciary breach occurred.  To state a claim, Plaintiff must include facts that allow the court to draw the reasonable inference that the methods employed by Lubbock National Bank were improvident and caused the ESOP to pay more than adequate consideration for the stock.  These facts must also establish a causal nexus between Lubbock National Bank and the loss Plaintiff seeks to recover.

The Complaint before this Court is devoid of the factual allegations necessary to plead that Lubbock National Bank acted imprudently or that it caused the Plaintiff's alleged loss.  To the contrary, what few facts are contained in the Complaint undercut any inference that Lubbock National Bank failed to discharge its fiduciary duties as Plaintiff affirmatively alleges that Lubbock National Bank was not informed of certain facts that Plaintiff appears to believe are material to her claims.  As a result, for the reasons stated herein, Plaintiff's claims should be dismissed.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

According to the Complaint, Raydon, founded in 1988, is a military simulation training systems contractor located in Port Orange, Florida.  The Complaint asserts that the majority of Raydon's contracts have been with the National Guard, and in August 2014, Raydon won a $99.4 million contract to provide virtual-reality training simulators to the Army National Guard. (Complaint ¶¶ 13, 18, 20).  Plaintiff asserts that this is the largest contract Raydon had been awarded in its history.  (Complaint ¶ 18).

The transaction at issue in this case occurred on September 30, 2015, pursuant to which Raydon formed the ESOP, and Defendants Donald K. Ariel and David P. Donovan sold 100% of the stock of Raydon Corporation ("the September 2015 ESOP Transaction") to the ESOP for the sum of $60,500,000. (*See* Complaint ¶ 23).

With regard to the price the ESOP paid for the stock of Raydon, Plaintiff asserts that prior to the 2015 ESOP Transaction, the Army National Guard contract was terminated, although Plaintiff concedes that Lubbock National Bank was not informed of this development. (Complaint ¶¶ 22, 40). Nevertheless, Plaintiff asserts that the value of Raydon fell dramatically after the 2015 ESOP Transaction closed (Complaint ¶¶ 25-30) and that the ESOP paid more than fair market value in the 2015 ESOP Transaction.  (Complaint ¶ 31). Plaintiff similarly asserts that, "based on the available information," the 2015 ESOP Transaction price was based on unrealistic financial projections, and did not adequately consider Raydon's loss of the Army National Guard common driver trainer systems contract or Raydon's history of financial volatility and management turnover.  (Complaint ¶ 32).  Plaintiff goes on to assert that, again "[b]ased on the available information," the purchase price for the September 2015 ESOP Transaction was based in part on a valuation report that was unreliable.  (Complaint ¶ 31).

Relying upon the allegations that the value of Raydon declined and that the ESOP overpaid for the stock of Raydon, Plaintiff further concludes that a prudent fiduciary who had conducted a reasonable investigation would have concluded that the ESOP was paying more than fair market value for the Raydon stock and/or the debt incurred in connection with the 2015 ESOP Transaction was excessive.  (Complaint ¶ 33).  Plaintiff goes on to allege that the decline in the value of the Raydon stock owned by the ESOP following the 2015 ESOP Transaction should have caused Defendant Lubbock National Bank, as well as the Director Defendants, at a

minimum, to investigate whether the ESOP had paid more than fair market value in the 2015

ESOP Transaction.   (Complaint ¶ 36).   According to Plaintiff, to the extent that any of the

Defendants had conducted such an investigation, that investigation, as well as any corrective

measures, would have been reported in one of the Form 5500s filed with the Department of

Labor. (Complaint ¶ 36).

Apart from the allegations regarding the 2015 ESOP Transaction, Plaintiff more

generally asserts that Raydon had a history of fluctuations in its workforce and that Raydon

lacked the capacity to meet its contractual obligations.  (Complaint ¶¶ 14, 15, 16, 25, 26).

The foregoing represent the totality of the allegations in the Complaint that relate to the

2015 ESOP Transaction.   While the Complaint goes on to describe a public settlement that

Lubbock National Bank entered into with the Department of Labor, it is clear that the references

to the settlement fail to advance Plaintiff's claims in this case.  That is, the settlement agreement

described in the Complaint was entered into nearly three years after the events on which

Plaintiff's claims rely, and concerns a transaction that is wholly unrelated to the current

transaction.  (Complaint ¶ 37).  The settlement also relates to a company, Cactus Feeders, Inc.,

whose value is not disputed to have increased substantially after the transaction involving the

Cactus Feeders, Inc. Employee Stock Ownership Plan.  In short, that transaction and subsequent

settlement agreement have no bearing on Plaintiff's claims, fail to in any way strengthen

Plaintiff's derisory pleading, and leave one only to speculate as to its reference in the Complaint

before this Court.

## III.   ERISA BACKDROP

Employee stock ownership plans or ESOPs are defined contribution benefit plans that are

designed to invest primarily in employer stock. ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); 26

U.S.C. § 401(a)(11)(C); *Keach v. U.S. Trust Co., N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004) (citing ERISA § 407(d)(6)(A), 29 U.S.C. § 1107(d)(6)(A)). ESOPs and other defined contribution plans are "individual account plans," meaning that the plan "provides . . . for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses . . . which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

Congress has taken a special "interest in encouraging" ESOPs as a means of fostering employee ownership. Tax Reform Act of 1976, § 803(h); *see, e.g., Fifth Third BanCorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (noting Congress "has written into its law its interest in encouraging" the use of ESOPs) (internal quotation marks omitted).  There are a number of recognized benefits to ESOPs, in addition to providing employees with an ownership interest in the company, as they are widely recognized to carry substantial tax benefits, provide convenient succession planning, and have been shown to improve organizational performance.

As a result of these benefits, Congress has consistently supported the creation of ESOPs. *See, e.g.*, Staff of the S. Comm. on Fin., 95th Cong., ESOPs and TRASOPs: An Explanation for Employees 10 (Comm. Print 1978), *available at* https://www.finance.senate.gov/imo/media/doc/sprt95-23.pdf (explaining the benefits of ESOPs and promoting laws that encourage the establishment and use of ESOPs).  It is with this backdrop that Plaintiff's claims should be viewed.

## IV.   STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss, a plaintiff's complaint must offer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To be "plausible," a complaint must contain "factual allegations [that] are sufficient to

support the reasonable inference that the defendant is liable for the misconduct alleged." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks omitted); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)) (in evaluating the sufficiency of a complaint, courts must eliminate allegations that are mere legal conclusions).

In *Fifth Third Bancorp v. Dudenhoeffer*, the Supreme Court articulated the steps necessary to separate the "plausible sheep" from the "meritless goats" in a breach of fiduciary duty action under ERISA. 573 U.S. at 425. According to the Supreme Court, this analysis requires "careful, context-sensitive scrutiny" of a plaintiff's allegations based on the "circumstances . . . prevailing" at the time the fiduciary acted. *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)). The "appropriate inquiry" in these cases focuses on what the fiduciary knew at the time in question—not what is now known with the advantage of hindsight. *Id.*; *see also Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-18 (8th Cir. 1994) (explaining that ERISA's fiduciary standard "is not concerned with results," but "focuses on the fiduciary's conduct preceding the challenged decision").

Accordingly, to state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts that plausibly suggest that the fiduciaries' "decision making process was flawed." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *see also Smith v. Williams*, 819 F. Supp. 2d 1264, 1283 (M.D. Fla. 2011); *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1083-84 (D. Minn. 2017). Because ERISA's fiduciary standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results,", a plaintiff cannot state a claim with the benefit of hindsight. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996); *see also Pension Ben. Guar. Corp. ex rel St. Vincent Catholic Medical Ctr.'s Retirement Plan v.*

*Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Finally, given the challenges in valuing ESOP-held stock, courts review a fiduciary's conduct with respect to valuations of ESOP stock "deferentially." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).

## V.     ARGUMENT

Plaintiff alleges that Lubbock National Bank violated Sections 404 and 406(a) of ERISA by (1) causing the ESOP to engage in non-exempt prohibited transaction, and (2) failing to conduct an investigation after the 2015 ESOP Transaction that, according to Plaintiff, would have caused Lubbock National Bank to take certain, as of yet unspecified, corrective action to remedy the alleged harm caused by the supposed prohibited transaction.   For the reasons discussed below, the Complaint fails to plausibly allege that Lubbock National Bank caused any alleged loss to the ESOP or that Lubbock National Bank breached any fiduciary duties arising under ERISA.   Therefore, Plaintiff's claims against Lubbock National Bank should be dismissed in their entirety.

### A.     The Complaint Fails to Allege that Lubbock National Bank Caused Plaintiff or the ESOP to Suffer a Cognizable Loss

Section 409(a) of ERISA provides that a fiduciary who breaches his duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."  29 U.S.C. § 1109(a).  Thus, even when conduct may be construed as a breach of a fiduciary duty under ERISA § 404, the fiduciary can only be held liable upon a finding that the breach actually caused a loss to the plan.  *See Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011); *see also Allison v. Bank One–Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002); *Friend v. Sanwa Bank*, 35 F.3d 466, 469 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from

the breach.").  Moreover, it is proper for the Court to determine at the motion to dismiss stage

whether a plaintiff has set forth sufficient factual allegations to adequately allege loss causation.

*See Metyk v. KeyCorp,* 560 F. App'x 540, 542 (6th Cir. 2014); *Cherepinsky v. Sears Roebuck &*

*Co.*, 487 F. Supp. 2d 632, 637-38 (D.S.C. 2006) (holding plaintiff failed to state a claim where

he did not allege the breach caused a loss to the plan).

Here, the Complaint fails to plausibly allege that Lubbock National Bank caused Plaintiff

to suffer a loss.  The Complaint describes a purported decline in the value of Raydon's stock

following the 2015 ESOP Transaction, and points to a number of other factors that Plaintiff

believes caused that decline, such as management decisions that Plaintiff questions, as well as

the cancellation of the contract Raydon won from the Army National Guard.  (Complaint ¶¶ 20,

24-25, 31-32, 34). To the extent these allegations adequately plead that the ESOP or Plaintiff

suffered a loss, Plaintiff fails to point to any conduct on the part of Lubbock National Bank that

could have even arguably contributed to that alleged loss.  Beyond being unsupported and

unsubstantiated, Plaintiff's own allegations demonstrate that no act on the part of Lubbock

National Bank contributed to the alleged harm.  In particular, Plaintiff affirmatively asserts that

neither Lubbock National Bank nor the valuation professional employed to value Raydon in

connection with the 2015 ESOP Transaction were informed that the Army National Guard

contract was terminated.  (Complaint ¶¶ 22, 40).

Plaintiff further fails to even attempt to allege that Lubbock National Bank failed to make

any appropriate inquires during the diligence and negotiation of the 2015 ESOP Transaction.

Even if Plaintiff had included such an allegation, that alone would not be sufficient to allege that

Lubbock National Bank caused Plaintiff or the ESOP to suffer a loss.  Rather, Plaintiff would

need to include facts demonstrating that Lubbock National Bank was in a position to learn about

the cancellation of the Army National Guard contract and that it failed to properly consider how the cancellation impacted Raydon's business and enterprise value.  *See Pugh v. Tribune Co.*, 521 F.3d 686, 700-01 (7th Cir. 2008) (explaining that the plaintiff must allege that each defendant was in a position to know or learn of the information, that is, a "conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim"); *see also Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1089–92 (N.D. Ill. 2004) (collecting cases finding that allegations that a defendant was a member of a plan's investment committee is an insufficient basis for inferring that he should have been privy to certain company information).  Plaintiff has failed to do so here.

The allegations in the Complaint, or more plainly the lack thereof, demonstrate that to the extent the Complaint even identifies a cognizable loss, which Lubbock National Bank expressly denies for the reasons set forth below, Lubbock National Bank did not cause any of those alleged losses.  As a result, Plaintiff's claims against Lubbock National Bank should be dismissed in their entirety.

### B.    The Complaint Fails to State A Claim Under Section 406(a) of ERISA.

Count I of the Complaint asserts a claim for breach of the fiduciary duty arising under Section 406(a) of ERISA.  Section 406(a)(1)(A) of ERISA provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that transaction constitutes a direct or indirect . . . sale or exchange, or leasing, of any property between the plan and a party in interest . . . ."  29 U.S.C. § 1106(a)(1)(A).  In turn, the statute identifies the nine categories of parties that qualify as parties in interest.  *See* 29 U.S.C. § 1002(14)(A)-(I).  These parties in interest include, among others: any fiduciary, counsel, or employee of the benefit plan; a person providing services to such plan; an employer whose

employees are covered by such plan; certain owners of the employer; and certain relatives of other parties in interest.  *See id.*

Thus, on its face ERISA would appear to prevent as a prohibited transaction, the sale of stock to the plan by any party in interest, including officers and directors of the company who sell their stock to an ESOP.   However, in order to permit such fundamental (and essential) transactions, Section 408(b)(17) of ERISA limits the broad prohibition and provides that it is not applicable to transactions where the "plan receives no less, nor pays no more, than adequate consideration."  29 U.S.C. § 1108(b)(17)(A). ERISA defines the term "adequate consideration" to mean "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18).

As a consequence of these foundational rules, "[t]he role of courts in reviewing the adequacy of consideration in an ERISA case is to determine whether the fiduciary can show that the price paid represented a good faith determination of the fair market value of the asset . . . ." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006).   To that end, the Department of Labor has identified two requirements for a transaction to be found to be supported by adequate consideration: (1) a substantive requirement that the value assigned reflect the fair market value of the asset, and (2) a procedural requirement that the fiduciary determine the value assigned in good faith.  *Fish v. GreatBanc Trust. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) (citing Prop. DOL Reg. § 2510.3–18(b); 53 Fed.Reg. 17,632–33 (May 17, 1988); *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002); *Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir. 1983)).

Even when, as here, the Plaintiff attempts to rest its claim on a stock decline, even if

significant, the focus when judging a trustee's fiduciary duty is on the process the fiduciary employed to arrive at its decision to approve the transaction. *Pension Ben. Guar. Corp.*, 712 F.3d at 718. Courts undertaking this inquiry have noted that ERISA's duty of care requires "prudence, not prescience." *Id.* at 716 (internal quotation marks omitted). And again, as with any complaint, Plaintiff must come forward with more than threadbare and unadorned allegations that Lubbock National Bank caused the ESOP to pay more than adequate consideration for the stock of Raydon. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.*

Under the foregoing standards, Plaintiff fails to state a claim for breach of fiduciary duty based on the allegation that Lubbock National Bank caused the ESOP to engage in a prohibited transaction. Plaintiff identifies the purchase price the ESOP paid to acquire Raydon's stock and then points to the value reported in the Form 5500s filed with the Department of Labor to attempt to demonstrate a sharp decline in the value of Raydon's stock following the ESOP's purchase of the stock. (Complaint ¶¶ 27–30). Plaintiff even goes so far as to graphically depict the purported stock drop. (Complaint ¶ 30). Relying heavily on that drop, Plaintiff leaps to the conclusion that ESOP paid more than fair market value for the stock of Raydon. (Complaint ¶ 31). Plaintiff, however, fails to connect the dots between the purported decline in the value of Raydon and any conduct on the part of Lubbock National Bank in agreeing to the price in connection with the 2015 ESOP Transaction.

To the extent that Plaintiff contends that the purported decline in the value of stock is sufficient, standing alone, to plead a prohibited transaction claim, Plaintiff is plainly mistaken. It

is well-settled that a drop in the value of the company's stock, even when substantial, is not evidence standing alone that a fiduciary acted imprudently. *Gearren v. The McGraw-Hill Companies, Inc.*, 660 F.3d 605, 609-610 (2d Cir. 2011) (64% stock decline insufficient to show defendants knew company was in dire circumstances); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096, 1099 (9th Cir. 2004) ("[m]ere stock fluctuations, even those that trend downhill significantly, are insufficient to establish the requisite imprudence . . .").

Perhaps in recognition of the fact that pointing to a drop on the stock value is insufficient to support a prohibited transaction claim, Plaintiff attempts to bolster her claim by alleging that, "[b]ased on available information," the valuation used in connection with the 2015 ESOP Transaction was "unreliable" and therefore caused the ESOP to pay more than fair market value for Raydon's stock.  (*See* Complaint ¶¶ 31-33).  Plaintiff's allegations regarding the valuation fare no better than the inaccurate and unsubstantiated conjecture regarding Raydon's value.

With respect to the valuation, Plaintiff simply states in a symptomatically conclusory manner that the 2015 ESOP Transaction depended on a valuation report that was "unreliable." (Complaint ¶ 31).  Plaintiff once again fails to provide any factual enhancement to support the conclusory allegation that the valuation was "unreliable."  For example, there is no allegation that the valuation professional was not qualified or failed to consider all relevant information in preparing the valuation. Nor is there an allegation that management's financial projections were overly rosy, that the valuation failed to appropriately consider the risk factors facing the company, or that the valuation relied upon outdated or inaccurate financial information.  There are simply no factual enhancements of the type and character required by *Twombly*, *Iqbal*, and *Dudenhoeffer*.

In fact, the only "fact" that Plaintiff relies upon to attempt to buttress the assertion that

the valuation was unreliable is the allegation that the Army National Guard contract had been terminated before the ESOP Transaction occurred. (Complaint ¶ 22).  Yet, the allegations in Plaintiff's own Complaint demonstrate that to the extent the cancellation of the  contract could have even theoretically affected the valuation of Raydon, the failure to consider that information cannot be a flaw in Lubbock National Bank's transaction process.  Plaintiff affirmatively alleges in the Complaint that neither Raydon nor the Director Defendants informed Lubbock National Bank or the valuation professional that the Army National Guard contract had been terminated. (Complaint ¶¶ 22, 40).  Plaintiff further fails to allege that Lubbock National Bank failed to inquire about the status of that contract or that it in any way failed to exercise proper diligence in negotiating the purchase of the company's stock on behalf of the ESOP.  In short, Plaintiff offers nothing in support of the allegation that the valuation was unreliable other than her own *ipse dixit*, which is insufficient to move her claim across the line from merely possible to plausible under *Twombly* and *Iqbal*.

Recognizing the shortcomings in the allegations regarding the financial projections and valuation, Plaintiff attempts to cast doubt on the prudence of the decision to move forward with the 2015 ESOP Transaction by making generalized references to alleged fluctuations in Raydon's workforce (Complaint ¶¶ 14, 16), as well as perceived mismanagement such as over-hiring, organizational inefficiencies, and payment delays to Raydon from the military. (Complaint ¶ 14).  Plaintiff appears to suggest that the foregoing corporate matters contributed to the decline in the value of Raydon's stock following the 2015 ESOP Transaction.  According to the Complaint, however, those things all occurred in either 2010-2012 or 2016-2018, both well

before and after the ESOP Transaction was consummated.[1]

Moreover, Plaintiff fails to articulate how those facts could have even arguably affected the valuation or the decision to engage in the 2015 ESOP Transaction. Even if those allegations can be characterized as evidence of "mismanagement," it is well-settled that allegations of corporate management, without more, do not give rise to a claim for breach of fiduciary duty. *Smith*, 819 F. Supp. 2d at 1283 n.14 ("[A]llegations of corporate mismanagement . . . are not actionable under ERISA."); *Husvar v. Rapoport*, 430 F.3d 777, 782 (6th Cir. 2005) (dismissing claim under ERISA where complaint does not allege that defendants mismanaged the plan); *Gelles v. Skrotsky*, 15 F. Supp. 2d 1293, 1294-95 (M.D. Fla. 1998).

Furthermore, beyond failing to identify any fiduciary act, there is no allegation that Lubbock National Bank in any way contributed to the alleged management, or more importantly, that Lubbock National Bank was not aware of or otherwise failed to analyze those facts in negotiating the 2015 ESOP Transaction. In short, the allegations regarding the workforce and other discrete operational matters at Raydon fail to add any support to Plaintiff's claim that Lubbock National Bank breached its fiduciary duty by purportedly causing the ESOP to engage in a prohibited transaction. Rather, those allegations amount to nothing more than a collection of random observations regarding non-contemporaneous events relating to Raydon's operations that fail to substantiate the claim that the ESOP paid more than fair market value for the company's stock.

To be clear, the foregoing is not an attempt to reduce the allegations in the Complaint

---

[1] The Complaint makes reference to the layoffs perhaps to suggest that Raydon's operations were unstable and not properly managed. However, it is equally plausible that the changes in the number of Raydon employees demonstrate that company management took appropriate steps to scale its workforce based upon anticipated future demand. When allegations are at least as consistent with lawful conduct as they are unlawful conduct, they fail to support a claim for relief. *See Pension Ben. Guar. Corp.*, 712 F.3d at 718.

into its disparate components and view them in isolation.  It is evident from the Complaint that Plaintiff would have the Court infer from the cancellation of the Army National Guard Contract and the subsequent perceived decline in the value of Raydon, that there must have been a failure in Lubbock National Bank's process, which necessarily caused the ESOP to pay more than adequate consideration for Raydon's stock.  While a complaint may stand on circumstantial evidence, to state a claim for relief, that circumstantial factual evidence must give rise to a reasonable inference that Lubbock National Bank breached its fiduciary duty. *See Pension Ben. Guar. Corp.*, 712 F.3d at 718.  This requires Plaintiff's circumstantial evidence to be suggestive of, rather than merely consistent with, a finding of misconduct.  *Id*. at 719.

Plaintiff's Complaint simply lacks the facts necessary to connect the reported drop in the value of Raydon to any act or omission by Lubbock National Bank (or anything else contained in the Complaint).  On the whole, Plaintiff tenders nothing more than "naked assertions devoid of further factual enhancement" in support of her prohibited transaction claim, which is insufficient to state a claim for relief.  *Id.* at 717 (internal quotation marks and brackets omitted).  As a result, Count I of the Complaint should be dismissed.

## C.      The Complaint Fails to State a Claim Under Section 404(a) of ERISA.

Count III of the Complaint purports to assert a claim for breach of fiduciary duty against Lubbock National Bank under Section 404(a) of ERISA.  (Complaint ¶¶ 71-72).  In reality, Count III asserts two distinct causes of action: (1) a claim that Lubbock National Bank caused the ESOP to engage in a prohibited transaction when it acquired the stock of Raydon, and (2) Lubbock National Bank breached the fiduciary duty under Section 404(a) of ERISA by failing to take corrective action to remedy the alleged harm the ESOP and participants suffered as a result of the prohibited transaction.  (Complaint ¶¶ 75-77).  Neither claim states a plausible claim for

relief.

For the reasons stated above, Plaintiff's claim that Lubbock National Bank caused the ESOP to engage in prohibited transaction vis-à-vis the acquisition of Raydon's stock fails to state a claim and should be dismissed.  Similarly, Plaintiff's claim that Lubbock National Bank failed to take corrective action falls short of the standard the Supreme Court set out in *Dudenhoeffer*, 573 U.S. at 420.

To satisfy the standards articulated in *Dudenhoeffer*, Plaintiff must allege a plausible "alternative action" that Defendants could and should have taken that would have protected participants' interests.  573 U.S. at 428.   To plead an "alternative course of action" requires a plaintiff to identify an act (1) that would not have been illegal, and (2) that no reasonable fiduciary could have concluded might be more likely to harm the plan than help it.  *Id*.; *see Hill v. Hill Bros. Constr. Co.*, No. 3:14-cv-213, 2016 WL 1252983, at *5 (N.D. Miss. Mar. 28, 2016) (dismissing claim against privately-held ESOP due to failure to plead an alternative action under *Dudenhoeffer*).

The Supreme Court in *Dudenhoeffer* made it clear that a plaintiff must plead its claims with specificity against the defendant and that a fiduciary is not expected to predict the future of the company's stock performance. 573 U.S. at 427. To that end, courts judge a fiduciary's actions based upon information available to the fiduciary at the time of the transaction, not with hindsight. *Pension Ben. Guar. Corp.*, 712 F.3d at 716.  As a consequence, the test of prudence is one of conduct, not results. *Donovan*, 716 F.2d at 1467. The "prudence of a fiduciary's action depends on the information available to the fiduciary at the time of the decision, and assertions of imprudence devoid of contextual support are insufficient to state a claim under ERISA." *In re Target Corp.*, 275 F. Supp. 3d at 1088.

The Complaint fails to satisfy the foregoing standards.  Plaintiff simply points to the purported decline in the value of Raydon and alleges in the most conclusory fashion that Lubbock National Bank was required to remedy the overpayment made to the selling shareholders.  (Complaint ¶¶ 76, 77).   At the outset, Plaintiff fails to make any allegations regarding the fiduciary process.  For example, there are no allegations suggesting that there was a conflict of interest involving the valuation advisor, or that Lubbock National Bank failed to conduct an analysis of the transaction on its own, or that Lubbock National Bank was conflicted itself.  The Complaint similarly fails to identify any facts that show Lubbock National Bank engaged in any unlawful conduct, caused the ESOP to suffer any harm, or that there was some conduct that Lubbock National Bank reasonably should have investigated.  Plaintiff's allegations simply conclude that an imprudent action was undertaken, and are therefore devoid of the requisite factual support necessary to state a claim under ERISA.

Furthermore, Plaintiff fails to identify any remedy or corrective action that Lubbock National Bank should have taken. The closest the Complaint comes to satisfying this requirement is found in Paragraph 76, wherein Plaintiff alleges that Lubbock National Bank should have, *as necessary*, corrected the prohibited transaction by seeking to recover the overpayment from the selling shareholders.  (Complaint ¶ 76).  Plaintiff's purely hypothetical and speculative remedy fails to satisfy the stringent pleading requirements the Supreme Court articulated in *Dudenhoeffer*.

Under *Dudenhoeffer*, it is not enough to speculate, as Plaintiff does, that Lubbock National Bank must have done something wrong because the value of Raydon's stock dropped post-transaction.  The Supreme Court has clearly held that Lubbock National Bank's conduct is not to be judged in hindsight, as Plaintiff implores this Court to do.  Rather, Plaintiff must

identify something that Lubbock National Bank missed or otherwise failed to do in connection

with the 2015 ESOP Transaction, and further identify a corrective action that would not be more

likely to harm the ESOP than help it.  Simply concluding that the ESOP could recover alleged

overpayments made to the selling shareholders fails to satisfy this burden.  As a result, Count III

of Plaintiff's Complaint should be dismissed.

### D.  COUNT V FAILS TO STATE A CLAIM FOR RELIEF.

Count V of Plaintiff's Complaint asserts a claim under Section 502(a)(3) of ERISA to

seek to void any agreements between Lubbock National Bank and Rayon "to the extent that" any

of those agreements seek to relieve Lubbock National Bank from any responsibility or liability

under Part IV of ERISA.  (Complaint ¶¶ 88, 89).

While the relief Plaintiff pleads may be appropriate under Section 502(a)(3) of ERISA as

a general matter, Count V nevertheless fails to state a claim for relief.  At the outset, Plaintiff

does not affirmatively assert that an agreement exists between Lubbock National Bank and

Raydon that would violate Section 404 of ERISA.  Rather, Plaintiff simply speculates that such

an agreement exists and seeks to have this Court declare the agreement void.  (Complaint ¶¶ 88,

89).  Such speculative pleading fails to satisfy the requirements of Rule 8.

Moreover, the claim is dependent on Plaintiff's other claims.  That is, in the event that

this Court concludes that Plaintiff's claims for breach of fiduciary duty should be dismissed, then

there can be no basis to challenge any agreement between Lubbock National Bank and Raydon

as there would be no basis to impose any liability on Lubbock National Bank for violations of

ERISA's fiduciary obligations.  As a result, Count V of Plaintiff's Complaint should be

dismissed along with the claims asserted under Counts I and III.

## VI.    CONCLUSION

Plaintiff's Complaint rests upon conclusory and speculative allegations and would require this Court to stack inference upon inference in order to find that Plaintiff has stated a cognizable claim for relief against Lubbock National Bank under ERISA.  In fact, Plaintiff's claims not only fail to state a claim, they affirmatively negate Lubbock National Bank's knowledge or participation in the acts that give rise to Plaintiff's claims.  As a result, Plaintiff's claims against Lubbock National Bank should be dismissed in their entirety.

Dated: February 26, 2019

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP

By:     */s/ Theodore M. Becker*
Theodore M. Becker
State Bar No.: 0151262 (*admitted pro hac vice*)
tbecker@mwe.com
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
(312) 984-6934
(312) 984-7700 (facsimile)

Eliot T. Burriss
State Bar No.: 24040611 (*admitted pro hac vice*)
eburriss@mwe.com
2501 N. Harwood, Suite 1900
Dallas, Texas 75201
(214) 295-8000
(972) 232-3098 (facsimile)

Michael G. Austin
Florida Bar No.: 457205
maustin@mwe.com
Kamal Sleiman
Florida Bar No.: 105574
ksleiman@mwe.com
333 SE 2ⁿᵈ Avenue, Suite 4500
Miami, FL 33131-4336
(305) 347-6517
(305) 675-8403 (facsimile)

**ATTORNEYS FOR DEFENDANT
LUBBOCK NATIONAL BANK**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2019, a true and correct copy of the foregoing document was served by electronic transmission through the Court's Electronic Case Filing system.

*/s/ Theodore M. Becker*_____
Theodore M. Becker
