UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| STEPHANIE WOZNICKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No:  6:18-cv-2090-Orl-41GJK |
| | § | |
| RAYDON CORPORATION, DONALD | § | |
| K. ARIEL, DAVID P. DONOVAN, THE | § | |
| ESOP COMMITTEE OF THE RAYDON | § | |
| CORPORATION EMPLOYEE STOCK | § | |
| OWNERSHIP PLAN and LUBBOCK | § | |
| NATIONAL BANK, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT LUBBOCK NATIONAL BANK'S DISPOSITIVE MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(e), 41(b) and the inherent authority of this Court, Defendant Lubbock National Bank moves to dismiss with prejudice all claims asserted against it in Plaintiff's Class Action Amended Complaint ("Amended Complaint").[1]

## I.        STATEMENT OF RELIEF SOUGHT

Plaintiff attempts to state claims under The Employee Retirement Income Security Act of 1974 ("ERISA") against Lubbock National Bank in Counts I, III, IV, and VI of the Amended Complaint.  For the reasons set forth below, Plaintiff's Amended Complaint fails to state any cognizable claim against Lubbock National Bank, and Lubbock National Bank requests that the Court dismiss with prejudice all claims asserted against Lubbock National Bank.

---

[1] Plaintiff's initial complaint was dismissed by the Court *sua sponte* as an impermissible "shotgun" pleading.

## II.     ARGUMENT

### A.     THE AMENDED COMPLAINT FAILS TO STATE AN ERISA CLAIM AGAINST LUBBOCK NATIONAL BANK.

ERISA §502(a) contains the exclusive right of action under ERISA.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (Congress did not authorize causes of action beyond those in ERISA Section 502(a)); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.").  Section 502(a)(2) authorizes a participant, beneficiary, fiduciary, or the Secretary of Labor to bring a claim to recover the "appropriate relief" found under ERISA § 409.  29 U.S.C. § 1132.  Section § 409(a) provides in relevant part as follows: (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for a violation of section 1111 of this title. 29 U.S.C. § 1109(a) (emphasis added).

In order to prove a violation of ERISA § 502(a)(2) under Counts I, III or IV of the Amended Complaint, Plaintiff has the burden of proving that:

(1) Defendant is a plan fiduciary with respect to the particular wrongful conduct alleged;

(2) Defendant has violated a fiduciary obligation; and

(3) the violation caused losses to the Plan and harm to the Plaintiff.

*Allen v. Greatbanc*, 835 F.3d 670, 678 (7th Cir. 2016), *quoting Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010); *see also Thole v. U.S. Bank National Assoc.*, 873 F.3d 617, 629

(8th Cir. 2017).  It is within this statutory framework that the claims Plaintiff attempts to assert against Lubbock National Bank in Counts I, III, and IV of Plaintiff's Amended Complaint must be viewed.[2]

To survive a motion to dismiss, a plaintiff's complaint must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be "plausible," a complaint must contain "factual allegations [that] are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quotation omitted); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009)) (in evaluating the sufficiency of a complaint, courts must eliminate allegations that are mere legal conclusions).

In *Fifth Third Bancorp v. Dudenhoeffer*, the Supreme Court articulated the steps necessary to separate the "plausible sheep" from the "meritless goats" in a breach of fiduciary duty action under ERISA.  573 U.S. 409, 425 (2014).  According to the *Supreme* Court, this analysis requires "careful, context-sensitive scrutiny" of a plaintiff's allegations based on the "circumstances . . . prevailing" at the time the fiduciary acted.  *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)).  The "appropriate inquiry" in these cases focuses on what the fiduciary knew about ***at the time*** in question—***not*** what is now known with the advantage of hindsight.  *Id.*; *see also Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917–18 (8th Cir. 1994) (explaining that ERISA's fiduciary standard "is not concerned with results," but "focuses on the fiduciary's conduct preceding the challenged decision").

---

[2] As explained in Section II.C. below, Plaintiff's claim in Count VI of the Amended Complaint under ERISA §502(a)(3) for equitable relief is derivative of the other claims asserted against Lubbock National Bank.  If the Court dismisses the other claims against Lubbock National Bank, Plaintiff's claim in Count VI is moot.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts that *plausibly* suggest that the fiduciaries' "decision making process was flawed." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *Smith v. Williams*, 819 F. Supp. 2d 1264, 1283 (M.D. Fla. 2011); *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1083 (D. Minn. 2017). Because ERISA's fiduciary standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results," *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996), a plaintiff cannot state a claim by alleging from "the vantage point of hindsight." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011); *see also Smith*, 819 F. Supp. 2d at 1283 ("Plaintiffs cannot state a claim for breach of the duty to monitor without adequate allegations that the party being monitored acted inappropriately.").

Employee stock ownership plans ("ESOP") are defined contribution benefit plans that are designed to invest primarily in employer stock. ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); 26 U.S.C. § 401(a)(11)(C); *Keach v. U.S. Trust Co. N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004) (citing ERISA § 407(d)(6)(A), 29 U.S.C. § 1107(d)(6)(A)). ESOPs and other defined contribution plans are "individual account plans," meaning that the plan "provides . . . for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses . . . which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

Congress has taken a special "interest in encouraging" ESOPs as a means of fostering employee ownership. Tax Reform Act of 1976, § 803(h); *See, e.g.*, *Dudenhoeffer*, 573 U.S. at 420 (noting that "Congress views as important" the promotion of "employee ownership of employer stock"); *In re Citigroup ERISA Litig.*, 662 F.3d 128, 136 (2d Cir. 2011) ("ERISA's core goal[] . . . [is] encouragement of employee ownership through the special status provided to employee stock

ownership plans. . . .").

Given the challenges in valuing privately held stock, courts review a fiduciary's decisions with respect to valuations of ESOP stock "deferentially." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).

Accepting as true for the purposes of this motion Plaintiff's well-pleaded factual allegations in Counts I, III and IV of the Amended Complaint, and drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint fails to state any cognizable claim for relief against Lubbock National Bank.

**1.   Count I Fails to State a Claim Against Lubbock National Bank.**

In Count I of the Amended Complaint, Plaintiff asserts that Lubbock National Bank engaged in a transaction prohibited by ERISA §§ 406(a)(1)(A) and (D).

Section 406(a) of ERISA prohibits a fiduciary from engaging in a transaction, directly or indirectly, between a plan and a party in interest. *See* 29 U.S.C. §1106(a)(1)(A). A party in interest includes, among others: any fiduciary, counsel, or employee of the benefit plan; a person providing services to such plan; an employer whose employees are covered by such plan; certain owners of the employer; and certain relatives of other parties in interest. *See* 29 U.S.C. § 1002(14)(A)-(I).

Based on the broad wording of Section 406(a), many, if not all, transactions necessary to form ESOPs would fall within the scope of that section and would therefore constitute prohibited transactions. Therefore, in order to permit such fundamental (and essential) transactions, Section 408(b)(17) of ERISA limits the broad prohibition found in Section 406(a) and provides that it is not applicable to transactions where the "plan receives no less, nor pays no more, than adequate consideration." 29 U.S.C. § 1108(b)(17)(A). ERISA defines the term "adequate consideration" to mean "the fair market value of the asset as determined in good faith by the trustee or named

fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18).

As a consequence of these foundational rules, "[t]he role of courts in reviewing the adequacy of consideration in an ERISA case is to determine whether the fiduciary can show that the price paid represented a good faith determination of the fair market value of the asset . . . ." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006). To that end, the Department of Labor has identified two requirements for a transaction to be found to be supported by adequate consideration: (1) a substantive requirement that the value assigned reflect the fair market value of the asset, and (2) a procedural requirement that the fiduciary determine the value assigned in good faith. *Fish v. GreatBanc Trust. Co*., 749 F.3d 671, 680 (7th Cir. 2014) (citing Prop. DOL Reg. § 2510.3–18(b)); 53 Fed. Reg. 17,632–33 (May 17, 1988); *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002); *Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir. 1983)).

In deciding whether the trustee has determined the fair market value of the asset in good faith, the court should "focus on the process the trustee used to determine the fair market value and determine whether such a process was consistent with professional norms and ERISA fiduciary obligations." *Brundle,* 241 F. Supp. 3d at 633. The good faith requirement establishes an objective standard of conduct, which is assessed in light of all relevant facts and circumstances. *See Fish v. Greatbanc Trust Co.,* No. 09 C 1668, 2016 WL 5923448, at *62 (N.D. Ill. Sept. 1, 2016).

The court should "not determine the fair market value from scratch and then compare its calculation to the trustee's." *See Brundle,* 241 F. Supp. 3d at 633*; see also Fish*, 2016 WL 5923448, at *62 ("The ultimate outcome of an investment is not proof that a fiduciary acted imprudently."). A "fiduciary's duty of care requires prudence, not prescience and the

appropriateness of an investment is to be determined from the perspective of the time the investment was made, not from hindsight." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 638 (7th Cir. 2005).

In this case, the Plaintiff in Count I of the Amended Complaint fails to plead sufficient facts to plausibly allege that Lubbock National Bank did not act with the requisite care in analyzing, negotiating, and ultimately approving the ESOP Transaction.

### a.    A Stock Decline, Without More, Fails to Establish a Breach of Fiduciary Duty.

Plaintiff rests her claim against Lubbock National Bank in Count I on the assertion that the value of Raydon's shares dropped following the closing of the Transaction.  However, the law is well settled that evidence of a stock drop, even when substantial, is insufficient to establish liability under ERISA.  Plaintiff fails to connect the decline in the value of Raydon stock with any conduct on the part of Lubbock National Bank.

Where, as here, the Plaintiff attempts to rest her claim on a stock decline, even if significant, the focus in judging a trustee's fiduciary duty is on the process the fiduciary employed to arrive at its decision to approve the transaction.  *Pension Ben. Guar. Corp. ex rel St. Vincent Catholic Med. Center's Retirement Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Courts undertaking this inquiry have noted that ERISA's duty of care requires "prudence, not prescience."  *Id.* at 716 (internal quotation marks omitted).  It is well-settled that a drop in the value of a company's stock, standing alone, does not support allegations that a fiduciary acted imprudently.  *See Gearren v. The McGraw-Hill Companies, Inc.*, 660 F.3d 605, 609-610 (2d Cir. 2011) (64% stock decline insufficient to show defendants knew company was in dire circumstances); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096, 1099 (9th Cir. 2004) ("[m]ere stock fluctuations, even those that trend downhill significantly, are insufficient to

establish the requisite imprudence . . .").   Stripped of Plaintiff's speculative and conclusory allegations, there is nothing in Count I of the Amended Complaint to credibly suggest that Lubbock National Bank conducted inadequate diligence.

In an attempt to cast doubt on the prudence of the decision to move forward with the ESOP Transaction, Plaintiff makes generalized allegations regarding three primary issues: (1) the stop work order for the PEO-STRI contract; (2) operational issues within Raydon, such as the "volatile" history of Raydon, fluctuations in Raydon's workforce, as well as perceived mismanagement such as over-hiring, organizational inefficiencies, and payment delays to Raydon from the military; and (3) prior expressions of interest by third-parties to acquire Raydon.   These allegations all fall short.

### (i) Stop Work Order

Plaintiff relies heavily on its allegations regarding the stop work order on the $99 million PEO-STRI contract.   Like the majority of the allegations in the Amended Complaint, Plaintiff's statements regarding the PEO-STRI contract are not supported by well-pleaded facts.

In her initial Complaint, Plaintiff alleged that Lubbock National Bank was ***not*** aware that the PEO-STRI contract had been terminated.  *See* (Compl. ¶ 22).   In her Amended Complaint, Plaintiff now alleges that Lubbock National Bank ***was*** aware of the contract cancellation, but that Raydon and the Director Defendants "failed to disclose the implications of the contract termination for Raydon's business plans and financial projections." (Am. Compl. ¶ 35).   Plaintiff speculatively alleges that the financial projections prepared by Raydon's management were too rosy.   (Am. Comp. ¶¶ 36–37).

Plaintiff's shifting, speculative and conclusory allegations regarding Lubbock National Bank's inquiry do nothing to state a claim.   Such allegations only highlight the deficiencies that abound in the Amended Complaint.   Plaintiff's allegations in the Amended Complaint actually

demonstrate that Lubbock hired a qualified valuation professional to conduct a valuation and that the valuation professional was aware of the termination of the PEO-STRI contract.

Plaintiff is now essentially alleging that even though Lubbock National Bank and the valuation professional it hired were aware of the facts that Plaintiff in her initial Complaint alleged they were not aware of, their analysis was deficient in some way (that Plaintiff fails to allege). This is the very sort of speculative, hindsight analysis that Courts have rejected when evaluating the conduct of fiduciaries under ERISA.

### (ii) Corporate Management and Operational Issues

Plaintiff attempts to suggest that alleged corporate mismanagement contributed to the decline in the value of Raydon's stock. According to the Amended Complaint, however, those things all occurred either well ***before*** the Transaction, during the period 2010–2012, or well ***after*** the Transaction, during the period 2016–2018.[3] In *Fifth Third Bancorp v. Dudenhoeffer*, however, the Supreme Court made it clear that the fiduciary's conduct should be assessed based on the "circumstances . . . prevailing" at the time the fiduciary acted.

It is well settled, moreover, that allegations of corporate mismanagement, without more, do not give rise to a claim for breach of fiduciary duty. *See Smith*, 819 F. Supp. 2d at 1283 n.14 ("[A]llegations of corporate mismanagement . . . are not actionable under ERISA."); *Husvar v. Rapoport*, 430 F.3d 777, 782 (6th Cir. 2005) (dismissing claim under ERISA where complaint does not allege that defendants mismanaged the plan); *Gelles v. Skrotsky*, 15 F. Supp. 2d 1293, 1294-95 (M.D. Fla. 1998).

---

[3] The Amended Complaint makes reference to the layoffs perhaps to suggest that Raydon's operations were unstable and not properly managed. However, it is equally plausible that the changes in the number of Raydon employees demonstrate that company management took appropriate steps to scale its workforce based upon anticipated future demand. When allegations are at least as consistent with lawful conduct as they are unlawful conduct, they fail to support a claim for relief. *See Pension Ben. Guar. Corp.*, 712 F.3d at 718.

The allegations regarding the workforce and other operational matters at Raydon fail to add any support to Plaintiff's claim that Lubbock breached its fiduciary duty by purportedly causing the ESOP to engage in a prohibited transaction. Rather, those allegations amount to nothing more than a collection of random observations regarding non-contemporaneous events relating to Raydon's operations that fail to substantiate the claim that the ESOP paid more than fair market value for the company's stock.

### (iii)    Cubic Corporation

Plaintiff asserts that Cubic Corporation, another defense contractor, made an offer to acquire Raydon for $43 million in April of 2015. Plaintiff suggests that Cubic Corporation's analysis and diligence on Raydon was more robust that Lubbock National Bank's diligence and that the valuation Lubbock relied upon was less accurate than Cubic Corporation's analysis.

Plaintiff's speculation regarding the reason Cubic Corporation ultimately decided to not pursue the acquisition and the extent to which Lubbock considered that offer is both conclusory and unsubstantiated. Ignoring any plausible reasons why a merger or acquisition might not be consummated, Plaintiff merely speculates, without substantiation or support, that Cubic must have identified trouble on the horizon that Lubbock National Bank failed to detect. Absent well-pled factual allegations as to why the Cubic transaction fell through, Count I of the Amended Complaint falls short. Plaintiff tenders nothing more than "'naked assertion [s]' devoid of 'further factual enhancement'" in support of her prohibited transaction claim, which is insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678. In sum, Count I of the Amended Complaint lacks the facts necessary to connect the drop in the value of Raydon to any act or omission by Lubbock National Bank.

Count I of the Amended Complaint should be dismissed.

### 2.    Count III Fails to State a Claim Against Lubbock National Bank

In Count III of the Amended Complaint, Plaintiff asserts that Lubbock National Bank committed a breach of fiduciary duty under ERISA §§ 404(a)(1)(A) and (B).

The Supreme Court in *Dudenhoeffer* made it clear that a plaintiff must plead its claims with specificity against the defendant and that a fiduciary is not expected to predict the future of the company's stock performance.  573 U.S. at 427.  To that end, courts judge a fiduciary's actions based upon information available to the fiduciary at the time of the transaction, not with hindsight.  *Pension Ben. Guar. Corp.*, 712 F.3d at 716.  As a consequence, the test of prudence is one of conduct, not results.  *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983).  The "prudence of a fiduciary's action depends on the information available to the fiduciary at the time of the decision, and assertions of imprudence devoid of contextual support are insufficient to state a claim under ERISA."  *In re Target Corp.*, 275 F. Supp. 3d 1063, 1088 (D. Minn. 2017).

Count III of Plaintiff's Amended Complaint fails to meet the *Dudenhoeffer* standards. Plaintiff simply points to the purported decline in the value of Raydon and alleges in the most conclusory fashion that Lubbock National Bank was required to remedy the overpayment made to the selling shareholders.  Plaintiff does not allege any facts supporting a failure of Lubbock National Bank's fiduciary process.  Count III of the Amended Complaint similarly fails to identify any facts that show Lubbock National Bank engaged in any unlawful conduct, caused the ESOP to suffer any harm, or that there was some conduct that Lubbock National Bank reasonably should have investigated. Plaintiff's allegations simply conclude that an imprudent action was undertaken, and are therefore devoid of the requisite factual support necessary to state a claim under ERISA.

As to the purported corrective action Plaintiff asserts was required, the Amended Complaint speculates that Lubbock National Bank should have, *as necessary*, corrected the prohibited transaction by seeking to recover the overpayment from the selling shareholders. Plaintiff's purely hypothetical and speculative remedy fails to satisfy the stringent pleading requirements the Supreme Court articulated in *Dudenhoeffer*, 573 U.S. 409, 420 (2014).

To satisfy the standards articulated in *Dudenhoeffer*, Plaintiff must allege a plausible "alternative action" that Defendants could and should have taken that would have protected participants' interests. *Id*. at 428. To plead an "alternative course of action" requires a plaintiff to identify an act (1) that would not have been illegal, and (2) that no reasonable fiduciary could have concluded might be more likely to harm the plan than help it. *Id*.; *see also Hill v. Hill Bros. Constr. Co.*, No. 3:14-cv-213, 2016 WL 1252983, at *5 (N.D. Miss. Mar. 28, 2016) (dismissing claim against privately-held ESOP due to failure to plead an alternative action under *Dudenhoeffer*). The allegations in the Amended Complaint fail to meet this standard.

To the extent Plaintiff argues the *Dudenhoeffer* pleading standard does not apply to this action, ample authority supports such application. In *Hill*, the court provided an in-depth analysis of the basis for applying the *Dudenhoeffer* "alternative action" pleading requirement to privately-held companies. *See* 2016 WL 1252983, at *5–6. Among the reasons provided for applying *Dudenhoeffer* in the privately-held business context was that *Dudenhoeffer* does not limit itself to public companies. *Id*. at *5. Rather, the *Dudenhoeffer* court merely conducted a context-specific inquiry of the case at hand. *Id*. "Looking to the other considerations the Supreme Court set forth which 'inform[ed] the requisite analysis' of the 'alternative action' pleading standard, none of the situations outlined by the Court are relevant for closely held corporations; however, that does not necessarily preclude the application of the alternative action pleading standard to closely-held

entities." *Id.* (alteration in original).  Accordingly, the *Hill* court applied *Dudenhoeffer* in case concerning a privately-held company.  *Id.* at *6 ("The Court's reading of [*Dudenhoefer*] does not preclude application of the 'alternative action' standard to this situation.").

Courts in cases decided after *Hill* have also approved of the same standard.  *See, e.g.*, *Vespa v. Singler-Ernster, Inc.*, No. 16-cv-03723-RS, 2016 WL 6637710 (N.D. Cal. Nov. 6, 2016) ("A fellow district court case, while not binding, provides a persuasive explanation of how [*Dudenhoeffer*] applies in the context of a privately-held corporation.") (citing *Hill*, 2016 WL 1252983, at *5); *Fish*, 2016 WL 5923448, at *53 n.24 ("This Court finds the analysis in *Hill* persuasive.").

Count III of the Amended Complaint should be dismissed.

**3.      Count IV Fails to State a Claim Against Lubbock National Bank.**

In Count IV of the Amended Complaint, Plaintiff asserts that Lubbock National Bank engaged in prohibited transactions under ERISA § 406(a).[4]  The crux of Plaintiff's claim in Count IV is that the inclusion of "non-compete bonus payments" to certain of the Director Defendants "were not needed as an economic incentive to deter [Director Defendants] from competing against Raydon." (Am. Compl. ¶ 122).  But Plaintiff does no more than speculate regarding the Director Defendants' "economic incentive" and does not at all account for whether competing with Raydon could have been more profitable for the Director Defendants.  Indeed, allegations that it would not have been more profitable for the Director Defendants to compete with Raydon absent the non-compete payments contradict Plaintiff's other allegations regarding the allegedly perilous condition of Raydon.

---

[4] The claim against Lubbock National Bank in Count IV relates only to ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).  *See* (Am. Compl. ¶ 124).  The claims that relate to § 406(b) are brought only against the Director Defendants.

Plaintiff further asserts that the ESOP did not receive adequate consideration in exchange for the non-compete agreements.  This assertion fails, however, because an agreement not to compete is itself valuable consideration, and non-competition agreements are regularly enforced. *See* § 542.335(1), Florida Statutes ("enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such covenants are reasonable in time, area, and line of business, is not prohibited.").[5]

Furthermore, Count IV fails as a matter of law.  ERISA § 406(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not  cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]"  ERISA § 406(a)(1)(D); 29 U.S.C. § 1106(a)(1)(D). The court in *Spires v. Schools*, 271 F. Supp. 3d 795 (D.S.C. 2017) explained the difference between claims brought under § 406(a) and § 406(b).  "[W]here [§ 406(a)] applies to transactions in which the Plan is a party or Plan assets are used or transferred, [§ 406(b)] more broadly 'prohibits fiduciaries of an ERISA plan from receiving 'any consideration' coming 'from any party dealing with' the plan in connection with a transaction 'involving' the plan assets.'"  *Id.* at 812 (quoting *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1056–57 (W.D. Wis. 2012)).

*Spires* illuminates the reasons Plaintiff's claim in Count IV against Lubbock National Bank must be dismissed.  In *Spires,* the defendants were plan fiduciaries and members of the company's senior management.  *Id.* at 798.  The company sold all of its stock, and as part of the purchase agreement, paid $700,000 to certain of the defendants as consideration for their agreement not to compete with the purchaser.  *Id.* at 810.  The funds for those $700,000 payments "diverted funds

---

[5] *See also* § 542.335(1)(b), Florida Statutes ("The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.").

from the Plan participants to the Fiduciary Defendants." *Id*. Thus, because the transaction utilized funds from the plan, it fell within the scope of § 406(a).

In this case, however, Plaintiff makes no allegation that any of the ESOP funds were diverted to make the "non-compete bonus payments" to the Director Defendants. Rather, Plaintiff specifically alleges, "Defendants Ariel and Donovan entered into agreements whereby they would receive non-compete bonus payments *from Raydon*[.]" (Am. Compl. ¶ 120). Unlike in *Spires*, the non-compete payments at issue in this case were not made using the ESOP's funds. Plaintiff attempts to tie this transaction into its general theory that there must have been malfeasance because of the post-ESOP Transaction stock drop by alleging, "these non-compete bonus payments reduced the value of Raydon and therefore the value of the ESOP's Raydon stock." (Am. Compl. ¶ 123). But it was well within the rights of Raydon's management to make the non-compete payments to the Director Defendants in recognition that failure to do so could ultimately lead to the complete failure of Raydon's business. It is not within the purview of Plaintiff or the courts to second-guess Raydon's business judgment in making such payments, especially considering the reasonable basis for Raydon's decision.

Count IV of the Amended Complaint should be dismissed.

### 4.      The Amended Complaint Should be Dismissed as a Shotgun Pleading

The Court *sua sponte* dismissed Plaintiff's Original Complaint as a "shotgun pleading" on April 9, 2019. (ECF No. 66). Plaintiff then filed the Amended Complaint on April 23, 2019 in an attempt to correct the defects identified by the Court's Order. However, the Amended Complaint suffers the same deficiencies as the conclusory statements as the Original Complaint. For example, with respect to Count I of the Amended Complaint, Plaintiff generally makes reference to by incorporating virtually all of her factual allegations (83 of 90 paragraphs) into Counts I, regardless

---

of whether they bear any relation to the claim asserted.  Plaintiff makes a similar incorporation by

reference with respect to Count III. The Raydon Defendants discuss and analyze the shotgun nature

of Plaintiffs' Amended Complaint in detail in Section III.B of their Motion to Dismiss.  Lubbock

National Bank refers to and incorporates that argument here for the sake of efficiency.

## B.    THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE THAT LUBBOCK NATIONAL BANK CAUSED PLAINTIFF OR THE ESOP TO SUFFER A COGNIZABLE LOSS.

Even where conduct may be construed as a breach of a fiduciary duty under ERISA, the

fiduciary can be held liable only upon a finding that the breach actually caused a loss to the plan.

*See Plasterers' Local Union No. 96 Pension Plan v. Pepper,* 663 F.3d 210, 217 (4th Cir. 2011);

*see also Allison v. Bank One – Denver,* 289 F.3d 1223, 1239 (10th Cir. 2002); *Friend v. Sanwa*

*Bank,* 35 F.3d 466, 469 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of fiduciary

duty only to the extent that losses to the plan result from the breach.").  It is proper for the Court

to determine at the motion to dismiss stage whether a plaintiff has set forth sufficient factual

allegations to adequately allege loss causation.  *See Metyk v. KeyCorp,* 560 F. App'x 540, 542 (6th

Cir. 2014); *Cherepinsky v. Sears Roebuck & Co.*, 487 F. Supp. 2d 632, 637-38 (D.S.C. 2006)

(holding plaintiff failed to state a claim where he did not allege the breach caused a loss to the

plan).

The Amended Complaint fails to plausibly allege that Lubbock National Bank caused the

ESOP to suffer a loss.  For example, Plaintiff describes a purported decline in the value of

Raydon's stock following the ESOP Transaction, and points to things that Plaintiff speculates

caused the decline, such as management decisions that Plaintiff questions, as well as the

cancellation of the contract Raydon won from the Army National Guard.  (Am. Compl. ¶¶ 31, 49,

58).  These are not well-pleaded facts, nor does Plaintiff plausibly allege conduct ***on the part of***

***Lubbock National Bank*** that contributed to a loss.

Worse still, Plaintiff's allegations of causation have shifted between the initial complaint and the Amended Complaint.  In the initial complaint, Plaintiff alleged that Lubbock National Bank was not aware of the notice to stop work on the PEO-STRI contract (Original Compl., ECF No. 1, ¶ 40). Plaintiff now alleges the ***opposite*** - that Lubbock was aware that the PEO-STRI contract had been terminated, which purportedly rendered management's financial projections unreasonable (Am. Compl., ECF No. 67, ¶ 35).  Plaintiff, however, fails to specify how the contract termination actually impacted Raydon's projections or the valuation.  Plaintiff also fails to include any well-pled allegations in the Amended Complaint that suggest or demonstrate the extent to which the cancellation of the contract may have potentially impacted Raydon's revenue or EBITDA.  Plaintiff also fails to articulate what percentage of Raydon's revenues and EBITDA were attributable to the PEO-STRI contract, and accordingly, fails to articulate whether the cancellation of the contract had any material impact on the projections that were used in the valuation conducted in connection with the 2015 ESOP Transaction

Plaintiff also fails to allege how Raydon was valued in connection with the 2015 ESOP Transaction, or how forward-looking projections might factor into the valuation. There are numerous valuation methodologies, some rely on forward-looking projections of company performance, while others rely on historical data.  *See, e.g., In re Plains Exploration & Prod. Co. S'holder Litig.*, 2013 WL 1909124, at *9 (Del. Ch. May 9, 2013);  *Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494, 1519 (D.D.C. 1987). The extent to which one or more valuation methodologies were used and/or weighted in connection with the valuation would directly impact the extent to which the cancellation would affect the projections, such as increases or drops in projected revenues and profits.

The Amended Complaint similarly fails to acknowledge that once the contract was terminated, even if the Court assumes that there was a loss in revenue, certain costs and expenses would have been avoided, which could have potentially further lessened or minimized the impact that cancellation of the PEO-STRI contract would have on the projections used in the valuation. There are simply no factual allegations that support Plaintiff's bare-bones allegations that the projections were overly rosy, unrealistic, or that Lubbock National Bank and the valuation professional it hired failed to appropriately evaluate the impact the cancellation would have on the viability of those projections.

Plaintiff's other allegations fare no better.  Plaintiff points to a potential acquisition that did not materialize, along with fluctuations in Raydon's workforce, and once again speculates that Lubbock National Bank failed to fully appreciate how those events impacted Raydon's financial outlook.  Yet, the Amended Complaint concedes that Lubbock National Bank was aware of those facts.   In an attempt to circumvent the fact that Lubbock National Bank was aware of those events, Plaintiff resorts to asserting Lubbock National Bank failed to fully analyze those facts.   The Amended Complaint, however, fails to plead facts that plausibly suggest that even though Lubbock National Bank was aware of those events, it failed to appreciate their impact on Raydon's business, which in turn, caused Lubbock National Bank to allow the ESOP to pay more than adequate consideration for the shares of Raydon.

In the absence of allegations that support the conclusory allegation that Lubbock National Bank was aware of the events described in the Amended Complaint but nevertheless failed to fully appreciate how those events may have impacted Raydon's financial projections, the Amended Complaint fails to establish the requisite causal between the alleged harm to the ESOP and any act or omission on the part of Lubbock National Bank. *See Pugh v. Tribune Co.*, 521 F.3d 686, 700

(7th Cir. 2008) (plaintiff must allege that each defendant was in a position to know or learn of the information, that is, a "conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim"); *see also Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1089–92 (N.D. Ill. 2004) (collecting cases finding that allegations that a defendant was a member of a plan's investment committee is an insufficient basis for inferring that he should have been privy to certain company information).

Thus, to the extent the Amended Complaint even identifies a loss, the allegations in the Amended Complaint fail to plausibly allege Lubbock National Bank **caused** the ESOP to suffer a loss. As a result, Plaintiff's claims against Lubbock National Bank should be dismissed in their entirety.

## C.   COUNT VI IS DERIVATIVE OF PLAINTIFF'S OTHER CLAIMS.

In Count VI of the Amended Complaint brought under ERISA § 502(a)(3), Plaintiff asserts that Lubbock National Bank violated ERISA § 410(a) by entering into a Trust Agreement that contains an indemnification provision that Plaintiff contends is void, and Plaintiff seeks to enjoin indemnification. (Am. Compl. ¶¶ 143–145.) ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void as against public policy." *Harris v. GreatBanc Trust Co.*, Case No. 5:12-cv-01648-R, 2013 WL 1136558, at *2 (C.D. Cal. Mar. 15, 2013). In Count VI of the Amended Complaint, Plaintiff fails to allege how the indemnification provision violates ERISA § 410(a).

Plaintiff's claim in Count VI is derivative of the other claims asserted against Lubbock National Bank in the Amended Complaint. To the extent that the Court dismisses the other claims against Lubbock National Bank, Plaintiff's claim under Section 410(a) of ERISA would become

moot.

### III.   CONCLUSION

For all the foregoing reasons, Defendant Lubbock National Bank requests this Court to:

(1) dismiss with prejudice the claims asserted against it in Counts I, III and IV of the Plaintiff's Amended Complaint, and

2) rule that the claim in Count VI is moot.


Dated: May 28, 2019                By:      */s/ Theodore M. Becker*
                                           Theodore M. Becker
                                           State Bar No.: 0151262 (*admitted pro hac vice*)
                                           tbecker@mwe.com
                                           444 West Lake Street, Suite 4000
                                           Chicago, Illinois 60606-0029
                                           (312) 984-6934
                                           (312) 984-7700 (facsimile)

                                           Eliot T. Burriss
                                           State Bar No.: 24040611 (*admitted pro hac vice*)
                                           eburriss@mwe.com
                                           2501 N. Harwood, Suite 1900
                                           Dallas, Texas 75201
                                           (214) 295-8000
                                           (972) 232-3098 (facsimile)

                                           Michael G. Austin
                                           Florida Bar No.: 457205
                                           maustin@mwe.com
                                           Joseph Wasserkrug
                                           Florida Bar No.: 112274
                                           jwasserkrug@mwe.com
                                           333 SE 2nd Avenue, Suite 4500
                                           Miami, FL 33131-4336
                                           (305) 347-6517
                                           (305) 675-8403 (facsimile)

                                           **ATTORNEYS FOR DEFENDANT**
                                           **LUBBOCK NATIONAL BANK**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2019, a true and correct copy of the foregoing document was served by electronic transmission through the Court's Electronic Case Filing system.

<u>*/s/ Theodore M. Becker*</u>
Theodore M. Becker