STEPHANIE WOZNICKI,
on behalf of herself and all others
similarly situated,

        Plaintiff,

v.                          Case No:   6:18-cv-2090-Orl-78GJK

RAYDON CORPORATION,
DONALD K. ARIEL, DAVID P.
DONOVAN, THE ESOP
COMMITTEE OF THE RAYDON
CORPORATION EMPLOYEE
STOCK OWNERSHIP PLAN,
LUBBOCK NATIONAL BANK,
DAVID P. DONOVAN 2012
TRUST, ARIEL FAMILY TRUST
DATED DECEMBER 18, 2012,
PAMELA W. ARIEL, VERNA L.
DONOVAN 2012 TRUST, DAVID
P. DONOVAN, JR.,
IRREVOCABLE TRUST DATED
JULY 25, 2008, LORI L. WEISS
IRREVOCABLE TRUST DATED
JULY25, 2008, NIKI J. DUNCAN
IRREVOCABLE TRUST DATED
JULY 25, 2008,

        Defendants.

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the

following motion:

<table>
<tr><td><strong>MOTION:</strong></td><td><strong>JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION TO MODIFY CLASS AND MEMORANDUM OF LAW IN SUPPORT THEREOF (Doc. No. 208)</strong></td></tr>
<tr><td><strong>FILED:</strong></td><td><strong>August 26, 2020</strong></td></tr>
</table>

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.    BACKGROUND

### A.    Facts and Procedural History

Defendant Raydon Corporation ("Raydon") "was founded in 1988 and specializes in developing simulation and training technologies for military training by the U.S. Armed Services." Doc. No. 98 at 9. Plaintiff Stephanie Woznicki alleges that in 2015, Raydon was a closely held company that was not traded on any public market or exchange. Doc. No. 67 at ¶ 21. In 2015, the "Selling Shareholders"[1] sold the stock of Raydon to the Raydon Corporation Employee Stock Ownership Plan (the "ESOP") for $60.5 million (the "2015 Transaction"). Doc. No. 67 at ¶ 2. Defendant Lubbock National Bank ("Lubbock") was the trustee of the ESOP and facilitated the 2015 Transaction. *Id.* at ¶¶ 19, 47.

---

[1] The Selling Shareholders are Defendants Donald K. Ariel; David P. Donovan; David P. Donovan 2012 Trust; Ariel Family Trust Dated December 18, 2012; Pamela W. Ariel; Verna L. Donovan 2012 Trust; David P. Donovan, Jr., Irrevocable Trust Dated July 25, 2008; Lori L. Weiss Irrevocable Trust Dated July 25, 2008; and Niki J. Duncan Irrevocable Trust Dated July 25, 2008. Doc. No. 67 at ¶ 17.

The 2015 Transaction included million-dollar payments to Defendants Donald K. Ariel and David P. Donovan (the "Director Defendants") in return for their promises to not compete with Raydon. *Id.* at ¶ 63. This was in addition to subordinated notes obligating Raydon to pay the Director Defendants millions of dollars in principal and interest over at least fifteen years after the sale. *Id.* at ¶¶ 63-64. Woznicki alleges that there is "no rational economic basis" for the non-compete agreements because Raydon is indebted to the Director Defendants for at least fifteen years and the Director Defendants competing with the company might cause it to default on the subordinated note payments. *Id.* at ¶ 65.

As part of the 2015 Transaction, Raydon agreed to indemnify the Director Defendants against claims regarding their services as fiduciaries of the ESOP. *Id.* at ¶ 75. Raydon also agreed to indemnify Lubbock against claims related to the ESOP or its performance of its duties as trustee of the ESOP. *Id.* at ¶ 76. Woznicki believes Lubbock failed to adequately investigate Raydon and that it should not have relied on information provided to it by persons with a financial interest in the 2015 Transaction. *Id.* at ¶¶ 35-45.

On December 31, 2015, the fair market value of Raydon's stock held by the ESOP was $5.11 million. *Id.* at ¶ 53. On December 31, 2017, the stock was worth $4.55 million. *Id.*

Woznicki is a participant in the ESOP. *Id.* at ¶ 6. She complains that when

they engaged in the 2015 Transaction, the officers and directors of Raydon, their relatives, and their relatives' trusts (the "Raydon Defendants"), along with Lubbock, violated the Employee Retirement Income Security Act of 1974 ("ERISA"). Doc. No. 67.

On December 5, 2018, Woznicki filed suit against the Raydon Defendants and Lubbock. Doc. No. 1. On April 23, 2019, Woznicki filed an amended complaint that includes claims for (1) engaging in a prohibited transaction forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), against the Selling Shareholders and Lubbock; (2) engaging in a prohibited transaction forbidden by ERISA § 406(b), 29 U.S.C. § 1106(b), against the Selling Shareholders; (3) breach of fiduciary duty under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) against Lubbock; (4) breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) by Raydon, the ESOP Committee, and Director Defendants; and (5) violation of ERISA § 410 and ERISA § 502(a)(3) against Lubbock and the Director Defendants. Doc. No. 67. Woznicki sought a declaratory judgment, injunctive relief, disgorgement of profits made using the ESOP's assets, an accounting, constructive trusts, equitable liens on funds wrongfully withheld by Defendants, and attorney's fees and costs. *Id.* at 36-37. Woznicki also asked the Court to certify a class consisting of "all participants in the . . . ESOP from September 30, 2015 or any time thereafter who vested under the terms of the Plan and those participants'

beneficiaries." *Id.* at ¶ 78.

On March 16, 2020, the Court granted Woznicki's motion to certify the class.

Doc. No. 163. The Court certified the following class:

> All participants in the Raydon Corporation Employee Stock Ownership Plan from September 30, 2015, or any time thereafter, who vested under the terms of the Plan and those participants' beneficiaries.
>
> Excluded from the named class are Defendants and their immediate family (including any person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

*Id.* at 4-5. Plaintiff's counsel, Robert Joseph Barton of Block & Leviton LLP, Daniel

M. Feinberg of Feinberg Jackson Worthman & Wasow LLP, and Sam Jones Smith

and Loren Bolno Donnell of Burr & Smith, LLP ("Class Counsel") were certified

as class counsel. *Id.* at 5. The Court also denied Woznicki's request that Briana

Nicole Tatum be a class representative because Tatum's claims are not typical of

the class. *Id.* at 4.

On August 25, 2020, the parties executed the Class Action Settlement

Agreement (the "Agreement"). Doc. No. 208 at 10. On August 26, 2020, the parties

filed a "Joint Motion for Preliminary Approval of Class Action Settlement and

Motion to Modify Class and Memorandum of Law in Support Thereof" (the

"Motion"). Doc. No. 208. In support of the Motion, the parties filed: 1) the

Agreement; 2) an affidavit from Class Counsel; 3) the proposed notice of the settlement to be sent to Class Members (the "Proposed Notice"); and 4) a proposed preliminary approval order (the "Proposed Preliminary Order"). Doc. Nos. 208-1 through 208-4.

## B.    The Settlement Terms

On August 25, 2020, the parties executed the Agreement setting forth the settlement they reached. Doc. No. 208. Pertinent provisions of the Agreement are discussed below.

### 1.    The Settlement Class

The Settlement Class is defined as follows in the Agreement:

> *All participants* in the Raydon Corporation Employee Stock Ownership Plan *who at any time from September 30, 2015 through December 31, 2019 received an allocation of Raydon shares to their ESOP accounts, whether such accounts were vested, partially vested or non-vested,* including all beneficiaries of those participants. Excluded from the Class are Defendants and their immediate family (including any person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

Doc. No. 208-2 at 7 (emphasis added). The parties concede that the class definition in the Agreement is different from the class certified by the Court. Doc. No. 208 at 13-14. They assert that the class definition in the Agreement includes all ESOP participants as part of the settlement, not just those who vested, *id.*, and the class

certified by the Court does not include an end date for those receiving an allocation of Raydon shares to their ESOP accounts, Doc. No. 163 at 4-5, as the defined class in the Agreement does.

2.    The Settlement Amount

The Raydon Defendants or their insurers will pay $1.2 million and Lubbock or its insurers will pay $1.2 million into an escrow account within ten days after an order preliminarily approving the settlement is entered (collectively, the "Settlement Amount"). Doc. No. 208-2 at 18. The Settlement Fund, which is the Settlement Amount plus any earnings and interest, less any Court-approved deductions and expenses, will be held in the escrow account. *Id.* at 13, 19. "After receipt of the Net Settlement Amount by the Raydon ESOP, the Net Settlement Amount will be spun-off from the Raydon ESOP and merged within and into the Raydon 401k Plan where it will be held, managed, and invested consistent with this Agreement. Any earnings or interest earned by the Settlement Fund will become part of the Settlement Fund."[2] *Id.*

Before the final order approving the settlement becomes non-appealable or the settlement is terminated, funds from the Settlement Fund may be used to pay

---

[2] The "Net Settlement Amount" is "the Settlement Fund or Cash Settlement Amount minus all Court-approved reductions such as the Fee Award, Expense Award, Service Award or approved settlement administration expenses." Doc. No. 208-2 at 10.

taxes and costs related to taxes and "all costs and expenses incurred in connection

with Class Notice and the administration of the Settlement." *Id.* at 19.

        3.      <u>Released Parties and Released Claims</u>

The Agreement defines the term "Raydon Releasees" as follows:

> Raydon Defendants, their parents, predecessors, successors, assigns, subsidiaries, affiliates, and insurers, and their past, present and future directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys.

*Id.* at 11. "Lubbock Releasees" are defined as

> Defendant Lubbock, its parents, subsidiaries, affiliates, shareholders and members, and each and all of the respective past, present, and future officers, directors, employees, fiduciaries, administrators, attorneys, agents, or insurers of any of them, and their respective predecessors, successors and assigns, both individually and in their capacities as shareholders, members, officers, directors, employees, fiduciaries, administrators, attorneys, agents and insurers.

*Id.* at 9-10. "Released Parties" are "any person who receives a release from another

party under this Settlement Agreement." *Id.* at 13.

The term "Released Claims" is defined as the following:

> [A]ny and all present, or past claims, demands, debts, damages, losses, offsets, obligations, liabilities, warranties, costs, fees, penalties, expenses, rights of action, suits, and causes of action of every kind and nature whatsoever, whether under federal, state, local, or foreign law, whether based on contract, tort, statute, regulation, ordinance, the common law, or another legal or equitable theory of recovery,

whether known or unknown, suspected or unsuspected, existing or claimed to exist, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, in law or in equity, that Plaintiff or the Class has that:

(i) pertain to investment in Company stock by or for the benefit of the Plan or the Plan's participants or beneficiaries, based on any alleged facts, circumstances, or conduct that are set forth in the Complaint or Amended Complaint at any time before, up to, and including the Effective Date of the Settlement;

(ii) arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the Effective Date of the Settlement and that are set forth in the Complaint or Amended Complaint, including:

(a) breach of duties or obligations (including fiduciary duties and obligations) under ERISA to the Plan, to Plaintiff, to the Class, or to the other participants in and beneficiaries of the Plan in connection with Company stock or otherwise;
(b) providing misleading information to Plan participants or beneficiaries;
(c) failure to appoint, remove and/or adequately monitor the Plan's fiduciaries or Company leadership;
(d) failure to adequately monitor the performance of and prudence of investment by the Plan in Company stock;
(e) violation of ERISA duties related to the acquisition, disposition, or retention of Company stock by the Plan;
(f) breach of ERISA duties in connection with the failure to avoid or resolve conflicts of interest in connection with the Company or the Plan;
(g) failure to bring a derivative action by the Plan on behalf of the Company against any director or officer of the Company;
(h) participation in a transaction prohibited by ERISA relating to the Company or the Plan; or
(i) knowing of an ERISA breach of fiduciary duty or prohibited transaction relating to the Company or the

Plan, and participating in or enabling such ERISA breach of fiduciary duty or prohibited transaction, or knowing of such ERISA breach of fiduciary duty or prohibited transaction and failing to remedy it;

(iii) would be barred by principles of res judicata had the claims asserted in the Action been fully litigated and resulted in a final judgment or order.

*Id.* at 11-13.

In addition to Released Claims, the Agreement also defines "Settled Claims" as "all claims released pursuant to this Settlement[,]" and "Settled Class Claims" as "the claims that the Class will release pursuant to this Settlement as provided in Section XIII." *Id.* at 13.

4.    Proposed Notice

The Agreement states that notice to the class will contain the following: "a brief description of the claims advanced by the Class, a summary of the terms of the Settlement Agreement, information on the attorneys' fees and costs sought by Class Counsel, describe the proposed Plan of Allocation of the Settlement Fund to the Class, and provide information about the Final Approval Hearing . . . ." *Id.* at 14. Notice will be provided by either "electronic notification . . . or, if unavailable or not approved by the Court, by mailing via first class US Mail to all Class Members, and . . . by posting the Class Notice on websites maintained by Co-Lead Class Counsel and the Settlement Administrator." *Id.* at 14-15. The Settlement Administrators' responsibilities clarify that electronic notification is via email. *Id.*

at 27. The notice will also contain instructions to electronically request a distribution or rollover of the Class Member's allocations from the Net Settlement Amount and any other information needed for the Class Member to electronically provide instructions regarding the manner by which the Class Member's allocations should be invested. *Id.* at 15. If a notice sent by U.S. mail is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address and promptly resend the notice. *Id.* at 16.

The Raydon Defendants will provide the following information to Co-Lead Class Counsel and the Settlement Administrator:

> (a) Contact information in electronic form for each person previously identified as a Class Member which shall include, to the extent such information is reasonably available in Defendants' files: (1) name; (2) a street mailing address; (3) telephone number(s); (4) e-mail address(es); (5) Social Security number; (6) sufficient information identifying the beneficiary Class Member (including any persons who has a qualified domestic relations order on file with the Company) for each participant Class Member (including any known contact or other identifying information); (7) the number of Raydon shares allocated to the Class Member's account under the ESOP, including the number that were vested, forfeited and/or liquidated under or distributed from the ESOP at any time between September 2015 and December 31, 2019; (8) for any participant who terminated with unvested shares, whether the person was voluntarily or involuntarily terminated, and (9) information sufficient to link any newly provided data to previously provided data about the Class.
> (b) Sufficient information to identify the Excluded Persons by name and the number of Raydon shares allocated to the Excluded Person's account under the ESOP which were vested, forfeited and/or liquidated under or distributed from

> the ESOP at any time between September 2015 and December
> 31, 2019.
> (c) Defendants will also provide other information reasonably
> requested by Co-Lead Class Counsel or the Settlement
> Administrator.

*Id.* at 16-17. The Settlement Administrator "may maintain the Class Data for one year following final disposition, on the condition that the Settlement Administrator agrees to and does maintain such materials subject to the terms of the Parties' Confidentiality Agreement." *Id.* at 44.

Class Counsel and the Settlement Administrator will also establish a website to provide information about this case and the settlement to Class Members. *Id.* at 17. The website will contain the following:

> the Class Notice, the Amended Complaint, the Order on the
> Motions to Dismiss, the Order on the Motion for Class
> Certification, the Settlement Agreement, Preliminary
> Approval Motion, Preliminary Approval Order, proposed
> Plan of Allocation, Final Approval Motion, Motion for
> Attorneys' Fees, Expenses and Service Award, the summary
> plan description for the Raydon 401k Plan, any forms or other
> information necessary for a Class Member to either
> electronically request a distribution of the Class Member's
> allocation of the Net Settlement Amount from the 401k Plan
> or electronically provide instructions to the Raydon 401k Plan
> Administrator as to how to invest the Class Member's
> allocation of the Net Settlement Amount under the 401k
> Plan's directed investment program, as in effect from time to
> time, and other agreed-upon documents relevant to the
> Action and Settlement.

*Id.* The expenses for the Class Notice will be paid from the Settlement Fund. *Id.*

The parties attach the Proposed Notice detailing, *inter alia*: 1) the nature of the lawsuit; 2) the names of Class Counsel; 3) the reason for receiving the notice; 4) the date, time, and location of the final settlement hearing; 5) portions of the proposed allocation plan of the Settlement Fund to the Class, 6) information on the attorneys' fees and expenses sought by Class Counsel; and 7) a summary of the settlement. Doc. No. 208-3. The Proposed Notice also includes the following information specific to the Class Member to whom it is sent: the specific estimated settlement payment, the Class Member's ESOP shares, the Class Member's employment status, and the Class Member's vesting status. *Id.* at 2. The notice will be sent to the Class Members within twenty-one days after preliminary approval of the class action settlement. *Id.* at 10.

The Proposed Notice contains the definition of the class as in the Agreement. *Id.* at 3. It notifies the Class Member that the Class Member may not opt out of the settlement. *Id.* at 8.

The Proposed Notice also provides procedures for objecting to the settlement. *Id.* It states that to object to the settlement, a class member must file a written objection with the Court and send it to Class Counsel by a certain date specified in the Proposed Notice. *Id.* The objection should contain the case name; case number; the objector's name, address, and telephone number; and all the reasons for objecting. *Id.*

The Proposed Notice states that Class Counsel expended over $50,000 in out-of-pocket expenses on this case and that they anticipate incurring an additional "$10,000, primarily to administer the settlement." *Id.* at 7. The Proposed Notice states that Class Counsel will seek an award of attorney's fees not exceeding 33% of the Settlement Amount, expenses not to exceed $100,000, and "a service award out of the Settlement Amount to Plaintiff Stephanie Woznicki and Briana Tatum of up to $10,000 each . . . ." *Id.* Although the Proposed Notice states that the Service Awards will be paid out of the Settlement Fund, the fact that the award of attorney's fees and expenses will be paid from the Settlement Amount is stated three pages earlier under the section entitled "What Are the Terms of The Settlement Agreement?" *Id.* at 4, 7. The Proposed Notice states that for a Class Member to object to the payment of attorney's fees and expenses or the Service Awards, the Class Member may state the objection in writing and may appear at the hearing as set forth above regarding objections to the settlement. *Id.* at 7.

5.    <u>Preliminary Approval</u>

The Proposed Preliminary Order preliminarily certifies the Settlement Class as it is defined in the Agreement. Doc. No. 208-4 at 7. It includes dates for certain tasks to be accomplished, including when objections must be filed. *Id.* at 7. Under the Proposed Preliminary Order, the objection must contain the following:

> [T]he full name, address and contact information for the Objector, *the Objector's status in the Plan (e.g. participant,*

> *beneficiary, or alternate payee under a qualified domestic relations order within the meaning of IRC Section 414(p)) and the name and address of counsel (if represented by counsel)*; (b) a written statement of any and all objections to this Settlement, including any supporting papers and arguments; [and] (c) the signature of the Objector (or his or her attorney).

*Id.* at 8 (emphasis added). Objections must be filed forty-five days after the notice is mailed. *Id.* at 7-8. Presumably this includes objections to the award of attorney's fees, costs, and service awards, as Class Counsel will file any motion for these awards no later than fourteen days before objections are due. *Id.* at 9.

The Proposed Preliminary Order approves the Proposed Notice and states that Class Members will receive the notice via "electronic mail and/or first-class mail." *Id.* at 4. The Proposed Preliminary Order appoints CPT Group, Inc., as the Settlement Administrator. *Id.* at 5. The motion for final approval of the settlement is due fourteen days before the fairness hearing. *Id.* at 9.

      6.   <u>Objections</u>

The Agreement mentions objections in connection with the order preliminarily approving the Agreement, stating that the Motion will ask for an order that establishes

> deadlines by which all objections to the Settlement must be made . . . [and] that no objection to the Settlement Agreement will be heard and no papers submitted in support of said objection will be received and considered by the Court at the Final Approval Hearing unless the objection and reasons therefore, along with copies of any supporting papers, are filed with the Clerk of the Court and served on the Parties

within forty-five (45) days of the publication and/or distribution of the Class Notice . . . .

Doc. No. 208-2 at 34, 35. Thus, objections must be made in writing and filed with the Clerk and served on the parties within forty-five days of the publication and/or distribution of the Class Notice. *Id.* at 35.

## 7. Distribution of Settlement Proceeds

After the final order approving the settlement becomes non-appealable, the Settlement Fund will be distributed after the payment of the following: taxes, expenses incurred in administering the Settlement Fund, and attorney's fees and costs and a service award to the class representative. *Id.* at 20.

Following payment of the above expenses, "the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation[3] by remitting the Net Settlement Amount to the Raydon ESOP to be allocated by the ESOP Plan Administrator to the ESOP accounts of Class Members based on the instructions of the Settlement Administrator." *Id.* The Plan of Allocation will be submitted "to the Court as to the recommended method of determining and distributing the proceeds of the Settlement Fund (net of any Fee Award, Expense Award, any Service Awards approved by the Court and other costs or expenses authorized herein) to Class Members." *Id.* at 24-25. The "proposed Plan of

---

[3] The "Plan of Allocation" is "the plan for distribution of the proceeds of the Cash Settlement Amount as proposed by Co-Lead Class Counsel." Doc. No. 208-2 at 10.

Allocation will credit a lower settlement value to non-vested shares of former employees, which will not exceed 20% of the settlement value for the vested shares." *Id.* at 25.

Distributions will then be made from the Raydon 401K Plan to Class Members as follows:

(a) For any Class Member who is a former Raydon employee or otherwise entitled to an immediate distribution under the terms of the Raydon 401k Plan and who has electronically submitted a distribution request, the Raydon 401k Plan Administrator will make a distribution or rollover to that Class Member as directed by the Class Member's elections within the later of (i) 30 days of the date of the transfer of the Net Settlement Amount to the Raydon 401k Plan or (ii) as soon as administratively practicable after (but not later than 30 days after) receipt of the Class Member's distribution instructions, it being acknowledged by the parties that a Class Member will not be able to submit an electronic distribution election until such time as the Class Member's 401k Plan account has actually been funded with the Class Member's allocation of the Net Settlement Amount.

(b) For Class Members who are not entitled to receive a distribution from the 401k Plan under the terms of the 401k Plan or for Class Members who are entitled to receive a distribution but fail to elect a distribution from the 401k Plan (within 90 days after the date on which the 401k Plan Administrator has sent notice to the Class Member that the Net Settlement Amount has actually been credited to Class Members' 401k Plan accounts), that Class Member's allocation of the Net Settlement Amount credited to the Class Member's 401k Plan account will be invested in accord with the Class Members' electronic directed investment elections tendered under the 401k Plan's participant directed investment program as in effect from time to time or, if the Class Member has not provided any investment elections/directions by the time as the Class Member's 401k Plan account has actually been funded with the Class Member's allocation of the Net Settlement Amount, into the

qualified default investment alternative under the Raydon
401k Plan (currently a target date fund).

*Id.* at 21-22. Thus, the distributions will be made to Class Members by either
deposits into their Raydon 401k Plan accounts, or, if they are entitled to immediate
distributions under the 401k Plan, by their elections. The parties estimate that
"each participant Class Member will receive an average gross recovery of
approximately $13,000.00 before fees, costs and other settlement expenses are
deducted . . . ." Doc. No. 208 at 19.

### 8. Attorney's Fees and Expenses

Attorney's fees and expenses awarded by the Court, plus costs for the notice
and the Settlement Administrator, will be paid from the Settlement Fund. Doc. No.
208-2 at 17, 20. Defendants agree not to take a position on Class Counsel's
application for an award if the requested fee award does not exceed 33% of $2.4
million and the requested expenses do not exceed $100,000. *Id.* at 30.

The Agreement provides that the award for attorney's fees and expenses
may be disbursed before the Court's order approving such an award becomes non-
appealable, "notwithstanding the existence of any timely filed objections to, or
potential for appeal from, or collateral attack on, the Settlement, the Plan of
Allocation, the Fee Award or the Expense Award, or any part thereof." *Id.* at 31. If
the order awarding attorney's fees and expenses is reversed, then "Class Counsel

will repay, within fifteen (15) business days of the final adjudication of such determination, the amounts reduced or reversed into the Settlement Fund." *Id.*

The Agreement then states that if the Court does not approve payment pursuant to this paragraph or Class Counsel does not take a distribution pursuant to this paragraph, then

> disbursement of any Fee Award or Expense Award will be made only upon the Final Order becoming Non-Appealable and in the event that there is no appeal of the Final Order, but an appeal solely of a Fee Award, Expense Award, or any Service Awards, Co-Lead Class Counsel will be entitled to a disbursement from the Settlement Fund of such amount of the Fee Award or Expense Award as to which there is no appeal.

*Id.* at 31-32. Thus, if the Court does not approve the procedure permitting distribution of the attorney's fee and expenses award prior to the final order approving the settlement becoming non-appealable, then the award will be paid once the final order becomes non-appealable. *Id.*

9.    Service Award

The Agreement also provides that Class Counsel will file a motion for a "Service Award" from the Settlement Fund for Plaintiff "and/or Briana Tatum . . . ." *Id.* at 30. Defendants agree not to take a position on a requested Service Award for Plaintiff or Tatum, "so long as the Service Award does not exceed $10,000.00 for each." *Id.*

10. <u>Final Approval</u>

Following preliminary approval of the settlement, Class Counsel will file a motion for final approval. *Id.* at 35.

> The Final Approval Motion will seek entry of a proposed Final Order in a form to be agreed-upon by the Settling Parties and will, among other things:
>
> (a) Order Final Approval of the Settlement set forth in this Settlement Agreement;
> (b) Adjudge that the Settlement is fair, reasonable and adequate to the Class pursuant to Rule 23(e);
> (c) Dismiss the Action against Defendants with prejudice;
> (d) Adjudge that Plaintiffs and the Class will be deemed conclusively to have released and waived any and all Settled Class Claims against the Released Parties as provided in this Settlement Agreement;
> (e) Bar and permanently enjoin the Parties and the Class from prosecuting any and all Settled Claims, as provided in this Settlement Agreement, against any Party for whom they have released claims;
> (f) Determine Class Counsel's request(s) for Fee Award, Service Awards, and Expense Award;
> (g) Provide that Class Members will be barred from asserting any claims against the Raydon Defendants or Raydon Defendant Releasees arising out of the allocation of the Net Settlement Amount calculated by the Settlement Administrator or based on actions by Raydon Defendants or Raydon Defendant Releasees that were consistent with the Plan of Allocation, the Settlement Agreement, the applicable plan (ESOP or 401k Plan), an order of the Court, or the direction of the Settlement Administrator or Class Counsel.
> (h) Retain exclusive jurisdiction, without affecting the finality of the Order entered, with regard to: (i) implementation of this Settlement Agreement; (ii) disposition of the Settlement Fund; and (iii) enforcement and administration of this Settlement Agreement, including the release provisions thereof; and
> (i) Determine whether notice to the appropriate state and federal officials has been provided as required by CAFA and

whether Defendants have satisfied their obligations pursuant
to 28 U.S.C. § 1715.

*Id.* at 35-37. Thus, the parties envision the final approval order, in pertinent part, dismissing Defendants with prejudice; determining the attorney's fees, expenses, and service awards; and retaining jurisdiction to implement, enforce, and administer the Agreement and dispose of the Settlement Fund. *Id.*

           11.   <u>Modification Provision</u>

The Agreement contains a modification provision stating, "This Settlement Agreement may be amended or modified only by written instrument signed by Co-Lead Counsel on behalf of Plaintiffs and the Class and by Defense Counsel on behalf of Defendants or their respective successors in interest." *Id.* at 45. No mention is made of Court approval of modifications to the Agreement.

## II.   **APPLICABLE LAW**

The parties seek preliminary approval of the Agreement, approval of the modified class definition, approval of the Proposed Notice, appointment of CPT Group, Inc., as the Settlement Administrator, preliminary approval of the plan to allocate the Settlement Fund, and a date for the fairness hearing. Doc. No. 208 at 29. Before such relief is given, the Court must make a preliminary determination as to whether the settlement is fair and adequate. Fed. R. Civ. P. 23(e)(1), (2).

The Court is required "to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct,*

*Inc.* No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). When making such a determination, the Court decides whether the proposed settlement "is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *Id.* (citations and quotations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citations omitted). After determining the fairness of the settlement terms, the Court must "communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and … authorize the manner and form of dissemination of the notice." *Family Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016) (citations omitted). If the Court finds the proposed settlement defective, it generally cannot rewrite it. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) ("Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties."). Instead, the Court may only accept or reject the settlement. 4 Newberg on Class Actions § 13:12 (5th Ed. Dec. 2020 update).

## III.   ANALYSIS

The undersigned now turns to the problematic provisions of the Agreement,

Proposed Notice, and Preliminary Proposed Order.

### A.   The Revised Settlement Class

The Settlement Class is defined as follows in the Agreement:

> *All participants* in the Raydon Corporation Employee Stock
> Ownership Plan *who at any time from September 30, 2015
> through December 31, 2019 received an allocation of Raydon shares
> to their ESOP accounts, whether such accounts were vested,
> partially vested or non-vested*, including all beneficiaries of
> those participants. Excluded from the Class are Defendants
> and their immediate family (including any person defined as
> a relative under 29 U.S.C. § 1002(15)); any fiduciary of the
> Plan; the officers and directors of Raydon . . . or of any entity
> in which any Defendant has a controlling interest; and legal
> representatives, successors, and assigns of any such excluded
> persons.

Doc. No. 208-2 at 7 (emphasis added). This is different from the class certified by

the Court. Doc. No. 208 at 13-14. The class definition in the Agreement includes all

ESOP participants as part of the settlement, not just those who vested. *Id.*

Additionally, the class certified by the Court does not include an end date for those

receiving an allocation of Raydon shares to their ESOP accounts, Doc. No. 163 at

4-5, as the defined class in the Agreement does.

The parties argue that the modification to the class definition is appropriate

because "an end date of December 31, 2019 makes sense for purposes of

settlement." Doc. No. 208 at 13. They also "believe that all ESOP participants

should be included as part of the Settlement." *Id.* The parties state that the modified definition matches the "proposed Plan of Allocation which contemplates allocating a portion of the Net Settlement Amount to certain participants who forfeited shares in their ESOP accounts due to those shares not being vested at the time of the termination of their Raydon employment." *Id.* at 14.

The parties do not state whether any individuals that were part of the class certified by the Court are not part of the class as modified by them. *Id.* at 13-14. They also do not explain why December 31, 2019, was chosen as the end date. *Id.* No authority is given for the proposition that parties may amend a class definition after the court has certified the class. *Id.* Finally, the parties neglect showing that the amended class meets the requirements of class certification under Federal Rule of Civil Procedure 23(a) and (b). Thus, the parties fail to demonstrate that the Agreement containing a modified definition of the class certified by the Court should be approved.

### B. The Proposed Plan of Allocation

The Agreement states that "the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation . . . ." Doc. No. 208-2 at 20. The Agreement does not set forth the actual Plan of Allocation, however. Instead, it states that Co-Lead Class Counsel will propose and submit a Plan of Allocation to the Court. *Id.* at 24-25. The Agreement does not contain a formula or

basis for allocation. It does not specify how Raydon shares bought and sold during the class period will be treated. Also not addressed is how shares that became vested during the class period will be treated. Without any indication of the contents of the Plan of Allocation, the parties request that the Court preliminarily approve it should be denied.

### C. Court Determination of Disputes

Two provisions in the Agreement provide for the Court to resolve disputes. If the parties dispute an amendment to the ESOP to effectuate the settlement, the Agreement states that "the Court will decide whether the language of the proposed Amendment is consistent with the terms of this Settlement Agreement." *Id.* at 23-24. The Agreement also states, "Any and all disputes related to claims that are not satisfactorily resolved by the Settling Parties will be submitted to the Court for final resolution." *Id.* at 47. The parties provide no analysis on the authority or propriety of the Court determining disputes once the Agreement has been preliminarily approved. This is especially problematic, as the Agreement does not set forth the proposed Plan of Allocation in any detail or reference the language of proposed amendments to the ESOP. The Court cannot agree to resolve disputes without first having some information regarding what the disputes will encompass, such as a distribution process or the scope of proposed modifications to the ESOP.

### D. Modifying the Agreement After Preliminary Approval

The Agreement contains a modification provision stating, "This Settlement Agreement may be amended or modified only by written instrument signed by Co-Lead Counsel on behalf of Plaintiffs and the Class and by Defense Counsel on behalf of Defendants or their respective successors in interest." Doc. No. 208-2 at 45. If the parties were permitted to modify the Agreement after the Court approved it, then they could circumvent or undermine the Court approval process. Thus, it is recommended that if the Agreement contains this provision, then it not be approved.

### E. Service Awards

The Agreement provides for the possibility of Service Awards for Plaintiff and Tatum of $10,000 each. *Id.* at 30. In *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), issued after the Agreement was executed and the Motion was filed, the Eleventh Circuit held that Supreme Court precedent prohibits awards to class representatives that compensate the representative for her time and reward her for bringing a lawsuit. The Proposed Notice states that the Service Awards are "to compensate [Plaintiff and Tatum] for the time they have spent on this case as class representatives." Doc. No. 208-3 at 7. Thus, the Service Awards appear to be prohibited by *Johnson*.

Motions for rehearing are pending in *Johnson*, but on November 23, 2020, Class Counsel filed a notice stating that the Agreement does not conflict with *Johnson* in any event because the settlement is not contingent on the Service Awards and the Agreement does not require Class Counsel to seek a Service Award. Doc. No. 209 at 1. Class Counsel states that unless *Johnson* is reversed, Class Counsel will not seek Service Awards. *Id.* at 1-2. Due to *Johnson* and the settlement not being contingent on Plaintiff and Tatum receiving Service Awards, the Court need not consider the propriety of Tatum receiving a Service Award when the Court rejected the request that she be a class representative. Therefore, the inclusion of the possibility of Service Awards in the Agreement does not prohibit preliminarily approving it.

### F.     Class Data

The Agreement provides for the Settlement Administrator to receive personal information regarding Class Members, including their social security numbers. Doc. No. 208-2 at 16-17. The Settlement Administrator "may maintain the Class Data for one year following final disposition, on the condition that the Settlement Administrator agrees to and does maintain such materials subject to the terms of the Parties' Confidentiality Agreement." *Id.* at 44. This is the only mention of the Settlement Administrator agreeing to the parties' Confidentiality Agreement. Doc. No. 208-2. Although the Confidentiality Agreement may require

the Settlement Administrator to agree to it for the Settlement Administrator to receive the Class Data, that is not mentioned by the parties in the Motion or the Agreement. Because the Settlement Administrator will be receiving the Class Members' protected personal information, the Agreement should specify that the Settlement Administrator will be required to execute a confidentiality agreement regarding the Class Data.

### G. Distribution of Attorney's Fees and Expenses Award

The Agreement provides that the award for attorney's fees and expenses may be disbursed before the Court's order approving such an award becomes non-appealable, "notwithstanding the existence of any timely filed objections to, or potential for appeal from, or collateral attack on, the Settlement, the Plan of Allocation, the Fee Award or the Expense Award, or any part thereof." *Id.* at 31. If the order awarding attorney's fees and expenses is reversed, then "Class Counsel will repay, within fifteen (15) business days of the final adjudication of such determination, the amounts reduced or reversed into the Settlement Fund." *Id.* This provision would be troublesome, especially as it does not require Class Counsel to pay interest on an award that it received that was subsequently reversed, but the Agreement then provides that if the Court does not approve payment pursuant to that paragraph or Class Counsel does not take a distribution pursuant to that paragraph, then the attorney's fee award will be paid only upon

the order becoming non-appealable. *Id.* at 31-32. Because a procedure is provided for Class Counsel to receive their attorney's fees and expenses award only after the order becomes non-appealable, the provision stating otherwise does not preclude preliminary approval of the Agreement.

### H. The Proposed Notice and Proposed Preliminary Order

Should a party attempt to certify a class under Federal Rule of Civil Procedure 23(b)(3), notice must be provided to all class members. *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001). Rule 23(c)(2) requires that the notice be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class . . . ." *Family Med. Pharmacy,* 2016 WL 7320885, at *5.

There are discrepancies between the requirements for valid objections to the settlement under the Proposed Notice and the Proposed Preliminary Order. The Proposed Notice does not instruct objecting Class Members to include their status in the Plan, the name and address of their counsel, or supporting papers, but the Proposed Preliminary Order does contain these requirements. Doc. No. 208-3 at 8; Doc. No. 208-4 at 8. These discrepancies should be eliminated.

In describing this case, the Proposed Notice references "ERISA," but does not explain what ERISA is. Doc. No. 208-3 at 3. A brief explanation of ERISA is necessary for the recipients of the notice to understand the allegations against Defendants.

The Proposed Preliminary Order appoints CPT Group, Inc. as the Settlement Administrator. Doc. No. 208-4 at 5. The parties provide no information regarding CPT Group, Inc.'s qualifications to administer the settlement.

Because of the aforementioned issues, the parties fail to establish that the Proposed Notice is the "best practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Proposed Notice and Proposed Preliminary Order are deficient and lacking sufficient support for approval by the Court.

## IV.   <u>CONCLUSION</u>

In light of the foregoing issues, it is recommended that the Motion be denied.

Accordingly, it is **RECOMMENDED** that the Court:

1) **DENY** the Motion (Doc. No. 208); and

2) Allow the parties to file a renewed motion addressing the issues outlined in this Report and Recommendation.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual findings or legal conclusions the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1. **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

**RECOMMENDED** in Orlando, Florida, on January 29, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy