# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| STEPHANIE WOZNICKI,　　　　　） | |
| 　　　　　　　） | Civil Action No. 6:18-cv-02090-WWB-GJK |
| 　　　　Plaintiff,　　　　） | |
| 　　　　　　　） | **AMENDED CLASS ACTION** |
| v.　　　　　　　） | **SETTLEMENT AGREEMENT** |
| 　　　　　　　） | |
| RAYDON CORPORATION, et al.,　） | |
| 　　　　　　　） | |
| 　　　　Defendants.　　　） | |
| 　　　　　　　） | |

## TABLE OF CONTENTS

RECITALS ............................................................................................................... 1

I.      DEFINITIONS.......................................................................................... 3

II.     CLASS NOTICE ...................................................................................... 12

III.    SETTLEMENT FUND ............................................................................ 15

IV.     DISTRIBUTIONS FROM THE SETTLEMENT FUND................................ 17

V.      PLAN OF ALLOCATION ........................................................................ 22

VI.     SETTLEMENT ADMINISTRATION .......................................................... 24

VII.    PAYMENT OF FEES, SERVICE AWARD, AND REIMBURSEMENT OF
        COSTS AND EXPENSES......................................................................... 28

VIII.   NO ADMISSION OF WRONGDOING ...................................................... 30

IX.     APPROVAL OF SETTLEMENT................................................................ 31

X.      CONDITIONS OF SETTLEMENT ............................................................ 34

XI.     INDEPENDENT FIDUCIARY ................................................................. 34

XII.    ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT ...... 35

XIII.   RELEASES........................................................................................... 35

XIV.    EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION ............ 39

XV.     MISCELLANEOUS PROVISIONS............................................................ 40

# INTRODUCTION

Subject to approval by the United States District Court for the Middle District of Florida, this Amended Class Action Settlement Agreement is made and entered into by and among Plaintiff and Class Representative Stephanie Woznicki, individually and on behalf of the certified Class, and Defendants Raydon Corporation, Donald K. Ariel, David P. Donovan, The ESOP Committee of the Raydon Corporation Employee Stock Ownership Plan, David P. Donovan, Jr., Irrevocable Trust dated July 25, 2008, Lori L. Weiss Irrevocable Trust dated July 25, 2008, Niki J. Duncan Irrevocable Trust dated July 25, 2008, Pamela W. Ariel, Ariel Family Trust dated December 18, 2012, David P. Donovan 2012 Trust, Verna L. Donovan 2012 Trust Plan and Lubbock National Bank (each a "Party" and collectively the "Parties"). Plaintiff agrees to settle claims against Defendants, subject to the terms and conditions below. All capitalized terms will have the meaning ascribed thereto in Section I of this Agreement.

## RECITALS

WHEREAS, on December 5, 2018, Plaintiff Stephanie Woznicki filed a lawsuit, docketed as Case No. 6:18-cv-02090 in the United States District Court for the Middle District of Florida, asserting claims on behalf of herself and a class of participants and beneficiaries of the ESOP for alleged violations of ERISA;

WHEREAS, on November 4, 2019, the Court granted in part and denied in part Defendants' Motions to Dismiss the Amended Complaint, granting the Motions as to Count IV of the Amended Complaint;

WHEREAS, on March 16, 2020, the Court granted Plaintiff's Motion for Class Certification and certified this action as a class action;

WHEREAS, as part of discovery and prior to the execution of the Settlement Agreements in Principle, the Parties conducted extensive discovery regarding the merits and potential recoveries for Plaintiff's claims;

WHEREAS, Plaintiff and Defendants conducted arms-length negotiations at a mediation session with Hon. Morton Denlow (Ret.) on May 17, 2019, continued negotiations after the mediation session, Co-Lead Class Counsel signed a written Settlement Agreement in Principle with Defendant Lubbock on July 16, 2020, and Plaintiff signed a written Settlement Agreement in Principle with Raydon Defendants on July 20, 2020;

WHEREAS, Plaintiff and Defendants entered into a Class Action Settlement Agreement dated August 26, 2021 (the "Prior Agreement"), and that same day filed a Joint Motion for Preliminary Approval of Class Action Settlement;

WHEREAS, Magistrate Judge Kelly issued a Report and Recommendation recommending that the Court deny the Joint Motion and allow the Parties to file a renewed motion addressing issues outlined in the Report and Recommendation;

WHEREAS, the Parties filed a Joint Notice in response to the Report and Recommendation that they intended to negotiate and execute an amended settlement agreement;

WHEREAS, the Court entered an Order denying preliminary approval of the Prior Agreement on February 17, 2021, and permitting the Parties to file a renewed motion on or before April 19, 2021;

WHEREAS, the Court entered an Order on April 16, 2021 extending the time for the Parties to file a renewed motion until on or before May 3, 2021;

WHEREAS, as a result of the factual investigation and legal research conducted by Co-Lead Class Counsel concerning the claims asserted in the Action and discovery, Co-Lead Class

Counsel have concluded that the terms of this Settlement as amended are fair, reasonable, adequate and in the best interests of both the Class and the ESOP, and have agreed to settle the Action on the terms set forth herein;

WHEREAS, Defendants deny the material allegations asserted in the Action; deny any wrongdoing or liability whatsoever; and state that they are entering into the Settlement solely to avoid the cost, disruption, and uncertainty of litigation;

WHEREAS, the Parties desire to promptly and fully resolve and settle with finality all of the claims on the terms set forth herein and subject to the approval of the Court; and

WHEREAS, each of the undersigned counsel represent that their respective clients have been informed of and consent to the provisions set forth below;

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and without any admission or concession as to any matter of fact or law, and intending to be legally bound, do hereby amend and restate the Prior Agreement to read as follows:

## I.      DEFINITIONS

As used in this Agreement, the following terms have the following meanings, unless a section or subsection of this Agreement specifically provides otherwise. Capitalized terms used in this Agreement, but not defined in this Section I, will have the meaning ascribed to them elsewhere in this Agreement.

A.      "2015 ESOP Transaction" means the transaction on September 30, 2015 in which Defendants Donald K. Ariel, David P. Donovan, David P. Donovan, Jr., Irrevocable Trust dated July 25, 2008, Lori L. Weiss Irrevocable Trust dated July 25, 2008, Niki J. Duncan Irrevocable

3

Trust dated July 25, 2008, Pamela W. Ariel, Ariel Family Trust dated December 18, 2012, David P. Donovan 2012 Trust and Verna L. Donovan 2012 Trust sold 100% of the stock of Raydon Corporation to Raydon Corporation which concomitantly, as part of a single integrated transaction, sold 100% of the stock to the ESOP for $60,500,000.

B.      "Action" means the class action pending in this Court styled Stephanie Woznicki, on behalf of herself individually and on behalf of all other similarly situated, v. Raydon Corporation, Donald K. Ariel, David P. Donovan, The ESOP Committee of the Raydon Corporation Employee Stock Ownership Plan, Lubbock National Bank, David P. Donovan, Jr., Irrevocable Trust dated July 25, 2008, Lori L. Weiss Irrevocable Trust dated July 25, 2008, Niki J. Duncan Irrevocable Trust dated July 25, 2008, Pamela W. Ariel, Ariel Family Trust dated December 18, 2012, David P. Donovan 2012 Trust and Verna L. Donovan 2012 Trust, Case No. 6:18-cv-02090-Orl-41GJK.

C.      "Agreement(s) in Principle" or "Settlement Agreement(s) in Principle" means the agreements fully executed on (1) July 16, 2020, signed by Co-Lead Class Counsel on behalf of Plaintiff and the Class and Defendant Lubbock's Counsel on behalf of Defendant Lubbock; and (2) July 20, 2020, signed by Co-Lead Class Counsel on behalf of Plaintiff and the Class and Raydon Defendants' Counsel on behalf of Raydon Defendants.

D.      "CAFA Notice" has the meaning set forth in Section XII of this Agreement.

E.      "Cash Settlement Amount" means two million and four hundred thousand dollars ($2,400,000.00) paid by or on behalf of Defendants (or their insurers), as described in Section III below.

F.      "Class" means the class certified by the Court in this action consisting of "All participants in the Raydon Corporation Employee Stock Ownership Plan from September 30,

2015, or any time thereafter, who vested under the terms of the Plan and those participants'
beneficiaries. Excluded from the Class are Defendants and their immediate family (including any
person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers
and directors of Raydon Corporation or of any entity in which any Defendant has a controlling
interest; and legal representatives, successors, and assigns of any such excluded persons."

G.　　"Class Counsel" means Co-Lead Class Counsel as well as Burr & Smith, LLP.

H.　　"Class Data" has the meaning set forth in Section II.7 of this Agreement.

I.　　"Class Member" means an individual who is a member of the Class. Where
applicable, such as with regard to notice and payment provisions of this Settlement Agreement,
this term shall apply to the former employee participants, the beneficiaries of such participants,
or an "Alternate Payee" (within the meaning of IRC § 414(p)) of any of the same, whomever of
which is to receive an allocation of the Net Settlement Amount.

J.　　"Class Notice" means the form of notice provided to the Class Members that
complies with the requirements of Section II in this Agreement, Rule 23, and as approved by the
Court.

K.　　"Class Representatives" means Plaintiff.

L.　　"Co-Lead Class Counsel" means R. Joseph Barton of Block & Leviton LLP and
Daniel Feinberg of Feinberg, Jackson, Worthman & Wasow LLP.

M.　　"Complaint" means the Amended Complaint (Dkt. 67).

N.　　"Confidentiality Agreement" means that certain Confidentiality Agreement
between Plaintiffs and Defendants dated September 17, 2019.

O.　　"Court" or "District Court" means the United States District Court for the Middle
District of Florida.

P.      "Defendants" means Raydon Corporation, Donald K. Ariel, David P. Donovan, The ESOP Committee of the Raydon Corporation Employee Stock Ownership Plan, David P. Donovan, Jr., Irrevocable Trust dated July 25, 2008, Lori L. Weiss Irrevocable Trust dated July 25, 2008, Niki J. Duncan Irrevocable Trust dated July 25, 2008, Pamela W. Ariel, Ariel Family Trust dated December 18, 2012, David P. Donovan 2012 Trust, Verna L. Donovan 2012 Trust Plan and Lubbock National Bank.

Q.      "Defense Counsel" means (1) Raydon Defendants' counsel, Jackson Lewis, PC, and (2) Defendant Lubbock's counsel, McDermott Will & Emery LLP.

R.      "Defendant Releasees" means Lubbock Releasees and Raydon Releasees.

S.      "Effective Date" means the date on which the Final Order is Non-Appealable.

T.      "Excluded Persons" means the following persons who are excluded from the Class: Defendants and their immediate family (including any person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

U.      "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

V.      "ESOP Plan Administrator" means the Administrator of the Raydon ESOP within the meaning of ERISA § 3(16), 29 U.S.C. 1002(16).

W.      "Escrow Account(s)" means an account(s) established by Co-Lead Class Counsel in the name of Raydon Corporation ESOP Litigation Settlement Fund into which the Cash Settlement Amount is to be paid.

X.     "Expense Award" will have the meaning set forth in Section VII of this Agreement.

Y.     "Fee Award" will have the meaning set forth in Section VII of this Agreement.

Z.     "Final Approval Hearing" has the meaning set forth in Section IX of this Agreement.

AA.     "Final Approval Motion" means the motion to be filed by Co-Lead Class Counsel requesting that the Court grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e).

BB.     "Final Order" means the Order and Final Judgment, substantially in the form of an Order described in Section IX below.

CC.     "Lubbock" means Defendant Lubbock National Bank.

DD.     "Lubbock Releasees" means Defendant Lubbock, its parents, predecessors, successors, assigns, subsidiaries, affiliates, and insurers, and their past, present and future directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys.

EE.     "Net Settlement Amount" means the Settlement Fund or Cash Settlement Amount minus all Court-approved reductions such as the Fee Award, Expense Award, Service Award or approved settlement administration expenses.

FF.     "Non-Appealable" means an order entered by the Court that is no longer subject to appeal, which will occur when: (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any extension of time) has expired; or (ii) if any appeal is taken therefrom, on the date on which all appeals therefrom, including any petitions for rehearing

7

or re-argument, petitions for rehearing *en banc*, and petitions for writ of *certiorari* or any other

writ, or any other form or review, have been finally disposed of, such that the time to appeal

therefrom (including any extension of time) has expired, in a manner resulting in an affirmance

of the Final Order.

      GG.    "Plaintiff" means Stephanie Woznicki.

      HH.    "Plan of Allocation" means the plan for distribution of the proceeds of the

Settlement Fund as proposed by Co-Lead Class Counsel and approved by the Court.

      II.    "Preliminary Approval Motion" means the Joint Renewed Motion to be filed by

Co-Lead Class Counsel requesting that the Court enter the Preliminary Approval Order.

      JJ.    "Preliminary Approval Order" means the "Order Preliminarily Approving

Settlement, Approving Form of Notice, and Setting Final Approval Hearing" in this Action,

substantially in the form described in Section IX.

      KK.    "Prior Agreement" means that certain Class Action Settlement Agreement

between Plaintiff and Defendants dated August 26, 2020.

      LL.    "Raydon" or "Company" means Raydon Corporation.

      MM.    "Raydon 401k Plan" or "401k Plan" means the Raydon Corporation 401(k) Plan

(as the same may be amended from time to time), or any successor thereto.

      NN.    "Raydon 401k Plan Administrator" means the Administrator of the Raydon 401k

Plan within the meaning of ERISA § 3(16), 29 U.S.C. 1002(16), or any successor thereto.

      OO.    "Raydon Defendants" means Raydon Corporation, Donald K. Ariel, David P.

Donovan, The ESOP Committee of the Raydon Corporation Employee Stock Ownership Plan

David P. Donovan, Jr., Irrevocable Trust dated July 25, 2008, Lori L. Weiss Irrevocable Trust

dated July 25, 2008, Niki J. Duncan Irrevocable Trust dated July 25, 2008, Pamela W. Ariel,

Ariel Family Trust dated December 18, 2012, David P. Donovan 2012 Trust and Verna L. Donovan 2012 Trust.

PP.    "Raydon ESOP", "ESOP" or the "Plan" means the Raydon Corporation Employee Stock Ownership Plan (as the same may be amended from time to time).

QQ.    "Raydon Releasees" means the Raydon Defendants, their parents, predecessors, successors, assigns, subsidiaries, affiliates, and insurers, and their past, present and future directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys.

RR.    "Released Claims" means any and all present, or past claims, demands, debts, damages, losses, offsets, obligations, liabilities, warranties, costs, fees, penalties, expenses, rights of action, suits, and causes of action of every kind and nature whatsoever, whether under federal, state, local, or foreign law, whether based on contract, tort, statute, regulation, ordinance, the common law, or another legal or equitable theory of recovery, whether known or unknown, suspected or unsuspected, existing or claimed to exist, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, in law or in equity, that Plaintiff or the Class has that:

(i)    pertain to investment in Company stock by or for the benefit of the Plan or the Plan's participants or beneficiaries, based on any alleged facts, circumstances, or conduct that are set forth in the Complaint or Amended Complaint at any time before, up to, and including the Effective Date;

(ii)    arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the Effective Date and that are set forth in the Complaint or Amended Complaint, including:

9

(a)     breach of duties or obligations (including fiduciary duties and obligations) under ERISA to the Plan, to Plaintiff, to the Class, or to the other participants in and beneficiaries of the Plan in connection with Company stock or otherwise;

(b)     providing misleading information to Plan participants or beneficiaries;

(c)     failure to appoint, remove and/or adequately monitor the Plan's fiduciaries or Company leadership;

(d)     failure to adequately monitor the performance of and prudence of investment by the Plan in Company stock;

(e)     violation of ERISA duties related to the acquisition, disposition, or retention of Company stock by the Plan;

(f)     breach of ERISA duties in connection with the failure to avoid or resolve conflicts of interest in connection with the Company or the Plan;

(g)     failure to bring a derivative action by the Plan on behalf of the Company against any director or officer of the Company;

(h)     participation in a transaction prohibited by ERISA relating to the Company or the Plan; or

(i)     knowing of an ERISA breach of fiduciary duty or prohibited transaction relating to the Company or the Plan, and participating in or enabling such ERISA breach of fiduciary duty or prohibited transaction, or knowing of such ERISA breach of fiduciary duty or prohibited transaction and failing to remedy it;

(iii)     would be barred by principles of *res judicata* had the claims asserted in the Action been fully litigated and resulted in a final judgment or order.

SS.     "Released Parties" means any person who receives a release from another Party under this Settlement Agreement.

TT.     "Service Award" will have the meaning set forth in Section VII of this Agreement.

UU.     "Settled Claims" means all claims released pursuant to this Settlement.

10

VV.    "Settled Class Claims" means the claims that the Class will release pursuant to this Settlement as provided in Section XIII.

WW.   "Settlement" means the settlement and compromise of this Action as provided for in this Settlement Agreement.

XX.    "Settlement Administrator" means the person whom Co-Lead Class Counsel may hire, subject to Court approval, who is to be responsible for, among other things, providing Class Notice to Class Members and/or otherwise assisting with the administration of the Settlement.

YY.    "Settlement Agreement" means this Amended Class Action Settlement Agreement and any accompanying Exhibits, including any subsequent amendments thereto and any Exhibits to such amendments.

ZZ.    "Settlement Fund" means the Cash Settlement Amount plus any earnings and interest thereon, minus any Court-approved deductions and expenses.

AAA.  "Settling Parties" or "Parties" means Plaintiff, on behalf of herself and the Class, and Defendant Lubbock and the Raydon Defendants.

BBB.  "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including income tax and other taxes and charges on or regarding franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, *ad valorem*, stamp, transfer, value added or gains taxes; license, registration and documentation fees; and customs' duties, tariffs, and similar charges.

11

CCC.   "Termination Notice" will have the meaning set forth in Section XIV of this Settlement Agreement.

## II.   CLASS NOTICE

1.   **Provision of Class Notice.** Upon the Court's preliminary approval of this Settlement Agreement or by the date specified by the Court, the Settlement Administrator will be responsible for providing Class Notice to the Class Members.

2.   **Contents**. The Class Notice will contain a brief description of the claims advanced by the Class, a summary of the terms of the Settlement Agreement, information on the attorneys' fees and costs sought by Class Counsel, describe the proposed Plan of Allocation of the Settlement Fund to the Class, and provide information about the Final Approval Hearing, in the form approved by the Court.

3.   **Method of Providing Class Notice.** Class Notice will be provided to each individual Class Member: (a) by either electronic notification (if available and approved by the Court) to all Class Members, or, if unavailable or not approved by the Court, by mailing via first class US Mail to all Class Members, and (b) by posting the Class Notice on websites maintained by Co-Lead Class Counsel and the Settlement Administrator.

4.   **Additional Information Provided with the Class Notice.** Along with the Class Notice, every Class Member will be provided with (a) instructions and other information necessary to electronically request a distribution or rollover of the Class Member's allocation of the proceeds from the Net Settlement Amount credited to the Class Member's account under the Raydon 401k Plan to the extent eligible for a distribution under the terms of the Raydon 401k Plan, and (b) any other information necessary for the Class Member to electronically provide instructions to the Raydon 401k Plan Administrator regarding the manner by which the Class

12

Member's allocation of the proceeds from the Net Settlement Amount credited to the Class

Member's account under the Raydon 401k Plan should be invested in accord with the Raydon

401k Plan's participant directed investment program as in effect from time to time. Any Class

Member will be entitled to request and receive from the Raydon 401k Plan Administrator the

information necessary to elect a distribution or investment of his or her share of the Net

Settlement Amount.

       5.      **Cooperation with Settlement Administrator.**  Defendants and their

counsel will reasonably cooperate with the Settlement Administrator to facilitate providing the

Class Notice and other settlement-related communications and administering the Settlement.

Raydon Defendants will cooperate with the Settlement Administrator and Co-Lead Class

Counsel to facilitate providing the Class Notice and other settlement-related communications by

providing any known email addresses and mailing addresses for all Class Members, to the extent

such information is reasonably available in the records of Raydon Defendants.

       6.      **Undeliverable Notices.**  In the event that a Class Notice sent by U.S. Mail

is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain

a valid mailing address and promptly resend the Class Notice to the Class Member by U.S. Mail.

       7.      **Class Data.**   Within 21 days after this Settlement Agreement is executed,

Raydon Defendants will, to the extent not already disclosed, provide Co-Lead Class Counsel and

the Settlement Administrator (who has either previously agreed, in the case of CPT in May 2020,

or agrees to be bound by the Confidentiality Agreement) with the following (the "Class Data"):

       (a)      Contact information in electronic form for each person previously

      identified as a Class Member which shall include, to the extent such information is

      reasonably available in Defendants' files: (1) name; (2) a street mailing address; (3)

telephone number(s); (4) e-mail address(es); (5) Social Security number; (6) sufficient information identifying the beneficiary Class Member (including any persons who has a qualified domestic relations order on file with the Company) for each participant Class Member (including any known contact or other identifying information); (7) the number of Raydon shares allocated to the Class Member's account under the ESOP, including the number that were vested, forfeited and/or liquidated under or distributed from the ESOP at any time between September 2015 and December 31, 2020; (8) for any participant who terminated with unvested shares, whether the person was voluntarily or involuntarily terminated, and (9) information sufficient to link any newly provided data to previously provided data about the Class.

(b)     Sufficient information to identify the Excluded Persons by name and the number of Raydon shares allocated to the Excluded Person's account under the ESOP which were vested, forfeited and/or liquidated under or distributed from the ESOP at any time between September 2015 and December 31, 2020.

(c)     Other information reasonably requested by Co-Lead Class Counsel or the Settlement Administrator.

8.      **Internet/Website Publication**:  Class Counsel and/or the Settlement Administrator will establish a website dedicated and designed to provide information about the Action and the Settlement to Class Members. Among other information, this website will contain the Class Notice, the Amended Complaint, the Order on the Motions to Dismiss, the Order on the Motion for Class Certification, the Settlement Agreement, Preliminary Approval Motion, Preliminary Approval Order, proposed Plan of Allocation, Final Approval Motion, Motion for Attorneys' Fees,  Expenses and Service Award, the summary plan description for the Raydon

14

401k Plan, any forms or other information necessary for a Class Member to either electronically request a distribution of the Class Member's allocation of the Net Settlement Amount from the 401k Plan or electronically provide instructions to the Raydon 401k Plan Administrator as to how to invest the Class Member's allocation of the Net Settlement Amount under the 401k Plan's directed investment program, as in effect from time to time, and other agreed-upon documents relevant to the Action and Settlement.

        9.      **Class Notice Costs and Expenses.** All costs and expenses for the Class Notice and the Settlement Administrator will be paid from the Settlement Fund.

        10.     **Declaration Regarding Class Notice**. Within 30 days after the date on which the Class Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Class Notice and related information was sent in accordance with the Preliminary Approval Order.

## III.    SETTLEMENT FUND

        1.      **Payment of Cash Settlement Amount into Escrow Account.** As settlement of the Class' claims: (a) Raydon Defendants (or their insurers) will pay, or cause to be paid, $1,200,000.00 into the Escrow Account within 10 days after entry of the Preliminary Approval Order, and (b) Defendant Lubbock (or its Insurers) will pay, or cause to be paid, $1,200,000.00 into the Escrow Account within 10 days after entry of the Preliminary Approval Order. If Raydon Defendants or Defendant Lubbock have not paid their respective portion of the Cash Settlement Amount into the Escrow Account within the time required by this Paragraph, then the Defendants (or their insurers) who have not paid their portion will pay interest on the overdue amount at 6% per year compounded daily from the date the payment was due until the date that the payment is made.

2.      **Payment of Cash Settlement Amount Sole Payment Obligation of Defendants**.  Except as specified in this Agreement, the payment of the Cash Settlement Amount shall be the sole, total, and only payment obligations of Defendants or any Defendant Releasee in the Settlement of the Action.

3.      **Custody of Settlement Fund.** The Settlement Fund held in the Escrow Account will be deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court and will be administered in accordance with the terms of this Settlement Agreement and the Orders of the Court. Except as provided herein, the Settlement Fund will not be released from the Escrow Account until the Final Order becomes Non-Appealable or the Settlement is terminated in accordance with this Agreement.

4.      **Management of the Settlement Fund.** Until the Final Order becomes Non-Appealable or until the Settlement is terminated in accordance with this Agreement, the Settlement Fund will be held in the Escrow Account established by Co-Lead Class Counsel, for which an escrow agent (the "Escrow Agent") will act pursuant to the terms of the escrow agreements (the "Escrow Agreements") or as ordered by the Court. After the Final Order becomes Non-Appealable, Co-Lead Class Counsel will have the sole right and duty to manage the Settlement Fund in compliance with the terms of the Final Order. At no time will Defendants have any duty or authority to hold, manage, or invest any portion of the Settlement Fund prior to the receipt by the Raydon ESOP of the Net Settlement Amount. After receipt of the Net Settlement Amount by the Raydon ESOP, the Net Settlement Amount will be spun-off from the Raydon ESOP and merged within and into the Raydon 401k Plan where it will be held, managed, and invested consistent with this Agreement. Any earnings or interest earned by the Settlement Fund will become part of the Settlement Fund.

16

5.      **Qualified Settlement Fund.** The Settlement Fund is intended by the Settling Parties to be a "qualified settlement fund" for federal income tax purposes under Treas. Reg. §1.468B-1 at the earliest date possible.

## IV.      DISTRIBUTIONS FROM THE SETTLEMENT FUND

1.      **Expenses Before the Effective Date.** Until the Final Order becomes Non-Appealable or the Settlement is terminated in accordance with this Agreement, Co-Lead Class Counsel will be authorized to pay from the Settlement Fund (a) any actual or estimated taxes on any income earned on the Settlement Fund, (b) upon notice to Defendants, all costs and expenses related to the preparation of such tax filings or payments and (c) all costs and expenses incurred in connection with Class Notice and the administration of the Settlement. Any dispute regarding the reasonableness of any expense incurred, paid or owing will be adjudicated by the Court, but in no event will the Settling Parties cause or allow the Settlement Fund to fail to make a tax payment in a timely manner.

2.      **Attorneys' Fees, Expenses/Costs and Service Award.** Pursuant to any deadline set by the Court, Class Counsel may file any motion with the Court requesting a Fee Award, Expense Award and/or Service Award out of the Settlement Fund. Any amounts awarded by the Court will be paid from the Settlement Fund as directed by Co-Lead Class Counsel before distribution to the Class.

3.      **Tax Reserve After the Effective Date**: Upon the Final Order becoming Non-Appealable, Co-Lead Class Counsel will be authorized to establish a reserve from the Settlement Fund to pay any taxes that are or will be owed (but not yet due) and for expenses related to payment of taxes or filing of tax returns or to the extent that there are other costs of administration of the Settlement.

17

4.      **Distribution to the Raydon ESOP Accounts of the Class.** After the

Final Order becomes Non-Appealable, the Settlement Fund will be distributed to Class Members

pursuant to the Court-approved Plan of Allocation after payment of the following: (a) any Taxes

on the income or earnings by the Settlement Fund, any tax-related expenses, and the creation of

any reserve for future expenses (as described above); (b) any expenses incurred in connection

with the administration of the Settlement Fund; and (c) any payment of any Fee Award or

Expense Award to Class Counsel or payment of any Service Award. After deduction of the

foregoing, the Net Settlement Amount will be distributed to Class Members in accordance with

the Plan of Allocation by remitting the Net Settlement Amount to the Raydon ESOP to be

allocated by the ESOP Plan Administrator to the ESOP accounts of Class Members based on the

instructions of the Settlement Administrator. Once the Net Settlement Amount has been

allocated to Class Members' ESOP accounts, the ESOP Plan Administrator will spin-off the

proceeds from the Net Settlement Amount to the Raydon 401k Plan within three business days of

the date of deposit in the ESOP. Once paid into the Raydon ESOP for allocation purposes and

then spun-off into the Raydon 401k Plan, the Net Settlement Amount received by each of these

plans will be subject to ERISA's anti-alienation rules.

5.      **Distributions of the Settlement from the Raydon 401k Plan to the**

**Class.**  The Raydon 401k Plan Administrator will make distributions to Class Members as

follows:

(a)      For any Class Member who is a former Raydon employee or

otherwise entitled to an immediate distribution under the terms of the Raydon 401k Plan

and who has electronically submitted a distribution request, the Raydon 401k Plan

Administrator will make a distribution or rollover to that Class Member as directed by the

18

Class Member's elections within the later of (i) 30 days of the date of the transfer of the Net Settlement Amount to the Raydon 401k Plan or (ii) as soon as administratively practicable after (but not later than 30 days after) receipt of the Class Member's distribution instructions, it being acknowledged by the parties that a Class Member will not be able to submit an electronic distribution election until such time as the Class Member's 401k Plan account has actually been funded with the Class Member's allocation of the Net Settlement Amount. The Class Member's 401k Plan account will be subject to adjustments for investment gains or losses from the time the account is funded (when it will be invested in accordance with the Class Member's directed investment elections or, in the absence of any affirmative directed investment elections, in the 401k Plan's qualified default investment alternative) to the time of distribution or rollover of such funds from the account to or on behalf of the Class Member.

(b)     For Class Members who are not entitled to receive a distribution from the 401k Plan under the terms of the 401k Plan or for Class Members who are entitled to receive a distribution but do not to elect a distribution from the 401k Plan, that Class Member's allocation of the Net Settlement Amount credited to the Class Member's 401k Plan account will be invested, upon being funded, in accord with the Class Members' affirmative directed investment elections tendered under the 401k Plan's participant directed investment program as in effect from time to time or, if the Class Member has not made any affirmative directed investment elections by the time as the Class Member's 401k Plan account has actually been funded with the Class Member's allocation of the Net Settlement Amount, into the qualified default investment alternative under the Raydon 401k Plan (currently a target date fund). At any time after the Net

19

Settlement Amount has been funded into the Raydon 401k Plan, the Class Member may change the investment of such funds by affirmatively exercising directed investment rights over the account or elects to receive distribution or rollover of such funds from the account.

6.      **Costs and Expenses Related to Settlement Administration**. Raydon will bear all costs of administering the Net Settlement Amount that are incurred after the Net Settlement Amount is deposited into the Raydon ESOP, including any costs relating to the spin-off and transfer of the Net Settlement Amount to the Raydon 401k Plan, and the allocation of the Net Settlement Amount to Class Members' accounts under the ESOP and the 401k Plan. Defendant Lubbock will have no responsibility for any costs related to the administration of the Settlement once the Net Settlement Amount is deposited into the Raydon ESOP.

7.      **Restrictions on Administration and Distribution Expenses Charged to Class Members**.

(a)      For any Class Members who, within 90 days after the date on which the 401k Plan Administrator has sent notice to the Class Member that the Net Settlement Amount has actually been credited to Class Members' 401k Plan accounts, electronically request a distribution of their accounts that were credited with their allocation of the proceeds from the Net Settlement Amount (and are entitled to elect a distribution of their proceeds from the Net Settlement Amount under the terms of the 401k Plan), no fees, expenses, costs or other charges will be imposed on Class Members to receive their allocation or distributions nor will such Class Members (or their ESOP or 401k accounts) be charged any plan administrative fees, costs or expenses for the 90-day period of time described above that the distributions are to be made; rather, to the extent

20

that the distribution of such accounts involves any charges, such distribution processing costs will be borne by Raydon.

       (b)     For Class Members who do not request a distribution within the 90-day period described in (a) above, any administrative costs, including any costs in connection with distribution of allocations of the Net Settlement Amount from the Raydon 401k Plan to the Class Members, will be charged to Class Members in accordance with the terms of the Raydon 401k Plan.

       (c)     No fees, expenses, costs, or other charges will be imposed on Class Members in connection with any expenses incurred by Raydon in Section IV.6 or the costs to provide CAFA Notice or the costs of the Independent Fiduciary.

      8.     **Restriction on Investment of the Settlement Proceeds.** In no event will the proceeds from the Net Settlement Amount be invested in Raydon stock under either the ESOP or the 401k Plan.

      9.     **Amendment of the Raydon ESOP and/or Raydon 401k Plan to Effectuate the Distribution of the Settlement Funds.** Raydon will adopt any amendments to the Raydon ESOP and 401k Plan necessary to effectuate the Settlement (the "Amendments"), including amendments consistent with this Settlement Agreement (a) permitting distribution or roll-over of a participant's 401k Plan account credited with an allocation from the Net Settlement Amount to the extent permitted by applicable law, and (b) allowing participants who leave their allocation from the Net Settlement Amount in the 401k Plan to direct the investment of such amounts in accord with the 401k Plan's participant directed investment program, as in effect from time to time. The Raydon Defendants will provide Class Counsel with a proposed draft of any Amendment to be adopted by each plan (i.e., the ESOP and 401k Plan) at least 30 calendar

21

days prior to the date that the Final Approval Motion is due (except that the proposed

Amendments will omit the amount of the Net Settlement Amount that will be allocated among

Class Members). Raydon will then adopt the Amendments consistent with the terms of this

Paragraph and this Settlement Agreement within the later of 15 days after the Effective Date or

after receipt by Raydon of instructions from the Settlement Administrator modified only as to

how the Net Settlement Amount will be allocated among Class Members by name and amount.

The Raydon Defendants will provide Class Counsel with a copy of each actual Amendment as

adopted within three business days after its adoption. After adoption, each such Amendment may

not be rescinded, modified, or eliminated without written notification to Class Counsel at least

ten business days before the adoption of any such modification or elimination and the approval

of the Court. If the Raydon 401k Plan is merged with and into a successor plan (that Raydon

adopts as a participating employer), with the successor plan surviving the plan merger, Raydon

and the successor plan shall comply with the provisions of this Agreement as if the successor

plan were the Raydon 401k Plan prior to the plan merger.

             10.      **Tax Liability.** The Settling Parties will not have any liability or

responsibility for the payment of any Taxes incurred by or with respect to the Settlement Fund,

and any such Taxes will be paid out of the Settlement Fund.

## V.      PLAN OF ALLOCATION

             1.      **Proposed Plan of Allocation.** Co-Lead Class Counsel will propose and

submit a Plan of Allocation to the Court along with the Preliminary Approval Motion as to the

recommended method of determining and distributing the proceeds of the Settlement Fund (net

of any Fee Award, Expense Award, any Service Awards approved by the Court and other costs

or expenses authorized herein) to Class Members. The Plan of Allocation will be subject to Court approval and any modifications the Court deems proper.

2.      **Defendants' Non-Involvement.** Defendants will have no responsibility for preparing or any right to provide input into and will take no position on the Plan of Allocation except to the extent that (a) the Plan of Allocation would result in adverse tax consequences to the Raydon ESOP or the Raydon 401k Plan or (b) Class Counsel's proposal is inconsistent with Section V.1. Nothing in any Amendments to the Plan will modify or conflict with the Plan of Allocation or this Agreement.

3.      **Modification of Plan of Allocation.** In the event that the proposed Plan of Allocation is rejected or modified by the Court or on appeal, such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement, and will not provide a basis for any Party to withdraw from this Settlement Agreement; however, the Plan of Allocation must prohibit the Excluded Persons from receiving any distribution or allocation from the Settlement Fund.

4.      **Class Members' Right to Demonstrate Membership and/or Submit ESOP Account Data.** Before the Final Approval Hearing and by a deadline to be established by the Court, any person who claims to meet the definition of a Class Member but who has not been identified as a Class Member in the Class Data will be entitled to demonstrate membership in the Class and any person claiming that the Class Data regarding a participant's ESOP account is erroneous will be entitled to demonstrate that such an error will impact the amount allocated to that person under the Plan of Allocation. Such submissions will only be used to determine whether a person qualifies as a Class Member for purpose of this Settlement, subject to Court

approval, and to adjust amounts allocated to Class Members, subject to Court approval, under the Plan of Allocation.

5.      **Excluded Persons Prohibited From Receiving Settlement Fund.** None of the Excluded Persons will either directly or indirectly through allocations to their Raydon ESOP or Raydon 401k Plan accounts receive any of the proceeds from this Settlement. Defendants Donald K. Ariel and David P. Donovan acknowledge that they will not receive any allocation of any amount from this Settlement and further agree to obtain, if necessary, an authorization from any beneficiary (including a spouse) necessary to forego any such allocation.

6.      **No Claim Based on Distribution in Accordance with the Plan of Allocation.** The Class and its members will not have any claim against Plaintiff, Defendants, Defendant Releasees, Class Counsel, Defense Counsel, the Settlement Administrator, or the Independent Fiduciary, including any of the individuals involved in the distribution under the Plan of Allocation, based on any distributions of the Settlement Fund or allocations of the Net Settlement Amount made substantially in accordance with this Settlement Agreement, the Plan of Allocation or as otherwise authorized by the Court. Additionally, Class Members will be barred from asserting any claims against Plaintiff, Defendants, Defendant Releasees, Class Counsel, Defense Counsel, the Settlement Administrator or the Independent Fiduciary either arising out of calculations, distributions, or allocations performed by the Settlement Administrator or based on their actions that were consistent with the Plan of Allocation, the Settlement Agreement, the applicable plan (ESOP or 401k Plan), an order of the Court, or the direction of the Settlement Administrator or Class Counsel.

**VI.     SETTLEMENT ADMINISTRATION**

1.      **Appointment of Settlement Administrator.**  A Settlement Administrator who will be approved by the Court will be appointed to administer the Settlement and will report to Co-Lead Class Counsel and the Court.  Any Settlement Administrator will have experience providing notice to Class Members in employment or employee benefit class action settlements, and in supervising and administering large and complex settlement funds.

2.      **Settlement Administrator's Responsibilities.** The Settlement Administrator will undertake the following tasks to administer this Settlement consistent with the terms of this Settlement, the Plan of Allocation, and the orders of the Court and such other procedures required by the Court or as directed by Co-Lead Class Counsel:

(a)      Print and email and/or mail the Class Notice to the Class Members in accordance with this Settlement Agreement and any order of the Court and undertake to trace and re-mail all undeliverable Class Notices or other reasonable steps to locate missing Class Members;

(b)      Provide Class Counsel and Defense Counsel with copies of all written objections to the Settlement (to the extent such objections are not filed with the Court), and all challenges to the Class Data, including all information submitted in support of each challenge, and/or any request for exclusions from the Class;

(c)      Respond to questions from Class Members or refer Class Members to Class Counsel for response;

(d)      Maintain and staff a toll-free phone number and a web site until at least six (6) months after distributions of the Net Settlement Amount have been made to Class Members' Raydon ESOP accounts;

(e)      File with the Court a declaration confirming compliance with the

25

procedures approved by the Court for providing notice to the Class;

(f)     Determine for purposes of allocation of the Net Settlement Amount, subject to the approval by the Court, whether Class Members claiming to have sufficiently established either their status as members of the Class or that their account data differs from the Class Data and send notice of determinations or adjudications to those persons;

(g)     In accordance with the court-approved Plan of Allocation, calculate the amount of the Net Settlement Amount to be allocated to each Class Member entitled to payment from the Net Settlement Amount by name and amount;

(h)     Instruct the ESOP Plan Administrator, consistent with instructions from Class Counsel and the court-approved Plan of Allocation, as to how the Net Settlement Amount is allocated among the Class and into the Raydon ESOP accounts of individual Class Members;

(i)     Monitor the Settlement Fund and file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitations the returns described in Treas. Reg. Section 1.468B-2(k));

(j)     Pay the Net Settlement Amount to the Raydon ESOP, consistent with instructions from Class Counsel and the court-approved Plan of Allocation; and

(k)     Any other responsibilities set forth in this Agreement; and any other responsibilities agreed to by the Settling Parties related to administration of the Settlement and consistent with the orders of the Court or any other responsibilities ordered by the Court.

26

3.     **Raydon ESOP Plan Administrator's Responsibilities.** The Raydon ESOP Plan Administrator will (a) allocate the Net Settlement Amount to the Class Members' Raydon ESOP accounts pursuant to and consistent with the instructions from the Settlement Administrator; and (b) once such amounts are allocated into the Class Members' ESOP accounts, spin-off the proceeds from the Net Settlement Amount to the Raydon 401k Plan consistent with the terms of this Settlement Agreement.

4.     **Raydon 401k Plan Administrator's Responsibilities.** The Raydon 401k Plan Administrator will (a) process electronic distribution requests and distribute accounts attributable to the Net Settlement Amount to Class Members who make requests for distributions or rollovers as set forth in this Settlement Agreement and to the extent permitted by applicable law; (b) invest accounts attributable to the Net Settlement Amount in accord with the 401k Plan's participant directed investment program and the investment instructions by participants provided consistent with that program and consistent with the terms of this Settlement Agreement; and (c) search for and locate any Class Members who are missing participants consistent with Department of Labor regulations.

5.     **Tax Treatment of the Raydon Plans.** Raydon Defendants will use their best efforts to ensure that the Settlement will not adversely affect the tax-qualified status of the Raydon ESOP or the Raydon 401k Plan. Raydon Defendants will be responsible for all costs associated with any steps that they undertake to ensure the continued tax qualification of the Raydon ESOP or the Raydon 401k Plan with respect to the Settlement.

6.     **Tax Reporting.** The Raydon 401k Plan Administrator will be responsible for tax reporting for the Raydon 401k Plan.  The Raydon ESOP Administrator will be responsible for tax reporting for the Raydon ESOP. The Settlement Administrator will be

responsible for tax reporting for the Settlement Fund, including tax reporting for the payment of any Fee Award to Class Counsel and any Service Awards.

## VII.   PAYMENT OF FEES, SERVICE AWARD, AND REIMBURSEMENT OF COSTS AND EXPENSES

1.   **Attorneys' Fees & Expenses From the Settlement Fund.** Class Counsel will be entitled to file a motion seeking an award of attorneys' fees and reimbursement of expenses and costs from the Settlement Fund. Prior to the deadline for Class Members to object to the Settlement Agreement, Class Counsel will file a motion with the Court for an award from the Settlement Fund of: (a) attorney's fees (the "Fee Award"), (b) service award for Stephanie Woznicki ("Service Award") if consistent with Eleventh Circuit law, and (c) reimbursement of litigation costs and expenses (the "Expense Award"). Any Fee Award, Service Awards or Expense Award will be paid solely from the Settlement Fund and is subject to the Court's approval at the Final Approval Hearing.

2.   **Defendants' Non-Opposition.** Defendants and Defense Counsel will take no position regarding the application for or an award of the Fee Award, or the Expense Award, provided that the application for the Fee Award does not exceed thirty-three percent (33%) of the Cash Settlement Amount and the requested Expense Award does not exceed $100,000.00. Defendants and Defense Counsel will not take any position on a requested Service Award for Plaintiff so long as the Service Award does not exceed $10,000.00.

3.   **Payment of Fees/Expenses to Co-Lead Class Counsel.** All amounts to be paid pursuant to this Section will be paid into an account designated by Co-Lead Class Counsel to be distributed as directed by Co-Lead Class Counsel. Neither Defendants nor their Insurers will have any input as to the division of such fees and expenses among Plaintiffs' Counsel.

28

4.     **Timing of Payment of Attorneys' Fees and Reimbursement of Expenses.** Disbursement of any Fee Award, Expense Award or Service Award will be made only upon the Final Order becoming Non-Appealable and in the event that there is no appeal of the Final Order, but an appeal solely of a Fee Award, Expense Award, or any Service Award, Co-Lead Class Counsel will be entitled to a disbursement from the Settlement Fund of such amounts of the Fee Award or Expense Award as to which there is no dispute on appeal.

5.     **Non-Materiality of Award of Attorneys' Fees, Reimbursement of Expenses or Service Award to Settlement.** In the event that this Court refuses to award attorneys' fees, allow reimbursement of expenses/costs or permit a service award, in whole or in part, or any such award is rejected or modified on appeal, such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement and will not provide a basis for any of the Settling Parties to withdraw from this Settlement Agreement.

6.     **Defendants' Attorneys' Fees & Expenses.** Defendants and/or their insurers will bear their own attorneys' fees, expenses and costs. No amount of the attorneys' fees, expenses, or costs of this Action incurred by Defendants or the administration of this Settlement incurred by Defendants will be paid by, or charged to, directly or indirectly, the Raydon ESOP account of any Class Member.

7.     **No Indemnification.** Raydon will not indemnify Defendant Lubbock. No portion of the Cash Settlement Amount will be paid by Raydon. All Raydon Defendants other than Raydon will reimburse Raydon for any indemnification payments previously made and will forgo any amount previously claimed or which could have been claimed in relation to this Action.

29

## VIII.   NO ADMISSION OF WRONGDOING

1.      This Settlement Agreement embodies a compromise of disputed claims and nothing in the Settlement Agreement, including the furnishing of consideration in connection with this Settlement Agreement, will be interpreted or deemed to constitute any finding of wrongdoing or admission of wrongdoing by Defendants under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority, or give rise to any inference of liability in this or any other proceeding. This Settlement Agreement and the payments made consistent with its terms will not be offered or received against Defendants as any admission by any such Party with respect to the truth of any fact alleged by Plaintiff or Class Members or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or of admission by any Defendant of any damages, losses, liability, negligence, fault, or wrongdoing of any such Party.  Defendants expressly deny any liability, wrongdoing, damages, or losses with respect to the matters alleged in the Complaint or Amended Complaint. This Settlement Agreement and the Agreements in Principle may not be (a) deemed to be, (b) used as an admission of, or (c) used as evidence of any infirmity in the Claims asserted by Plaintiff and Class Members in this Action.

2.      This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement or the Final Order, and any Party may file this Settlement Agreement and/or the Final Order in any action that may be brought against it or any of the Released Parties to support a claim, a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in any action that may be brought to enforce any claim assigned pursuant to this

Settlement Agreement. Defendants may use and disclose this Settlement Agreement in connection with any proceeding or claim involving any of their insurers or any governmental agency with respect to the Raydon ESOP.

## IX.    APPROVAL OF THE SETTLEMENT

1.    **Preliminary Approval Order.** Plaintiff will file the Preliminary Approval Motion.  The Preliminary Approval Motion will seek an Order in a form agreed upon by the Settling Parties which will provide for, among other things:

(a)    Preliminary Approval of the Settlement as set forth in this Settlement Agreement, subject to further hearing and determination under Fed. R. Civ. P. 23(e);

(b)    Approval of the form of Class Notice, substantially in the form agreed-upon by the parties, and the manner of distribution and publication which is consistent with this Agreement, Rule 23 and the requirements of due process;

(c)    Appoint the Settlement Administrator;

(d)    Set deadlines by which all objections to the Settlement must be made, or any submissions to the Settlement Administrator regarding Class Members' membership in the Class or challenges regarding information about their ESOP account contained in the Class Data must be made;

(e)    Schedule a hearing date to determine whether the Settlement Agreement should be finally approved as fair, reasonable and adequate, and whether an Order finally approving the Settlement Agreement should be entered ("Final Approval Hearing") and request that such date be set at least 100 days after the date the Preliminary Approval Motion is filed to the extent consistent

with the Class Action Fairness Act of 2005 ("CAFA") and the requirements of

due process or, if such date is not so consistent, the earliest possible date;

(f)     Provide that no objection to the Settlement Agreement will be

heard and no papers submitted in support of said objection will be received and

considered by the Court at the Final Approval Hearing unless the objection and

reasons therefore, along with copies of any supporting papers, are filed with the

Clerk of the Court and served on the Parties within forty-five (45) days of the

publication and/or distribution of the Class Notice;

(g)     Provide that the Final Approval Hearing may be continued from

time to time by Order of the Court if necessary, and without further notice to the

Class;

(h)     Provide a deadline for filing of a Final Approval Motion and for

Class Counsel's application for Fee Award, Service Award, and Expense Award;

(i)     Require Raydon Defendants to produce the Class Data required

pursuant to Section II.7 of this Agreement; and

(j)     To the extent requested by Defendants, approve the form of notice

under CAFA.

2.     **Final Approval of the Settlement.** If the Court preliminarily approves

this Settlement, Class Counsel will file the Final Approval Motion. Defendants will either join in

or not oppose the Final Approval Motion. Class Counsel shall give Defendants at least five (5)

days to review the Final Approval Motion before filing. The Final Approval Motion will seek

entry of a proposed Final Order in a form to be agreed-upon by the Settling Parties and will,

among other things:

(a)      Order Final Approval of the Settlement set forth in this Settlement

Agreement;

(b)      Adjudge that the Settlement is fair, reasonable and adequate to the Class

pursuant to Rule 23(e);

(c)      Dismiss the Action against Defendants with prejudice;

(d)      Adjudge that Plaintiffs and the Class will be deemed conclusively to have

released and waived any and all Settled Class Claims against the Released Parties

as provided in this Settlement Agreement;

(e)      Bar and permanently enjoin the Parties and the Class from prosecuting any

and all Settled Claims, as provided in this Settlement Agreement, against any of

the Released Parties for whom they have released claims;

(f)      Determine Class Counsel's request(s) for Fee Award, Service Awards, and

Expense Award;

(g)      Provide that Class Members will be barred from asserting any claims

against the Defendants or Defendant Releasees arising out of the allocation of the

Net Settlement Amount calculated by the Settlement Administrator or based on

actions by Defendants or Defendant Releasees that were consistent with the Plan

of Allocation, the Settlement Agreement, the applicable plan (ESOP or 401k

Plan), an order of the Court, or the direction of the Settlement Administrator or

Class Counsel.

(h)      Retain exclusive jurisdiction, without affecting the finality of the Order

entered, with regard to: (i) implementation of this Settlement Agreement; (ii)

33

disposition of the Settlement Fund; and (iii) enforcement and administration of this Settlement Agreement, including the release provisions thereof; and

(i)        Determine whether notice to the appropriate state and federal officials has been provided as required by CAFA and whether Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715.

## X.        CONDITIONS OF SETTLEMENT

1.        **Court Approval.** Each of the following is an express condition of Settlement: (a) the Court enters a Preliminary Approval Order substantially in the form as required by this Agreement; and (b) the Court enters the Final Order, substantially in the form as required by this Agreement.

2.        **Non-Conditional Matters.** Each of the following is not a condition of the Settlement, and none will serve as a basis for any of the Settling Parties to withdraw from this Settlement:

(a)        Court approval of the Fee Award, Service Award, Expense Award, or the Plan of Allocation are not conditions of the Settlement. No action by the District Court or any courts of appeal related to the Fee Award, the Service Award, the Expense Award, or the Plan of Allocation will prevent the Final Order allowing the approval of the Settlement from becoming Non-Appealable.

(b)        Court approval or modification of the Plan of Allocation proposed by Class Counsel.

(c)        Independent Fiduciary approval of the Plan of Allocation.

## XI.        INDEPENDENT FIDUCIARY

1.      Defendants, at Defendant Lubbock's expense, will hire an Independent Fiduciary to (a) approve the Settlement consistent with Prohibited Transaction Exemption 2003-39, and (b) approve the Plan of Allocation. Within forty-two (42) days after the Court enters a Preliminary Approval Order, the Independent Fiduciary will issue its final opinion. If at any point, the Independent Fiduciary issues an opinion that does not approve all aspects of this Settlement, Defendants or Co-Lead Class Counsel will have the right, but not the obligation, to withdraw from the Settlement Agreement so long as such right is exercised within seven (7) days of receipt of the Independent Fiduciary's opinion. If any Party exercises such right under this provision, then the entire Settlement Agreement will be void and the parties will revert to their respective positions in the Action as of July 2, 2020.

## XII.    ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

1.      **CAFA Notice.** Pursuant to CAFA, Defendants, at their own expense, will prepare and provide the notice required by CAFA, including the notices to the United States Department of Justice, the United States Department of Labor, and to the Attorney Generals of all states in which the Class Members reside, as specified by 28 U.S.C. § 1715 ("CAFA Notice"), within ten (10) days of the filing of this Settlement Agreement with the Court.

2.      **CAFA Notice Provided to Class Counsel.** Defendants will provide Co-Lead Class Counsel with a copy of the CAFA Notice and materials that the Defendants sent within three (3) business days after such notices have been sent. The CAFA Notice and materials will be provided automatically and without further request by Co-Lead Class Counsel.

## XIII.   RELEASES AND COVENANTS NOT TO SUE

Upon the Final Order becoming Non-Appealable, and provided that each Party has performed all of the respective obligations under this Settlement Agreement to be performed on or prior to such date by such Party:

1.       **Release by the Class.** Plaintiff and the Class Members (including each and all of the foregoing's legal representatives, heirs, executors, administrators, successors, and assigns), fully, finally, and forever release the Defendant Releasees from and against any and all claims, known and unknown, that they have or could have asserted individually or on behalf of the ESOP against the Defendant Releasees that relate to or arise out of (a) the 2015 ESOP Transaction; and (b) the Released Claims, including any claims for attorneys' fees, costs or expenses (except as provided herein) or sanctions, that relate to the defense or settlement of the Action whether such claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise.

Notwithstanding the foregoing, Released Claims do not include any of the following: (a) claims to enforce this Agreement, (b) claims by individual Class Members challenging their ESOP allocations unrelated to the Settlement, including involving any individual participant's or beneficiary's claim regarding that participant's salary, age, or years of service for purposes of determining the participant's or beneficiaries entitlement to benefits under the Raydon ESOP, or (c) claims that cannot be released by law.

2.       **Covenant Not to Sue by Plaintiff and the Class.**  Plaintiff and the Class Members (including each and all of the foregoing's legal representatives, heirs, executors, administrators, successors, and assigns) covenant and agree on their own behalves, and on behalf of the Class and the ESOP, (a) not to commence or assert against any Defendant Releasee any

claim released by Paragraph XIII.1; and (b) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against any of the Defendant Releasees.

3.    **Release of Plaintiffs and the Class by Defendants.** Defendant Releasees release Plaintiff, each Class member, and Class Counsel from each and every claim that could have been asserted in the Action related to the filing of the Action, including any claims for attorneys' fees, costs, expenses or sanctions, that relate to the filing, commencement, prosecution or settlement of the Action whether such Claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise.

4.    **Correctness of Class Data.** Neither the ESOP, nor any of the fiduciaries on behalf of the ESOP or the Raydon 401k Plan, will assert any claims that challenge the correctness of any of the Class Data provided by the Raydon Defendants for purpose of this Settlement or challenge the prior distributions to Class Members resulting from the 2015 ESOP Transaction or an allocation to any of the Class Members' ESOP accounts that are subject to this Settlement unless that Class Member objects to that data within the court-approved period.

5.    **Covenant Not to Sue by Defendants.** Defendants (including each and all of the foregoing's legal representatives, heirs, executors, administrators, successors, and assigns) covenant and agree that they and Defendant Releasees, (a) will not commence or assert against Plaintiff or any member of the Class (including each and all of the foregoing's legal representatives, heirs, executors, administrators, successors, and assigns) any claim released by Paragraph XIII.3 and XII.4; and (b) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against Plaintiff or any member of the Class (including each and all of the foregoing's legal representatives, heirs, executors, administrators, successors, and assigns).

37

6.     **Defendant Lubbock and Raydon Defendants Mutual Release.** Raydon Defendants and Defendant Lubbock mutually release and forever discharge each other and their parents, predecessors, successors, assigns, subsidiaries, affiliates, and insurers, and their past, present and future directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, fiduciaries, administrators, trustees, members, employees, agents, insurers and attorneys, from any and all claims, of any nature whatsoever, whether accrued or not, known and unknown, that Raydon Defendants and Defendant Lubbock directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have against each other in in any way related to the 2015 ESOP Transaction or the Released Claims, including those raised or which could have been raised in this Action.

7.     **Non-Released Claims.** Notwithstanding the foregoing or any other language in this Settlement Agreement, the Settling Parties are not releasing claims to enforce this Settlement Agreement or claims concerning the validity of this Settlement Agreement (including any representations upon which the Settlement was based).

8.     **Release by the ESOP.** The ESOP, by and through its current Trustee or the Independent Fiduciary, shall release and covenant not to sue the Lubbock Releasees and the Raydon Releasees from and against any and all claims, known and unknown, that they have or could have asserted individually or on behalf of the ESOP against the Defendant Releasees that relate to or arise out of (a) the 2015 ESOP Transaction; and (b) the Released Claims, including any claims for attorneys' fees, costs or expenses (except as provided herein) or sanctions, that relate to the defense or settlement of the Action whether such Claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise.

38

## XIV.   EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

1.      **Termination Notice.** In the event that the Court refuses to grant the Preliminary Approval Order or enter the Final Order, or approval of the Settlement is reversed on appeal or materially altered, or the current Trustee or Independent Fiduciary refuses to release and covenant not to sue Defendants on terms consistent with Paragraph XIII.8 within forty-two (42) days of the Preliminary Approval Order, either Co-Lead Class Counsel or Defendants may void this Settlement by providing written notice to counsel for all other Parties to the Settlement within seven days (7) days after the event prompting the right to terminate ("Termination Notice").

2.      **Effectiveness of Termination Notice.** The Termination Notice will become effective to void the Settlement Agreement only if and after the Settling Parties have failed to reach a written agreement within thirty (30) days of the event triggering the Termination Notice to modify this Settlement Agreement to resolve the issue.

3.      **Effect of Withdrawal.** In the event that the Court refuses to grant the Preliminary Approval Order or enter the Final Order, or such approval is reversed on appeal and one of the Settling Parties exercises its right to withdraw from the Settlement Agreement within the time specified above, or any other circumstance occurs which causes the Final Order to not become Non-Appealable and the Parties have not entered into a written modification of the Settlement Agreement within thirty (30) days of such occurrence: (a) the monies in the Escrow Account (including any interest or earnings accrued while in Escrow, but less any amount paid or owing for taxes or other expenses incurred by Co-Lead Class Counsel or the Settlement Administrator while in the Escrow Account in connection with administering the Settlement Agreement, including any amounts necessary to prepare tax returns or monies paid or owing to

39

the Settlement Administrator or the Escrow Agent) will be returned to each payor, pro rata

according to the amount of its/his respective payment(s) into the Settlement Fund upon written

request within ten (10) business days of such written request; (b) the Settling Parties will not be

released from the claims asserted in this Action notwithstanding anything contained herein to the

contrary; (c) both this Agreement and the Agreements in Principle will be void *ab initio*; and (d)

the Parties' positions, rights and responsibilities will be deemed to have reverted to their

respective status in this Action as of July 2, 2020, and, except as may otherwise be expressly

provided herein, the Settling Parties will proceed in all respects as if this Settlement Agreement

and the Agreements in Principle never existed.

## XV.  MISCELLANEOUS PROVISIONS

1.  **Return or Destruction of Confidential Information.**  For purposes of

Paragraph 9 of the Parties' Confidentiality Agreement, conclusion of the litigation will have

occurred when Counsel for the Raydon Defendants provides written notice to Class Counsel that,

pursuant to Section IV.5, (a) the proceeds from the Net Settlement Amount have been paid into

the accounts of Class Members in the Raydon 401k Plan, and (b) the process of distributing

accounts attributable to allocations of the Net Settlement Amount from the Raydon 401k Plan

has been completed for Class Members who requested (and are eligible under 401k Plan terms to

receive) a distribution within 90 days of the date Class Counsel receives notice that the Net

Settlement Amount has actually been credited to Class Members' 401k Plan accounts. In

addition to the archival copies of documents to which Counsel for any Party is entitled to retain

pursuant to Paragraph 9 of the Confidentiality Agreement, Class Counsel may maintain the Class

Data used to provide Class Notice or to calculate allocations of the Settlement to the Class for

one year following final disposition, but such materials will remain subject to the terms of the

40

Confidentiality Agreement. Additionally, the Settlement Administrator may maintain the Class Data for one year following final disposition, on the condition that the Settlement Administrator agrees to and does maintain such materials subject to the terms of the Parties' Confidentiality Agreement.

2.       Within 30 days after completion of all steps necessary to effectuate the terms of the Settlement, any Party or counsel who has received any confidential materials (excluding counsel's working files) will either return such materials to counsel for the Party who produced the confidential materials or destroy them as provided in the Confidentiality Agreement.

3.       **Additional Discovery and Information.** Raydon Defendants will (a) produce the valuation letter from the current ESOP trustee setting the stock price as of 12/31/2019 and as of 12/31/2020 (or the last determination thereof) when any such valuation becomes available, and (b) provide any updated Class Data if necessary. Raydon Defendants have previously provided Class Counsel with the plan document for the 401k Plan, the trust agreement for the 401k Plan's trust, the summary plan description for the 401k Plan, and information about any available investment options under the 401k Plan and any applicable fees, costs or charges under the 401k Plan and will provide any updated versions of such documents to Class Counsel for at least 120 days after the Effective Date. Raydon Defendants shall provide other documents reasonably requested by Class Counsel in connection with the Settlement.

4.       **Tax Advice Not Provided.** No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Class, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. The Tax obligations of the Class and the determination thereof are

41

the sole responsibility of each Class Member, and it is understood that the Tax consequences

may vary depending on the particular circumstances of each Class Member.

      5.     **Binding Effect.** This Settlement Agreement will be binding upon, and

inure to the benefit of, the successors, assigns, executors, administrators, affiliates, heirs and

legal representatives of the Settling Parties and Released Parties, provided, however, that no

assignment by any Settling Party will operate to relieve such Party of its obligations under this

Settlement Agreement.

      6.     **Good Faith.** The Settling Parties: (a) acknowledge that it is their intent to

consummate this Settlement; (b) agree to exercise their best efforts and to act in good faith to

cooperate to the extent necessary to effectuate and implement all terms and conditions of this

Settlement Agreement; and (c) agree to exercise their best efforts and to act in good faith to

cooperate to the extent necessary to obtain the fullest possible participation of all Class Members

in any Settlement. The Settling Parties and their counsel agree to cooperate fully with one

another in seeking entry of the Preliminary Approval Order and final approval of the Settlement.

The Settling Parties also agree to promptly execute and/or provide such documentation as may

be reasonably required to obtain preliminary and final approval of this Settlement.

      7.     **Exhibits.** Any exhibits attached hereto and identified herein are hereby

incorporated by reference as though fully set forth herein.

      8.     **Modification.** This Settlement Agreement may be amended or modified

only by written instrument signed by Co-Lead Counsel on behalf of Plaintiffs and the Class and

by Defense Counsel on behalf of Defendants or their respective successors in interest and only if

the Court approves the modification or amendment.

9.      **Representations.** This Settlement Agreement constitutes the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or the Agreements in Principle, other than the representations, warranties, and covenants contained and memorialized in such documents. In the event of any conflicts between this Settlement Agreement, the Agreements in Principle, or any other document, the Settling Parties agree that this Settlement Agreement will control.

10.     **Authorization.** Each signatory to this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of the respective parties he or she represents.

11.     **Counterparts.** This Settlement Agreement may be executed in one or more original, photocopied, or facsimile counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.

12.     **Governing Law.** All terms of this Settlement Agreement will be governed by and interpreted according to the laws of the State of Florida without regard to its rules of conflicts of law and in accordance with the laws of the United States.

13.     **Headings.** The headings in this Settlement Agreement are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Settlement Agreement in any way.

14.     **Waiver.** The waiver by any Party of any breach of this Settlement Agreement by any other Party will not be deemed a waiver of any other breach of this Settlement Agreement. The provisions of this Settlement Agreement may not be waived except, for

43

Defendants, by a writing signed by the affected Party, or counsel for that Party, or on behalf of the Class, by Class Counsel or orally on the record in court proceedings by those same persons.

15.   **Continuing Jurisdiction.** The Settling Parties agree to submit to the jurisdiction of the Court and will be bound by the terms of this Settlement Agreement, including, without limitation, disputes related to implementing and enforcing the Settlement embodied in this Settlement Agreement. The Final Order will provide that the Court will have continuing jurisdiction over this Settlement.

16.   **Enforcement of this Agreement.**   In the event that any Party to this Agreement believes that another Party to this Agreement has breached the terms of this Agreement, that Party will notify the alleged breaching Party and Counsel in writing setting forth the nature of the breach and the requested method to cure the breach at least 14 days prior to filing any litigation to enforce the terms of the Settlement Agreement. In the event that the allegedly breaching Party fails to cure the alleged breach as set forth in the written notification after 14 days, the other Party may then file an action to enforce the Settlement Agreement.   A Party who achieves some success on the merits in demonstrating a breach occurred, could have been reasonably cured within 14 days (or a longer time set forth in the written notification) and was not cured within that time, will be entitled to attorneys' fees and expenses consistent with the standards of ERISA § 502(g)(1).

17.   **No Party Is the Drafter.** The Settlement Agreement is deemed to have been drafted by all Settling Parties hereto, as a result of arm's-length negotiations among the Settling Parties.   Whereas all Settling Parties have contributed substantially and materially to this Settlement Agreement, it will not be construed more strictly against one Party than another.

44

18. **Extensions.** The Settling Parties reserve the right, subject to the Court's approval, to request any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

19. **Evidentiary Effect.** Neither this Settlement Agreement nor the Settlement, nor any negotiation, nor act performed, nor document executed, nor proceedings held pursuant to or in forbearance of this Settlement Agreement or the Settlement, even if this Settlement Agreement is cancelled or terminated: (a) is, or may be deemed to be, or may be used as an admission of, or evidence of the validity of any Settled Claim, or of any wrongdoing, negligence, misrepresentation, violation or liability of any Settling Party; (b) is, or may be deemed to be, or may be used as an admission of, or evidence of any infirmity in the Complaint or claims asserted by the Class; or (c) is, may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any Settling Party in any civil, criminal or administrative proceeding in any court, administrative agency, or tribunal, including in this Action.  However, this Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement, the Settlement, or the Final Order; and any Settling Party may file this Settlement Agreement and/or the Final Order in any action to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

20. **Final and Complete Resolution.** The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to this Action. The Settlement compromises claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling

45

Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement Agreement were negotiated in good faith at arm's-length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

21.     **Interpretation and Construction.** In interpreting this Settlement Agreement, duplicative and/or overlapping release provisions will not be presumed or construed to be intended to release separate claims or have different meanings. Neither prior versions of this Settlement Agreement or the Agreements in Principle, nor the negotiating history of these terms will be used to aid in any interpretation or construction of those terms.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby have caused this Settlement Agreement to be executed by them or their duly authorized counsel, on the dates set forth below.

**[Signature page follows]**

46

**FOR PLAINTIFF, CLASS REPRESENTATIVE AND ON BEHALF OF THE CLASS**

Dated: April 30, 2021

R. Joseph Barton (*pro hac vice*)
Colin M. Downes (*pro hac vice*)
**BLOCK & LEVITON LLP**
1735 20th Street NW
Washington, D.C. 20009
Tel:  (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockesq.com
          cdownes@blockesq.com

Daniel Feinberg (*pro hac vice*)
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel:  (510) 269-7998
Fax: (510) 269-7994
Email: dan@feinbergjackson.com

Sam J. Smith, Florida Bar No. 818593
Loren B. Donnell, Florida Bar No. 013429
BURR & SMITH, LLP
111 2nd Avenue N.E., Suite 1100
St. Petersburg, FL 33701
(813) 253-2010
ssmith@burrandsmithlaw.com
ldonnell@burrandsmith.com

Attorneys for Plaintiff, Class Representative, and the Class

[Signature page continues]

47

**FOR DEFENDANTS RAYDON CORPORATION, DONALD K. ARIEL, DAVID P. DONOVAN, THE ESOP COMMITTEE OF THE RAYDON CORPORATION EMPLOYEE STOCK OWNERSHIP PLAN, DAVID P. DONOVAN 2012 TRUST, ARIEL FAMILY TRUST DATED DECEMBER 18, 2012, PAMELA W. ARIEL, VERNA L. DONOVAN 2012 TRUST, DAVID P. DONOVAN, JR., IRREVOCABLE TRUST DATED JULY 25, 2008, LORI L. WEISS IRREVOCABLE TRUST DATED JULY 25, 2008, NICKI J. DUNCAN IRREVOCABLE TRUST DATED JULY 25, 2008**

Dated: April 3, 2021

By: _____

Ashley B. Abel (***pro hac vice***)
Fed ID 1032
**JACKSON LEWIS P.C.**
15 S. Main Street, Suite 700
Greenville, SC 29601
Tel: 864-232-7999
Fax: 864-235-1381
E-mail: ashley.abel@jacksonlewis.com

Alicia M. Chiu
Florida Bar No. 0058366
**JACKSON LEWIS P.C.**
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone:      (407) 246-8440
Facsimile:      (407) 246-8441
E-mail:  alicia.chiu@jacksonlewis.com

*Attorneys for Raydon Defendants*

48

**FOR DEFENDANT LUBBOCK NATIONAL BANK**

Dated: April 30, 2021

By: _Edwin J. Schulz_
      Name: Edwin L. Schulz
      Title: President / CEO

*For Defendant Lubbock National Bank*

49