UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE WOZNICKI,
on behalf of herself and all others
similarly situated,

                 Plaintiff,

v.                                         **Case No:   6:18-cv-2090-WWB-GJK**

RAYDON CORPORATION,
DONALD K. ARIEL, DAVID P.
DONOVAN, THE ESOP
COMMITTEE OF THE RAYDON
CORPORATION EMPLOYEE
STOCK OWNERSHIP PLAN,
LUBBOCK NATIONAL BANK,
DAVID P. DONOVAN 2012
TRUST, ARIEL FAMILY TRUST
DATED DECEMBER 18, 2012,
PAMELA W. ARIEL, VERNA L.
DONOVAN 2012 TRUST, DAVID
P. DONOVAN, JR.,
IRREVOCABLE TRUST DATED
JULY 25, 2008, LORI L. WEISS
IRREVOCABLE TRUST DATED
JULY25, 2008, NIKI J. DUNCAN
IRREVOCABLE TRUST DATED
JULY 25, 2008,

                 Defendants.

_____

REPORT AND RECOMMENDATION

     This cause came on for consideration without oral argument on the

following motion:

<table>
<tr><td><strong>MOTION:</strong></td><td><strong>JOINT RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF (Doc. No. 216)</strong></td></tr>
<tr><td><strong>FILED:</strong></td><td><strong>May 3, 2020</strong></td></tr>
</table>

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    FACTS AND PROCEDURAL HISTORY

Defendant Raydon Corporation ("Raydon") "was founded in 1988 and specializes in developing simulation and training technologies for military training by the U.S. Armed Services." Doc. No. 98 at 9. Plaintiff Stephanie Woznicki alleges that in 2015, Raydon was a closely held company that was not traded on any public market or exchange. Doc. No. 67 at ¶ 21. In 2015, the "Selling Shareholders"[1] sold Raydon's stock to the Raydon Corporation Employee Stock Ownership Plan (the "ESOP") for $60.5 million (the "2015 Transaction"). Doc. No. 67 at ¶ 2. Defendant Lubbock National Bank ("Lubbock") was the trustee of the ESOP and facilitated the 2015 Transaction. *Id.* at ¶¶ 19, 47.

The 2015 Transaction included million-dollar payments to Defendants Donald K. Ariel and David P. Donovan (the "Director Defendants") in return for

---

[1] The Selling Shareholders are Defendants Donald K. Ariel; David P. Donovan; David P. Donovan 2012 Trust; Ariel Family Trust Dated December 18, 2012; Pamela W. Ariel; Verna L. Donovan 2012 Trust; David P. Donovan, Jr., Irrevocable Trust Dated July 25, 2008; Lori L. Weiss Irrevocable Trust Dated July 25, 2008; and Niki J. Duncan Irrevocable Trust Dated July 25, 2008. Doc. No. 67 at ¶ 17.

their promises to not compete with Raydon. *Id.* at ¶ 63. This was in addition to subordinated notes obligating Raydon to pay the Director Defendants millions of dollars in principal and interest over at least fifteen years after the sale. *Id.* at ¶¶ 63-64. Woznicki alleges that there is "no rational economic basis" for the non-compete agreements because Raydon is indebted to the Director Defendants for at least fifteen years and the Director Defendants competing with the company might cause it to default on the subordinated note payments. *Id.* at ¶ 65.

As part of the 2015 Transaction, Raydon agreed to indemnify the Director Defendants against claims regarding their services as fiduciaries of the ESOP. *Id.* at ¶ 75. Raydon also agreed to indemnify Lubbock against claims related to the ESOP or its performance of its duties as trustee of the ESOP. *Id.* at ¶ 76. Woznicki believes Lubbock failed to adequately investigate Raydon and that it should not have relied on information provided to it by persons with a financial interest in the 2015 Transaction. *Id.* at ¶¶ 35-45.

On December 31, 2015, the fair market value of Raydon's stock held by the ESOP was $5.11 million. *Id.* at ¶ 53. On December 31, 2017, the stock was worth $4.55 million. *Id.*

Woznicki is a participant in the ESOP. *Id.* at ¶ 6. She complains that when they engaged in the 2015 Transaction, the officers and directors of Raydon, their relatives, and their relatives' trusts (the "Raydon Defendants"), along with

Lubbock, violated the Employee Retirement Income Security Act of 1974 ("ERISA"). Doc. No. 67.

On December 5, 2018, Woznicki filed suit against the Raydon Defendants and Lubbock. Doc. No. 1. On April 23, 2019, Woznicki filed an amended complaint that includes claims for (1) engaging in a prohibited transaction forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), against the Selling Shareholders and Lubbock; (2) engaging in a prohibited transaction forbidden by ERISA § 406(b), 29 U.S.C. § 1106(b), against the Selling Shareholders; (3) breach of fiduciary duty under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) against Lubbock; (4) breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) by Raydon, the ESOP Committee, and Director Defendants; and (5) violation of ERISA § 410 and ERISA § 502(a)(3) against Lubbock and the Director Defendants. Doc. No. 67. Woznicki sought a declaratory judgment, injunctive relief, disgorgement of profits made using the ESOP's assets, an accounting, constructive trusts, equitable liens on funds wrongfully withheld by Defendants, and attorney's fees and costs. *Id.* at 36-37. Woznicki also asked the Court to certify a class consisting of "all participants in the . . . ESOP from September 30, 2015 or any time thereafter who vested under the terms of the Plan and those participants' beneficiaries." *Id.* at ¶ 78.

On March 16, 2020, the Court granted Woznicki's motion to certify the class.

Doc. No. 163. The Court certified the following class:

> All participants in the Raydon Corporation Employee Stock Ownership Plan from September 30, 2015, or any time thereafter, who vested under the terms of the Plan and those participants' beneficiaries.
>
> Excluded from the named class are Defendants and their immediate family (including any person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

*Id.* at 4-5. Plaintiff's counsel, Robert Joseph Barton of Block & Leviton LLP, Daniel M. Feinberg of Feinberg Jackson Worthman & Wasow LLP, and Sam Jones Smith and Loren Bolno Donnell of Burr & Smith, LLP ("Class Counsel") were certified as class counsel. *Id.* at 5. The Court also denied Woznicki's request that Briana Nicole Tatum be a class representative because Tatum's claims are not typical of the class. *Id.* at 4.

On August 25, 2020, the parties executed the Class Action Settlement Agreement. Doc. No. 208 at 10. On August 26, 2020, the parties filed a "Joint Motion for Preliminary Approval of Class Action Settlement and Motion to Modify Class and Memorandum of Law in Support Thereof." Doc. No. 208. On January 29, 2021, a Report and Recommendation was issued recommending that the motion be denied due to numerous deficiencies. Doc. No. 211. On February 12,

2021, the parties filed a joint notice of no objection to the Report and Recommendation. Doc. No. 212. On February 17, 2021, the Court adopted the Report and Recommendation and gave the parties a deadline of April 19, 2021, to file a renewed motion in accordance with the Report and Recommendation. Doc. No. 213. After receiving an extension of time, on May 3, 2021, the parties filed a renewed motion seeking preliminary approval of their settlement, in which they corrected the deficiencies noted in the Report and Recommendation (the "Motion"). Doc. No. 216. In support of the Motion, the parties filed the Declaration of Daniel Feinberg, Plaintiff's counsel, which includes as attachments the Amended Class Action Settlement Agreement (the "Agreement"), the proposed plan to allocate the Settlement Fund (the "Plan of Allocation"), the Notice of Class Action Settlement in Raydon ESOP Litigation (the "Proposed Notice"), the Confidentiality Agreement between the parties, the proposed settlement administrator's curriculum vitae, and a red-lined copy of the Agreement showing the changes made to the original agreement. Doc. No. 217.

II.   **ANALYSIS**

The parties seek preliminary approval of the Agreement, approval of the Proposed Notice, appointment of CPT Group, Inc., as the Settlement Administrator, preliminary approval of the Plan of Allocation, and a date for the fairness hearing. Doc. No. 216 at 10. Before such relief is given, the Court must

make a preliminary determination as to whether the settlement is fair and adequate. Fed. R. Civ. P. 23(e)(1), (2).

The Court is required "to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct, Inc.* No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). When making such a determination, the Court decides whether the proposed settlement "is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *Id.* (citations and quotations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citations omitted). After determining the fairness of the settlement terms, the Court must "communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and … authorize the manner and form of dissemination of the notice." *Family Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016) (citations omitted). If the Court finds the proposed settlement defective, it generally cannot rewrite it. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) ("Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the

parties."). Instead, the Court may only accept or reject the settlement. 4 Newberg on Class Actions § 13:12 (5th Ed. Dec. 2020 update).

### A.    The Agreement

On August 25, 2020, the parties executed the original settlement agreement. Doc. No. 208. After reviewing the Report and Recommendation, the parties entered into the Agreement, amending the original agreement to address the concerns set forth in the Report and Recommendation. Doc. No. 216 at 3. The parties remedied the deficiencies, and pertinent provisions of the Agreement are discussed below.

### 1.    The Settlement Class

The original agreement purported to define the Settlement Class differently than the class that the Court certified. Doc. No. 211 at 6. The parties represent that the basis for attempting to change the definition of the Settlement Class no longer exists, and the Settlement Class is now defined in the Agreement as it is in the Order certifying the class:

> All participants in the Raydon Corporation Employee Stock Ownership Plan from September 30, 2015, or any time thereafter, who vested under the terms of the Plan and those participants' beneficiaries.
>
> Excluded from the named class are Defendants and their immediate family (including any person defined as a relative under 29 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal

> representatives, successors, and assigns of any such excluded
> persons.

Doc. No. 163 at 4-5; Doc. No. 217-1 at 7.

### 2. The Settlement Amount

The Raydon Defendants or their insurers will pay $1.2 million and Lubbock or its insurers will pay $1.2 million into an escrow account within ten days after an order preliminarily approving the settlement is entered (collectively, the "Settlement Amount"). Doc. No. 217-1 at 15. The Agreement provides that the Settlement Amount will be distributed to the Class Members by being merged into the Raydon 401k Plan. Doc. No. 217-1 at 19.

### 3. Objections

The Agreement mentions objections in connection with the order preliminarily approving the Agreement, stating that the Motion will ask for an order that establishes

> deadlines by which all objections to the Settlement must be made . . . [and] that no objection to the Settlement Agreement will be heard and no papers submitted in support of said objection will be received and considered by the Court at the Final Approval Hearing unless the objection and reasons therefore, along with copies of any supporting papers, are filed with the Clerk of the Court and served on the Parties within forty-five (45) days of the publication and/or distribution of the Class Notice . . . .

Doc. No. 217-1 at 34, 35. Thus, objections must be made in writing, filed with the Clerk, and served on the parties within forty-five days of the publication and/or distribution of the Class Notice. *Id.* at 35.

4.      <u>Settlement Administrator</u>

The parties propose CPT Group, Inc. as the Settlement Administrator. Doc. No. 216 at 9-10. Attached to the Motion is CPT Group, Inc.'s Curriculum Vitae. Doc. No. 217-5. The Agreement states that the Settlement Administrator will agree or has agreed to be bound by the Confidentiality Agreement, Doc. No. 217-1 at 16, and the parties provide a copy of the Confidentiality Agreement signed by CPT Group's agent, Doc. No. 216 at 9; Doc. No. 217-4 at 11.

5.      <u>Distribution of Settlement Proceeds</u>

After the final order approving the settlement becomes non-appealable, the Settlement Fund will be distributed after the payment of taxes, expenses incurred in administering the Settlement Fund, and attorney's fees and costs and a service award to the class representative, if one is awarded. Doc. No. 217-1 at 21.

Following payment of the above expenses, "the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation by remitting the Net Settlement Amount to the Raydon ESOP to be allocated by the ESOP Plan Administrator to the ESOP accounts of Class Members based on the instructions of the Settlement Administrator." *Id.* The Plan of Allocation will be

submitted "to the Court along with the Preliminary Approval Motion as to the recommended method of determining and distributing the proceeds of the Settlement Fund (net of any Fee Award, Expense Award, any Service Awards approved by the Court and other costs or expenses authorized herein) to Class Members." *Id.* at 25-26. The parties estimate that "each participant Class Member will receive an average gross recovery of approximately $13,000.00 before fees, costs and other settlement expenses are deducted . . . ." Doc. No. 208 at 19.

The original motion for approval of the settlement did not contain sufficient information regarding the Plan of Allocation. Doc. No. 208. In the Motion, the parties attach a proposed Plan of Allocation, which states: "Each Class Member shall be allocated a pro rata share of the Net Settlement Amount based upon the number of vested Raydon Corporation shares allocated to that Class Member's ESOP account, as a fraction of the total number of vested shares allocated to all Class Members' ESOP accounts." Doc. No. 217-2 at ¶ 2. The allocations will then be deposited into the Class Member's ESOP account based on the Class Member's pro rata share of the Net Settlement Amount. *Id.* at ¶ 3. If there are residual funds, then those "will be distributed to non-sectarian, non-profit 501(c)(3) charitable organization(s) recommended by Co-Lead Class Counsel and approved by the Court." *Id.* at ¶ 4.

### 6.   Attorney's Fees and Expenses

Attorney's fees and expenses awarded by the Court, plus costs for the notice and the Settlement Administrator, will be paid from the Settlement Fund. Doc. No. 217-1 at 20, 31. Defendants agree not to take a position on Class Counsel's application for an award if the requested fee award does not exceed 33% of $2.4 million and the requested expenses do not exceed $100,000. *Id.* at 31.

The original agreement provides that the award for attorney's fees and expenses may be disbursed before the Court's order approving such an award becomes non-appealable. Doc. No. 208-2 at 31. After the Report and Recommendation, the Agreement now provides that disbursement of the fee award will be made only upon the final order becoming non-appealable or there is no dispute as to the amount of the fee. Doc. No. 217-1 at 32.

### 7.   Service Award

The original agreement stated that Class Counsel will file a motion for a "Service Award" from the Settlement Fund for Woznicki "and/or Briana Tatum . . . ." Doc. No. 208-2 at 30. The Agreement now omits any service award to Briana Tatum and provides that Class Counsel will seek a Service Award for Woznicki "if consistent with Eleventh Circuit law . . . ." Doc. No. 217-1 at 31. *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (holding that Supreme

Court precedent prohibits awards to class representatives that compensate the representative for her time and reward her for bringing a lawsuit).

### B.   Fairness, Reasonableness, and Adequacy of Proposed Settlement

Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." In determining whether the settlement agreement is fair, reasonable, and adequate, the Court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts also consider the following factors in determining whether the settlement agreement is fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Reviewing the factors listed under Rule 23(e)(2) first, Class Counsel and Woznicki adequately represented the class by vigorously pursing this litigation. The previous dealings between the parties and attorneys, including mediating with a retired magistrate judge, support the conclusion that the Agreement was negotiated at arm's length. Reviewing the costs, risks, and delay of trial and appeal, is subsumed in the discussion below as to the first and fourth *Bennett* factors. The Agreement provides that the Settlement Amount will be distributed to the Class Members by being merged into the Raydon 401k Plan. Doc. No. 217-1 at 19. This should ensure that the Class Members will receive their distributions. The parties agree that Defendants will not challenge any award of attorney's fees that "does not exceed thirty-three percent (33%) of the Cash Settlement Amount [$2.4 million.]" Doc. No. 217-1 at 31. Payment of attorney's fees "will be made only upon the Final Order becoming Non-Appealable" and if there is an appeal as to the fees, payment only of the amount that is undisputed will be due if there is no appeal as to the Final Order. *Id.* at 32. These terms are reasonable. As to the last

factor in Rule 23(e)(2), the Agreement treats Class Members equitably relative to each other, as the distribution is calculated by the Class Member's pro rata share of the Net Settlement Amount, determined by the Class Member's number of vested shares. Doc. No. 217-2 at ¶ 2.

Regarding the first factor under *Bennett*, likelihood of success at trial, the parties represent that "[t]his is a complex ERISA class action that alleges multiple violations of ERISA." Doc. No. 208 at 18. The Court dismissed one of Plaintiff's claims, and "Plaintiff recognizes that while she believes her remaining claims are strong, they are all subject to potential defenses and arguments." *Id.* Defendants deny any wrongdoing or liability. *Id.* There is no indication that either party is clearly likely to succeed at trial, and thus this factor weighs in favor of approving the settlement.

Regarding the second and third factors—the range of possible recovery and the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable—Plaintiff represents that her "valuation expert opined that the Plan overpaid by an amount between approximately $4.6 million and $8.9 million." *Id.* at 19. The Settlement Amount of $2.4 million is "between approximately 27% and 52% of the range of potential recovery for the ESOP." *Id.* "This estimate of possible relief takes into account that Defendants holding promissory notes issued as part of the ESOP transaction returned $10 million in a

claw-back in 2018." *Id.* The parties represent that "each participant Class Member will receive an average gross recovery of approximately $13,000.00 before fees, costs and other settlement expenses are deducted . . . ." *Id.* The Settlement Amount is within the range of possible recovery, and thus factors two and three weigh in favor of finding the Agreement fair, adequate, and reasonable.

Regarding the fourth factor—the complexity, expense, and duration of litigation—this case was commenced on December 5, 2018, the parties engaged in mediation in May 2019, and executed the original settlement agreement on August 25, 2020. Doc. No. 1; Doc. No. 208 at 4. This ERISA case involves a complicated transaction involving the sale of stock to an employee stock ownership plan for $60.5 million. Doc. No. 67. Numerous people and entities are named as Defendants. *Id.* The parties engaged in a contentious and document-heavy battle regarding whether the class should be certified, including filing supplemental memoranda and motions to exclude evidence. Doc. Nos. 96, 98-102, 105, 106, 136, 141, 145, 146, 149, 152, 154, 156. Thus, the complexity, expense, and duration of the litigation weigh in favor of finding the Agreement fair, reasonable, and adequate.

Regarding the fifth factor, at this stage of the proceedings, there is no evidence of the substance and amount of opposition to the Agreement.

Finally, the sixth factor—the stage of proceedings at which the settlement was achieved—favors finding the Agreement fair, reasonable, and adequate. The

Agreement was entered "after the parties were well informed of the merits of the case through discovery, the exchange of mediation statements and hours of intensive negotiations conducted through [the mediator]." Doc. No. 208 at 24-25. The case progressed past the pleadings stage, the parties were engaged in discovery, and the Court granted class certification when the Agreement was reached. *Id.* at 4. A review of the factors demonstrates that the Agreement is fair, reasonable, and adequate.

## C.   Adequacy of Notice

Should a party attempt to certify a class under Federal Rule of Civil Procedure 23(b)(3), notice must be provided to all class members. *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001). Rule 23(c)(2) requires that the notice be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class . . . ." *Family Med. Pharmacy,* 2016 WL 7320885, at *5.

Rule 23(c)(2)(B) requires that the notice contain the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member
> who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members
> under Rule 23(c)(3).

When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class …" *Family Med. Pharmacy*, 2016 WL 7320885, at *5.

The Agreement states that notice to the class will contain the following: "a brief description of the claims advanced by the Class, a summary of the terms of the Settlement Agreement, information on the attorneys' fees and costs sought by Class Counsel, describe the proposed Plan of Allocation of the Settlement Fund to the Class, and provide information about the Final Approval Hearing . . . ." Doc. No. 217-1 at 15. Notice will be provided by either "electronic notification . . . or, if unavailable or not approved by the Court, by mailing via first class US Mail to all Class Members, and . . . by posting the Class Notice on websites maintained by Co-Lead Class Counsel and the Settlement Administrator." *Id.* The notice will also contain instructions to electronically request a distribution or rollover of the Class Member's allocations from the Net Settlement Amount and any other information needed for the Class Member to electronically provide instructions regarding how the Class Member's allocations should be invested. *Id.* at 15. If a notice sent by U.S. mail is returned as undeliverable, the Settlement Administrator will make

reasonable efforts to obtain a valid mailing address and promptly resend the notice. *Id.* at 16.

Class Counsel and the Settlement Administrator will also establish a website to provide information about this case and the settlement to Class Members. *Id.* at 17. The website will contain the following:

> the Class Notice, the Amended Complaint, the Order on the Motions to Dismiss, the Order on the Motion for Class Certification, the Settlement Agreement, Preliminary Approval Motion, Preliminary Approval Order, proposed Plan of Allocation, Final Approval Motion, Motion for Attorneys' Fees, Expenses and Service Award, the summary plan description for the Raydon 401k Plan, any forms or other information necessary for a Class Member to either electronically request a distribution of the Class Member's allocation of the Net Settlement Amount from the 401k Plan or electronically provide instructions to the Raydon 401k Plan Administrator as to how to invest the Class Member's allocation of the Net Settlement Amount under the 401k Plan's directed investment program, as in effect from time to time, and other agreed-upon documents relevant to the Action and Settlement.

*Id.* at 17-18. The expenses for the Class Notice will be paid from the Settlement Fund. *Id.* at 18.

The parties attach the Proposed Notice detailing, *inter alia*: 1) the nature of the lawsuit; 2) the definition of the class; 3) Woznicki's claims and Defendants' defenses; 4) that a Class Member may appear through an attorney at the final hearing; 5) that this is a mandatory class action and Class Members may not opt out of it; 6) the names of Class Counsel; 7) the binding effect of a class judgment

on Class Members; 8) the reason Class Members are receiving the notice; 9) the date, time, and location of the final settlement hearing; 10) portions of the proposed Plan of Allocation, 11) information on the attorney's fees and expenses sought by Class Counsel; and 12) a summary of the settlement. Doc. No. 217-3. Specifically as to the Class Member to whom it is sent, the Proposed Notice includes the Class Member's estimated settlement payment and the Class Member's ESOP shares. *Id.* at 2. The Proposed Notice also contains a brief description of ERISA. *Id.* at 3.

The Proposed Notice provides procedures for objecting to the settlement. *Id.* at 8. It states that to object to the settlement, a class member must file a written objection with the Court and send it to Class Counsel by a certain date specified in the Proposed Notice. *Id.* The objection should contain the case name; case number; the objector's name, address, and telephone number; all the reasons for objecting, including supporting papers; and the objector's or objector's attorney's signature. *Id.*

The Proposed Notice states that Class Counsel expended over $50,000 in out-of-pocket expenses on this case and that they anticipate incurring an additional "$10,000, primarily to administer the settlement." *Id.* at 7. The Proposed Notice states that Class Counsel will seek an award of attorney's fees not exceeding 33% of the Settlement Amount, expenses not to exceed $100,000, and "a

service award out of the Settlement Amount to Plaintiff Stephanie Woznicki of up to $10,000 . . . ." *Id.* Although the Proposed Notice states that the Service Award will be paid out of the Settlement Fund, the fact that the award of attorney's fees and expenses will be paid from the Settlement Amount is stated three pages earlier under the section entitled "What Are the Terms of The Settlement Agreement?" *Id.* at 4, 7.

The Proposed Notice does not instruct objecting Class Members to include their status in the Plan, and the name and address of their counsel, but the Proposed Preliminary Order does contain these requirements. Doc. No. 208-3 at 8; Doc. No. 208-4 at 8; Doc. No. 217-3 at 8. The Proposed Notice also lists the case number as either "18-cv-2090" or "18-2090." Doc. No. 217-3 at 2, 8. Doc. No. 211 at 29. These deficiencies do not prohibit finding the Proposed Notice adequate.

In the Motion, the parties do not renew their request that the Court enter the Proposed Preliminary Order attached to the original motion. Doc. No. 216 at 10. Thus, a contradiction between the Proposed Notice attached to the Motion and the Proposed Preliminary Order attached to the original motion is of no consequence.

Regarding the case number, in the notice that is sent to the Class Members, it should be corrected to "6:18-cv-2090-WWB-GJK." This clerical correction does not prevent finding that the Proposed Notice is the best as is practicable.

The content and method of the Proposed Notice demonstrate compliance with Rule 23, including subsection (c)(2)(B), and the requirements of due process, and is the best notice that is practicable under all the circumstances.

III.   **CONCLUSION**

The Agreement is fair, reasonable, and adequate, and the proposed notice is the best as is practicable. Accordingly, it is **RECOMMENDED** that the Court **GRANT** the Motion (Doc. No. 216), subject to modifying the notice to reflect the case number as 6:18-cv-2090-WWB-GJK.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual findings or legal conclusions the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1. **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

RECOMMENDED in Orlando, Florida, on August 25, 2021.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy