# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| STEPHANIE WOZNICKI, | Civil Action No. 6:18-cv-2090-WWB-GJK |
| *Plaintiff*, | |
| vs. | **CLASS COUNSEL'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| RAYDON CORPORATION, *et al.*, | |
| *Defendants* | |

# TABLE OF CONTENTS

I. BACKGROUND ...................................................................................1

    A.    Factual Background.................................................................1

    B.    Procedural Background .........................................................3

    C.    The History of Settlement Discussions .................................4

    D.    Terms of the Settlement And Plan of Allocation ..................6

II. ARGUMENT .....................................................................................7

    A.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Merits Final Approval. ..........................................................7

        1.    The Bennett Factors Support Final Approval of the Settlement.................................................................8

            a.    Plaintiff's Likelihood of Success Supports the Settlement. ......................................................8

            b.    The Settlement Is Within the Range of Possible Recoveries......................................................13

            c.    The Complexity, Expense, And Duration of Further Litigation Support Final Approval of the Settlement. ...................................................16

            d.    No Objections to the Settlement Have Been Submitted.....................................................18

            e.    The Stage of the Proceedings at Which the Settlement was Achieved Weighs in Favor of Final Approval. ....................................................20

        2.    The Judgment of Experienced Class Counsel Should Be Afforded Great Weight. .........................................21

        3.    The Settlement Is Not a Product of Collusion Between the Parties.......................................................22

    B.    The Plan of Allocation Is Fair, Reasonable, and Adequate. ...............24

III. CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Anixter v. Home–Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ....................................................................12

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ........................................................ 8, 18, 22

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) .......................................................................8

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014) ....................................................................14

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   587 F.Supp.2d 1266 (N.D. Ga. 2008)..........................................................24

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   No. 1:00-CV-2838-WBH, 2008 WL 11336122 (N.D. Ga. Oct. 20, 2008).....9

*Chao v. Hall Holding Co, Inc.*,
   285 F.3d 415 (6th Cir. 2002) .......................................................................13

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F.Supp.2d 179 (S.D.N.Y. 2012), *aff'd, Charron v. Wiener*, 731 F.3d 241
   (2d Cir. 2013)................................................................................................20

*Chesemore v. All. Holdings, Inc.*,
   No. 09-CV-413-WMC, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) .......25

*Chesemore v. Fenkell*,
   829 F.3d 803 (7th Cir. 2016) .......................................................................13

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   1:04-CV-3066-JEC, 2012 WL 12906499 (N.D. Ga. Oct. 26, 2012) 16, 17, 18

*Comer v. Gerdau Ameristeel US Inc.*,
   No. 8:14-CV-607-T-23AAS, 2017 WL 5256871 (M.D. Fla. Nov. 13, 2017)
   ......................................................................................................................21

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................8, 21

*CSX Transp., Inc. v. State Bd. of Equalization of Ga.*,
    448 F.Supp.2d 1330 (N.D. Ga. 2005)............................................................9

*Cunningham v. Wawa, Inc.*,
    No. CV 18-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021)....................16

*Ferron v. Kraft Heinz Foods Co.*,
    No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) .........9

*Fish v. Greatbanc Tr. Co.*,
    09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ..............................11

*Florin v. Nationsbank of Ga., N.A.*,
    60 F.3d 1245 (7th Cir. 1995) ........................................................................11

*Gamache v. Hogue*,
    338 F.R.D. 275 (M.D. Ga. 2021)..................................................................10

*Greco v. Ginn Dev. Corp.*,
    635 Fed. Appx. 628 (11th Cir. 2015) .............................................................8

*Griffin v. Habitat for Humanity Int'l, Inc.*,
    157 F.Supp.3d 1301 (N.D. Ga. 2015)...........................................................10

*Gutierrez v Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ........................................................................12

*Henderson v. Emory Univ.*,
    No. 1:16-CV-02920-CAP, 2020 WL 9848975 (N.D. Ga. Nov. 4, 2020) .....15

*Henley Mining, Inc. v. Parton*,
    No. 617CV00092GFVTHAI, 2020 WL 4495466 (E.D. Ky. Aug. 3, 2020)...9

*Holmes v. Cont'l Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) ....................................................................24

*Hurtado v. Rainbow Disposal Co.*,
    No. 817CV01605JLSDFM, 2021 WL 2327858 (C.D. Cal. May 21, 2021) .15

*Hurtado v. Rainbow Disposal Co.,*
No. 817CV01605JLSDFM, 2021 WL 79350 (C.D. Cal. Jan. 4, 2021) ........11

*In re Chicken Antitrust Litig. Am. Poultry,*
669 F.2d 22 (5th Cir. 1982) ...........................................................................24

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................11

*In re Domestic Air Transp. Antitrust Litig.,*
148 F.R.D. 297 (N.D. Ga. Mar. 22, 1993) ....................................................17

*In re Health Ins. Innovations Sec. Litig.,*
No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021)
...................................................................................................................20

*In re Home Depot, Inc., Customer Data Security Breach Litig.,*
No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016). 16,
18

*In re Motorsports Merch. Antitrust Litig.,*
112 F.Supp.2d 1329 (N.D. Ga. 2000).................................................... 13, 17

*In re Sunbeam Secs. Litig.,*
176 F.Supp.2d 1323 (S.D. Fla. 2001) ...........................................................24

*In re U.S. Oil and Gas Litig.,*
967 F.2d 489 (11th Cir. 1992) ........................................................................7

*In re United States Sugar, Corp. Litig.,*
No. 08-80101-CIV, 2009 WL 10668521 (S.D. Fla. Oct. 7, 2009)...............25

*In re WorldCom, Inc. ERISA Litig.,*
No. 02-civ- 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ......14

*Ingram v. the Coca-Cola Co.,*
200 F.R.D. 685 (N.D. Ga. 2001) ...................................................... 16, 21, 22

*Johnson v. Fujitsu Tech. and Bus. of Am., Inc.,*
16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ..............14

*Johnson v. Montgomery County Sheriff's Dep't,*
604 F.Supp. 1346 (M.D. Ala. 1985)..............................................................24

*Johnson v. NPAS Sols., LLC*,
　　975 F.3d 1244 (11th Cir. 2020) .......................................................................6

*Junior v. Infinity Ins. Co.*,
　　No. 6:18-CV-1598-WWB-EJK, 2021 WL 4944311 (M.D. Fla. Apr. 29,
　　2021) ........................................................................................... 18, 21, 23

*Kincade v. Gen.Tire & Rubber Co.*,
　　635 F.2d 501 (5th Cir. 1981) .......................................................................19

*Lipuma v. Am. Express Co.*,
　　406 F.Supp.2d 1298 (S.D. Fla. Dec. 20, 2005) ............................................20

*Molina v. Ace Homecare LLC*,
　　No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662 (M.D. Fla. June 28,
　　2019) ......................................................................................................20

*Nelson v. Mead Johnson & Johnson Co*.,
　　484 Fed. Appx. 429 (11th Cir. 2012) .......................................................8, 22

*Perez v. Bruister*,
　　823 F.3d 250 (5th Cir. 2016) .......................................................................13

*Pfeifer v. Wawa, Inc.*,
　　No. CV 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ....................25

*Pledger v. Reliance Tr. Co.*,
　　No. 1:15-CV-4444-MHC, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ......14

*Reetz v. Lowe's Companies, Inc.,*
　　No. 518CV00075KDBDCK, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021)
　　...................................................................................................................11

*Robbins v. Koger Props., Inc.*,
　　116 F.3d 1441 (11th Cir. 1997) ...................................................................12

*Rozo v. Principal Life Ins. Co*.,
　　4:14-CV-00463-JAJ, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) .............12

*Walsh v. Bowers*,
　　CV 18-00155 SOM-WRP, 2021 WL 4240365 (D. Haw. Sept. 17, 2021)....11

*Walsh v. Vinoskey,*
    19 F.4th 672 (4th Cir. 2021) ............................................................................10

*Warren v. City of Tampa*,
    693 F.Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) ..22

## Other Authorities

Fed. R. Civ. P. 23 ........................................................................................................8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's Order of October 26, 2021 (ECF No. 220), Class Counsel respectfully moves for final approval of the Settlement and the Plan of Allocation. The Settlement and the Plan of Allocation are fair, adequate, and reasonable. All relevant factors weigh in favor of final approval the Settlement. The Plan of Allocation proposes distributing the settlement proceeds based on the number of shares in the accounts of class members, which is a commonly accepted method of distribution in ESOP litigation. Therefore, this Motion should be granted.

## I.  BACKGROUND

### A.  Factual Background

This is an ERISA class action alleging fiduciary breaches and other violations arising out of a September 30, 2015, transaction (the "ESOP Transaction"). In the ESOP Transaction, the then-shareholders of Raydon Corporation ("Raydon") sold 100% of the stock of Raydon to Raydon, and Lubbock, as Trustee of the ESOP, concomitantly purchased 100% of the stock for the Raydon Corporation Employee Stock Ownership Plan ("ESOP" or the "Plan") for $60.5 million. The Amended Complaint (ECF No. 67) ("Am. Compl.") alleges that the ESOP Transaction was for more than fair market value, that the ESOP fiduciaries breached their fiduciary duties, and ESOP fiduciaries and other parties-in-interest (i.e., the relatives and family trusts) engaged in prohibited transactions.

Counts I and II allege that the Selling Shareholder Defendants and Defendant Lubbock violated ERISA § 406, 29 U.S.C. § 1106, by engaging in a prohibited transaction under ERISA by, among other things: approving a purchase price for Raydon stock that exceeded its fair market value; allowing parties in interest to sell their interests in Raydon at more than fair market value; and causing the Plan to borrow millions of dollars from a party in interest to finance the ESOP Transaction. Am. Compl. ¶¶ 91-104. Count III alleges that Defendant Lubbock Bank breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, by engaging in the 2015 Transaction without undertaking an appropriate investigation into the value of Raydon stock. *Id.* ¶¶ 105-114. Count V alleges that the Director Defendants, Committee Defendants, and Raydon breached their duty to monitor the fiduciaries and engage in efforts to remedy the fiduciary breaches. *Id.* ¶¶ 129-139. Finally, Count IV alleges that Defendants Lubbock, Donald K. Ariel, and David P. Donovan violated ERISA § 410, 29 U.S.C. § 1110, by including indemnification provisions in the ESOP Trust Agreement that are void against public policy. Lubbock and the Raydon Defendants have denied liability and asserted affirmative defenses including lapse of the statute of limitations, unclean hands, lack of standing, and that the 2015 Transaction was exempt under ERISA § 408, 29 U.S.C. § 1108. ECF No. 138 at 25-26; ECF No. 139 at 44-45.

## B.    Procedural Background

Plaintiff filed her initial Complaint (ECF No. 1) on December 5, 2018, and her Amended Complaint (ECF No. 67) on April 23, 2019. Defendants moved to dismiss the Amended Complaint. ECF Nos. 88, 89. The Court denied Defendants' motion as to all counts but Count IV. ECF No. 131. Plaintiff moved to further amend the complaint to add factual allegations in support of a repleaded Count IV. ECF No. 175. Defendants opposed the amendment. ECF Nos. 179, 180. On June 3, 2020, the Court denied Plaintiff's motion to amend. ECF No. 182.

Plaintiff moved for class certification. ECF No. 96. Over Defendants' opposition, the Court granted the motion for class certification, appointed Plaintiff Stephanie Woznicki as Class Representative, and certified the following Class:

> All participants in the Raydon Corporation Employee Stock Ownership Plan from September 30, 2015, or any time thereafter, who vested under the terms of the Plan and those participants' beneficiaries. Excluded from the Class are Defendants and their immediate family (including any person defined as a relative under 20 U.S.C. § 1002(15)); any fiduciary of the Plan; the officers and directors of Raydon Corporation or of any entity in which any Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

ECF No. 163 at 4-5. Both before and after certification of the Class, Class Counsel engaged in substantial discovery including motion practice over discovery disputes. ECF No. 208-1 ("Feinberg Decl.") ¶ 3; *e.g.* ECF Nos. 168, 177, 184, 188. Plaintiff sought to compel the production of documents by Lubbock, ECF No. 168,

which was granted in part, ECF No. 176. Plaintiff also filed motions to compel

production of documents by the Raydon Defendants (ECF No. 177) by the Selling

Shareholder Defendants (ECF No. 184), and by non-party ButcherJoseph & Co.

(ECF No. 196-06). Defendants sought the imposition of protective orders relating

to privileged and confidential material, ECF Nos. 178, 188, over Plaintiff's

objections. ECF Nos. 189, 195.

### C.     The History of Settlement Discussions

On May 13, 2019, the parties engaged in a mediation with Retired

Magistrate Judge Morton Denlow. ECF No. 208-1 ¶ 4. While no settlement was

reached during the full-day mediation, Judge Denlow continued to work with the

parties after the mediation. *Id*. Even as the parties vigorously litigated this Action,

they continued settlement discussions facilitated by Judge Denlow. *Id*. The parties

made progress with the assistance of Judge Denlow, but settlement discussions for

a global settlement reached an impasse. *Id*. As a result, Class Counsel conducted

separate negotiations directly with counsel for Lubbock and reached as settlement

in principle with Lubbock Bank on July 15, 2020.  Thereafter, Class Counsel

reached a settlement in principle with the Raydon Defendants on July 20, 2020. *Id*.

The Parties ultimately executed a single, comprehensive Settlement Agreement on

August 25, 2020. *Id*.

The parties filed a joint motion for preliminary approval of the Settlement on August 26, 2020, on which Magistrate Judge Kelly issued a report recommending that the preliminary approval be denied without prejudice on January 29, 2021. ECF No. 211. As part of that report and recommendation, Magistrate Judge Kelly identified specific issues with the settlement that could be modified. *See id.* Class Counsel and Defendants' counsel agreed to modify the settlement agreement and did not object to the report and recommendation. ECF No. 212. After no party objected to the report and recommendation, the Court denied preliminary approval without prejudice on February 17, 2021. ECF No. 213.

Class Counsel entered into an Amended Settlement Agreement (ECF No. 217-1) with Defendants on behalf of the Class on May 3, 2021, to address the concerns raised by the Court, and filed a Joint Renewed Motion for Preliminary Approval that same day. ECF No. 216. The Court granted preliminary approval on October 26, 2021. ECF No. 220.

Since the Court preliminary approval to the Settlement, Class Counsel and Defendants have worked diligently to follow the Court's order. Class Notice was sent to the Class on November 16, 2021. ECF No. 222 ¶ 4. Class Counsel filed its motion for attorneys' fees on December 15, 2021. ECF No. 229. Class Counsel also moved to appoint two absent members of the Class as additional Class Representatives, Mr. Paul Porter and Ms. Briana Tatum (ECF No. 230), which the

Court granted on January 18, 2022. ECF No. 232. Also, on January 18, 2022, the

Settlement Administrator provided a declaration no Class member has submitted a

challenge to the ESOP account data and no Class Member submitted an objection

to the settlement to the Settlement Administrator. ECF No. 233-1. No Class

member filed any objection to the Settlement with the Court.

### D. Terms of the Settlement And Plan of Allocation

As part of the Settlement, Defendants agreed to pay $2.4 million

("Settlement Amount") into the Settlement Fund. ECF No. 217-1 ("Settlement") ¶

III.1. The Settlement Agreement allows Co-Lead Class Counsel will seek a

maximum award of attorneys' fees of thirty-three percent (33%) and a maximum

award for expenses of $100,000, and a maximum Service Award of $10,000.00 for

Ms. Woznicki.[1] The amount remaining after deduction from the Settlement Fund

for (i) taxes (or reserves to pay taxes), (ii) settlement administration fees, (iii)

Court-approved attorneys' fees or expenses, and (iv) any Service Award, shall

constitute the "Net Settlement Amount." Settlement § I.EE. The Net Settlement

Amount will be distributed to the Class Members pursuant to the Plan of

---

[1] The Settlement provides that Plaintiff would move for a Service Award only "if consistent with Eleventh Circuit law." On September 17, 2020, the Eleventh Circuit held that such awards are unlawful. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020). While a petition for rehearing en banc has been pending in *Johnson* since October 22, 2020, it remains controlling law. Plaintiff has thus not sought any Service Award and none will be paid.

Allocation. *Id.* § IV.4. The proposed Plan of Allocation provides that for each Class Member will receive a pro rata share of the Net Settlement Fund based upon the number of vested Raydon Corporation shares allocated to that Class Member's ESOP account, as a fraction of the total number of vested shares allocated to Class Members' ESOP accounts. ECF No. 217.

In exchange for payment of the Settlement Amount by Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiff and the Class will release any claims which were or could have been asserted in the Litigation, either individually or on behalf of the ESOP related to the 2015 ESOP Transaction (or any fees or costs). Settlement § XIII.1. Lubbock and the Raydon Defendants are also releasing Plaintiff and the Class in the Settlement Agreement and agreeing not to challenge the correctness of the data on which the settlement is based. *Id.* § XIIII.3-4. The released parties, released claims, and the covenant not to sue are set forth in full in the Settlement Agreement. *Id.* § XIII.

## II. ARGUMENT

### A. The Proposed Settlement is Fair, Reasonable, and Adequate, and Merits Final Approval.

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). "Particularly in class action suits, there is an overriding public interest in favor of

settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2] A court may

approve a class action settlement pursuant to Rule 23(e) "only after a hearing and

on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The

Eleventh Circuit has identified the following factors that a court should consider in

determining whether a settlement is fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a
> settlement is fair, adequate and reasonable; (4) the complexity, expense
> and duration of litigation; (5) the substance and amount of opposition
> to the settlement; and (6) the stage of proceedings at which the
> settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In making that

determination, the court may rely on "the judgment of experienced counsel for the

parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th

Cir. 2012). In addition, the court must find that the class action settlement "is not a

product of collusion between the parties." *Bennett*, 737 F.2d at 986.

### 1. The Bennett Factors Support Final Approval of the Settlement.

#### a. Plaintiff's Likelihood of Success Supports the Settlement.

Settlement is favored where "there [are] substantial hurdles that affect[] the

class's likelihood of succeeding on the merits of its claims." *Greco v. Ginn Dev.*

---

[2] Fifth Circuit decisions before October 1, 1981, are binding in the Eleventh
Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

*Corp.*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) (affirming approval of class action settlement). Here, while Class Counsel maintains the claims of the Amended Complaint are meritorious and strong, Class Counsel also recognizes that there were significant risks to continued litigation.

First, there were significant risks on both on liability and remedies, particularly the appropriate valuation of Raydon stock at the time of the ESOP Transaction. There would have been competing expert testimony offered by Plaintiff and Defendants, a battle of the experts. *CSX Transp., Inc. v. State Bd. of Equalization of Ga.*, 448 F.Supp.2d 1330, 1339 (N.D. Ga. 2005) ("One of the problems with subjecting complex issues like valuation to judicial determination is that the court generally must choose among the competing claims of experts"). And "[i]n the battle of experts, it is virtually impossible to predict with certainty which testimony will be credited." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008). Courts have found that this is a litigation risk that weighs in favor of settlement. *Id.*; *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *9 (S.D. Fla. July 13, 2021) (same). Business valuation is frequently described "as much an art as it is a science," *Henley Mining, Inc. v. Parton*, No. 617CV00092GFVTHAI, 2020 WL 4495466, at *3 (E.D. Ky. Aug. 3, 2020), a reality that heightens the potential risks at trial. Because the amount of

overpayment would have determined the amount of loss to the ESOP, these risks also would have affected the measure of any potential monetary recovery.

In addition, a critical issue in establishing the amount of monetary relief for the Class would have been whether substantial post-transaction write-downs of ESOP debt limited the relief available. *See* ECF No. 208-1 ¶ 5. The Raydon Defendants and Lubbock likely would have argued this should reduce the amount of their liability and therefore the amount that the Class could recover. Just last month, the Fourth Circuit reduced the monetary relief achieved by the Department of Labor in an ESOP stock overpayment class action by $4.6 million, reflecting the approximate amount of post-transaction loan forgiveness in that case. *Walsh v. Vinoskey,* 19 F.4th 672, 682 (4th Cir. 2021). Thus, the significant uncertainty attached to determining the likely monetary relief in the event of a judgment for Plaintiff weighs in favor of approval of the Settlement.

Second, as courts in this Circuit recognize, ERISA actions are highly complex and difficult to litigate. *E.g., Gamache v. Hogue*, 338 F.R.D. 275, 289 (M.D. Ga. 2021) ("ERISA… is a dense regulation and claims arising from it are complex."); *Griffin v. Habitat for Humanity Int'l, Inc.*, 157 F.Supp.3d 1301, 1306 (N.D. Ga. 2015) ("[T]he law governing ERISA claims is complex and, at times, virtually incomprehensible to all but the most studied and skilled."). This complexity creates substantial litigation risk. *In re Delphi Corp. Sec., Derivative &*

"ERISA" Litig., 248 F.R.D. 483, 496 (E.D. Mich. 2008) (granting settlement and reasoning the risk of litigation "is even more acute in the complex areas of ERISA law"). Even among the complexity of ERISA cases, "ESOP cases are often cited as the most complex of ERISA cases." *Hurtado v. Rainbow Disposal Co.,* No. 817CV01605JLSDFM, 2021 WL 79350, at *4 (C.D. Cal. Jan. 4, 2021). The Seventh Circuit's observation over 25 years ago remains true today: "very few areas of the law are as unsettled and complex as ESOP valuation." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1248 (7th Cir. 1995). These remain significant challenges on summary judgment and at trial.

Despite Class Counsel's experience and success in other ESOP cases, Class Counsel recognized that ERISA generally and ESOP cases specifically are risky and difficult to litigate cases and that courts can and do rule in favor of defendants. *E.g. Walsh v. Bowers*, CV 18-00155 SOM-WRP, 2021 WL 4240365, at *1 (D. Haw. Sept. 17, 2021) (finding for defendants and against Department of Labor after one-week bench trial)*; Fish v. Greatbanc Tr. Co.*, 09 C 1668, 2016 WL 5923448, at *1 and *68 (N.D. Ill. Sept. 1, 2016) (finding for defendants on all claims in ESOP fiduciary breach case after 34 trial days); *see also e.g. Reetz v. Lowe's Companies, Inc.,* No. 518CV00075KDBDCK, 2021 WL 4771535, at *1 (W.D.N.C. Oct. 12, 2021) (finding for defendants in ERISA fiduciary breach case following five day bench trial); *Rozo v. Principal Life Ins. Co*., 4:14-CV-00463-

JAJ, 2021 WL 1837539, at *1 (S.D. Iowa Apr. 8, 2021) (finding for defendants on all claims in ERISA fiduciary breach case following trial).

Even if Plaintiff's claims survived summary judgment and Plaintiff prevailed at trial, Defendants would certainly appeal given the complexity of the legal issues involved and the substantial liability at issue. Even class action plaintiffs who succeed at trial have sometimes have such verdicts reversed on appeal. For example, following a jury trial in a securities class action, the Eleventh Circuit reversed an $81 million judgment, found that the trial court should have entered judgment for the defendant as a matter of law for the plaintiff's failure to establish loss causation, and dismissed with prejudice. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997); *see also Gutierrez v Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012) (vacating $203 million restitution award following bench trial); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

Even when plaintiffs and the class succeed at trial and have the trial decision affirmed on appeal, the appellate process leads to significant delay—as Co-Lead Class Counsel R Joseph Barton knows personally from his experience litigating and as lead trial counsel in the Trachte ESOP litigation. "After extensive litigation and a bench trial," consisting of a liability trial in 2012 and a remedies trial in 2013, the trial court awarded nearly $20 million in relief (with prejudgment

interest) and the Seventh Circuit ultimately upheld the district court's trial decision in July 2016. *Chesemore v. Fenkell*, 829 F.3d 803, 809 (7th Cir. 2016). Thus, even a successful trial and appeal would result in significant delay for members of the Class receiving money from this case.

### b. The Settlement Is Within the Range of Possible Recoveries.

"The Court must look to the range of possible damages that Plaintiffs could recover at trial and then combine this assessment with the likelihood of Plaintiffs' success at trial to determine whether the settlement falls within the range of recoveries that is fair." *In re Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329, 1334 (N.D. Ga. 2000). In cases, such as this one, alleging that Defendants violated ERISA by causing an employee stock ownership plan to pay too much for the stock of a privately-held company, the most common measure of loss is the difference between what the plan paid for the stock and what the stock was worth at the time of the transaction. *E.g., Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Chao v. Hall Holding Co, Inc.*, 285 F.3d 415, 423, 444 (6th Cir. 2002).

Applying that theory, the consulting valuation expert hired by Class Counsel opined that the Plan overpaid by an amount between approximately $4.6 million and $8.9 million. Feinberg Decl. ¶ 5. Based on that opinion, the Settlement payment of $2.4 million amounts to between approximately 27% and 52% of the range of potential recovery for the ESOP if Plaintiff was successful on her claims.

*Id.* Thus, this case falls within the same range of reasonableness that other courts found in cases where there was a specific comparison of settlement value with the "best possible recovery."

In the instant case, the Class Members will receive approximately 27% of the "best possible recovery." This estimate of possible relief takes into account that Defendants holding promissory notes issued as part of the ESOP transaction returned $10 million in a claw-back in 2018. *Id.* As a result, the claw-back substantially reduced the likely potential recovery for the Class in this case. *Id.* This estimate does not include later write-downs of the promissory notes, which would further reduce the potential recovery if the Court agreed with Defendants on this issue. *Id.* This recovery compares favorably with other complex ERISA class action cases. *E.g. Johnson v. Fujitsu Tech. and Bus. of Am., Inc*., 16-CV-03698-NC, 2018 WL 2183253, at *5 (N.D. Cal. May 11, 2018) (approving 10% recovery); *Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% recovery); *In re WorldCom, Inc. ERISA Litig*., No. 02-civ- 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% recovery).

The Settlement also compares favorably to other ERISA class settlements in terms of monetary relief per Class Member. *See Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2021 WL 2253497, at *3 (N.D. Ga. Mar. 8, 2021) (approving $39.8M settlement for 222,646 class members for average gross

recovery of $174.83 each); *Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975, at *2 (N.D. Ga. Nov. 4, 2020) (approving $16.75M settlement for 77,108 class members in ERISA case for average gross recovery of $217.23 each); *see* ECF No. 208 at 20 (collecting ESOP cases). Based on the Class list provided by Raydon Defendants, there are 181 participant Class Members. ECF No. 226-1 ¶ 3. As a result of this settlement, each participant Class Member will receive an average gross recovery of approximately $13,000.00 before fees, costs and other settlement expenses are deducted. Downes Decl. ¶ 2. This is an excellent result for the Class, and the monetary relief provided by this Settlement alone weighs in favor of class certification.

In addition, the Settlement provides important non-monetary relief. The monetary component of the settlement will be distributed to the accounts of the Class Members in the now-terminated ESOP, then spun off to the successor to the Raydon 401k Plan. Settlement § IV.4. This will preserve the tax-qualified character of the funds and provide substantial tax benefits to Class Members. *Hurtado v. Rainbow Disposal Co.*, No. 817CV01605JLSDFM, 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (noting this would have effect of "preserving the tax advantages that Class Members would have enjoyed under their ESOP allocations"); *Cunningham v. Wawa, Inc.*, No. CV 18-3355, 2021 WL 1626482, at

*7 (E.D. Pa. Apr. 21, 2021) (describing this mechanism as "innovative"). Thus, the Settlement also provides important non-monetary consideration.

> **c.** **The Complexity, Expense, And Duration of Further Litigation Support Final Approval of the Settlement.**

In analyzing whether the complexity, expense, and duration of litigation support final approval of a proposed settlement, courts have compared the benefits of immediate recovery to the uncertainties of complex, expensive, and potentially lengthy litigation. *Columbus Drywall & Insulation, Inc. v. Masco Corp*., 1:04-CV-3066-JEC, 2012 WL 12906499, at *3 (N.D. Ga. Oct. 26, 2012) (comparing benefits of "certain and substantial recovery" provided by settlement with "no assurance of any recovery, let alone a larger one, if the litigation were to continue against [defendant] through trial and the delay of an appeal"); *Ingram v. the Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (comparing expenses and duration of further litigation with "the strength of the relief [and] the added benefit of obtaining it now rather than years from now"). The uncertainty as to "whether future recovery at trial could achieve more than the relief made available in the Settlement" favors final approval. *In re Home Depot, Inc., Customer Data Security Breach Litig.,* No. 1:14-md-02583-TWT, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016). By contrast, "guaranteed and immediate recovery for the Settlement Class" must be considered versus "the mere possibility of future relief after lengthy and expensive litigation." *Id.*

At the time the Parties reached a settlement, this case was still proceeding through discovery. Plaintiff would have needed to continue with discovery, including enforcement of third-party subpoenas, several depositions, and expert disclosures. Given the number of discovery motions already filed in this Action, *see* ECF Nos. 168, 177, 184, the "expenses associated with this action [would] only grow if the litigation proceeds." *Columbus Drywall*, 258 F.R.D. at 559; *In re Motorsports Merch.*, 112 F.Supp.2d. at 1338 (approving settlement in which the Parties still faced summary judgment motions, trial, and possible appeals). Plaintiff would have surely faced and/or brought summary judgment motions. Even if Plaintiff succeeded on summary judgment or trial, she would have faced the prospect of an appeal.

As "the settlement offers plaintiffs the opportunity to obtain an immediate, certain recovery" the Settlement warrants preliminary approval. *Columbus Drywall*, 258 F.R.D. at 559; *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. Mar. 22, 1993) (approving settlement of complex matter that faced trial and potential appeal and reasoning it was "proper to take the bird in the hand instead of a prospective flock in the bush"). Further, as discussed above, the Settlement provides significant monetary and non-monetary relief. *Supra* § II.A.2. The guaranteed and immediate recovery for the Settlement Class by this Settlement

outweighs the mere possibility of future relief given the complexity, expense, and duration of likely further litigation.

### d. No Objections to the Settlement Have Been Submitted.

The Court must consider "the substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. "[A] low percentage of objections demonstrates the reasonableness of the Settlement and supports the Settlement's approval." *Home Depot*, 2016 WL 6902351, at *6. The fact that not one class member has objected to the settlement "weighs heavily in favor of settlement approval." *Columbus Drywall,* 2012 WL 12906499, at *4; *Junior v. Infinity Ins. Co.*, No. 6:18-CV-1598-WWB-EJK, 2021 WL 4944311, at *4 (M.D. Fla. Apr. 29, 2021) (Berger, J.) (holding absence of any objections favored final approval of settlement). Here, notice was sent out to the Class on November 16, 2021. ECF No. 222 ¶ 4. Class Members had until December 31, 2021, to file objections to the Settlement. ECF No. 223. No objection has been filed by any Class Member.

Class Counsel advised the Court on December 29, 2021, that Plaintiff Woznicki had informed Class Counsel she might object to the Settlement but had not made a final decision. ECF No. 230 at 4. Plaintiff Woznicki ultimately did not submit any objection to the Settlement. ECF No. 233-1 ¶ 5. In addition, the Court has appointed two additional Class Representatives, Briana Tatum and Paul Porter, both of whom support the Settlement. ECF No. 232; Porter Decl. ¶ 8; Tatum Decl.

¶ 2. Even if Plaintiff Woznicki belatedly decides to object, binding precedent in this Circuit holds that the disagreement of one or more class representatives with a proposed settlement does not bar final approval. *Kincade v. Gen.Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) ("[T]he assent of named plaintiffs is not a prerequisite to the approval of a settlement.").[3] In *Kincade*, five of the original six plaintiffs (along with one other class member) appealed the final approval of a settlement in an employment discrimination class action on the grounds that the six named plaintiffs had instructed their lawyer, class counsel in that case, that they opposed the settlement, but class counsel agreed to the settlement over their objections. *Kincade*, 635 F.2d at 503. The Fifth Circuit rejected this argument as "easily disposed of," and held that the objection of the named plaintiffs did not preclude approval of the settlement. *Id.* (affirming final approval of settlement.). Other courts of appeal have held that "unanimous disapproval of the settlement by the named plaintiffs does not require that the court either refuse to accept the settlement or replace the named plaintiffs." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 191 (S.D.N.Y. 2012) (citing cases),[4] *aff'd, Charron v. Wiener*,

_____

[3] As *Kincade* was decided on January 30, 1981, it remains binding precedent in this Circuit. *See Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020) (recognizing *Kincade* is still binding and reaffirming its holding).
[4] *See Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226, 1228 (8th Cir. 1982) (affirming approval of settlement over objections of two named plaintiffs); *Laskey v. Int'l Union*, 638 F.2d 954, 957 (6th Cir. 1981) ("Accepting a settlement over the objections of the named representatives is not necessarily an abuse of discretion.").

731 F.3d 241, 254 (2d Cir. 2013) (affirming approval of settlement where all five

named class representatives rejected it). Thus, the law is clear that Class Counsel

has the authority to settle on behalf of the class over the objections of the class

representatives.

> **e.** **The Stage of the Proceedings at Which the Settlement was Achieved Weighs in Favor of Final Approval.**

A court evaluates the stage of the proceedings at which the settlement is

achieved "to ensure that Plaintiffs had access to sufficient information to

adequately evaluate the merits of the case and weigh the benefits of settlement

against further litigation." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324

(S.D. Fla. Dec. 20, 2005). Extensive discovery over years of litigation

demonstrates that class counsel is well informed for purposes of evaluating the

merits of the claims and their likelihood of success. *In re Health Ins. Innovations

Sec. Litig.*, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881, at *9 (M.D. Fla. Mar.

23, 2021) (holding three years of litigation including motion to dismiss, class

certification, and extensive discovery favored settlement), *report and

recommendation adopted,* 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *Molina v.

Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *3

(M.D. Fla. June 28, 2019) (holding extensive discovery favored settlement), *report

and recommendation adopted,* No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931

(M.D. Fla. July 17, 2019); *Comer v. Gerdau Ameristeel US Inc.*, No. 8:14-CV-607-

T-23AAS, 2017 WL 5256871, at *2 (M.D. Fla. Nov. 13, 2017) (same). Here, the parties had conducted extensive fact discovery and Class Counsel had hired a consulting valuation expert.

Class Counsel served dozens of requests for production of documents on each of the defendants, collecting and reviewing tens of thousands of pages of responsive materials, and took several depositions, including a Rule 30(b)(6) deposition of Raydon itself. Feinberg Decl. ¶ 3. Class Counsel served nine document subpoenas on non-parties and issued a Freedom of Information Act request to the Department of Labor. Downes Decl. ¶ 3. Class Counsel pursued discovery vigorously, including over the robust objections of Defendants. *See* ECF No. 176 (granting motion to compel Lubbock's production of documents responsive to 22 document requests). This factor thus favors final approval.

## 2. The Judgment of Experienced Class Counsel Should Be Afforded Great Weight.

Where experienced counsel represents the settlement class, the court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *Junior*, 2021 WL 4944311, at *4 (Berger, J.) (holding the view of experienced class action litigators favored final approval of settlement); *Ingram*, 200 F.R.D. at 691 (taking into account experienced class counsel's "collective judgment that the benefits of th[e] settlement far outweigh the delay and considerable risk of proceeding to trial");

*Warren v. City of Tampa*, 693 F.Supp. 1051, 1060 (M.D. Fla. 1988) (affording "great weight to the recommendations" of experienced counsel), *aff'd*, 893 F.2d 347 (11th Cir. 1989). Here, Co-Lead Class Counsel have extensive experience litigating in ERISA class actions and ESOP cases in particular. Joseph Barton has more than 20 years of experience successfully litigating and trying a wide variety of ERISA and ESOP class actions, including the trials of two ESOP cases. ECF No. 96-9 ¶¶ 4-6. Daniel Feinberg has litigated ERISA cases for more than 30 years, including numerous ESOP cases. ECF No. 96-11 ¶¶ 4-5. Thus, the judgement of Class Counsel with substantial expertise in this type of litigation further supports that the settlement is fair, adequate, and reasonable.

### 3. The Settlement Is Not a Product of Collusion Between the Parties.

In addition to the *Bennett* factors, a court in granting final approval of a class action settlement must find that the settlement "is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986. Courts have found no collusion where the settlement is "the result of extensive arms-length negotiations." *Nelson*, 484 Fed. Appx. at 435; *Ingram*, 200 F.R.D. at 693 ("examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties"). When the parties reached the settlement with the assistance of a neutral mediator further supports the absence of collusion. *Junior*,

2021 WL 4944311, at *4 (Berger, J.) (holding extensive negotiations overseen by experienced mediator demonstrated absence of collusion).

Here, a mediation was held on May 13, 2019. *Supra* § I.B. No settlement was reached at the mediation but continued to negotiate the settlement with the assistance of an experienced mediator, former Magistrate Judge Morton Denlow. Feinberg Decl. ¶ 4. Settlement discussions were extensive and protracted, and ultimately required separate negotiations between Class Counsel and counsel for each of Lubbock and the Raydon Defendants. *Id*. The parties ultimately reached a settlement in principle with Lubbock on July 15, 2020, and with the Raydon Defendants on July 20, 2020, and finally executed a settlement agreement on August 26, 2020, ECF No. 208-2. Class Counsel further negotiated the terms with Defendants after the Court's denial of the parties' first motion for preliminary approval. *See* ECF No. 217-1. The Settlement requires Defendants to pay a substantial amount of $2.4 million to the ESOP accounts of the Class. Settlement ¶ III.1. Thus, the Settlement is not a product of collusion between the parties but instead the result of hard-fought, arms-length negotiations extending over a period of fifteen months. Because all of the *Bennett* factors weigh in favor of approval, there is no collusion between the parties, and Class Counsel's judgment should be afforded great weight, final approval of the Settlement should be granted.

**B.    The Plan of Allocation Is Fair, Reasonable, and Adequate.**

A court applies the same standard "to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation should be approved where "the formula for the calculation of the payments to class members from the settlement fund provides a fair and reasonable basis upon which to allocate the fund." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F.Supp.2d 1266, 1275 (N.D. Ga. 2008). A class action settlement need not "benefit all class members equally." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). A method of allocating the settlement proceeds is based on legitimate considerations when it considers "certain [relevant] factors in each individual case" of the class member. *Johnson v. Montgomery County Sheriff's Dep't*, 604 F.Supp. 1346, 1347, 1349 (M.D. Ala. 1985); *In re Sunbeam Secs. Litig.*, 176 F.Supp.2d 1323, 1328 & n.2 (S.D. Fla. 2001) (finding plan of allocation "that accounts for the differences in individual class members' losses over the class period" to be fair, adequate, and reasonable).

Here, the proposed Plan of Allocation is for each Class Member to receive a pro rata share of the Net Settlement Fund based upon the number of vested Raydon Corporation shares allocated to that Class Member's ESOP account, as a fraction of the total number of vested shares allocated to Class Members' ESOP accounts.

ECF No. 217-2 (Proposed Plan Allocation). Other courts have approved plans of allocation in ESOP class action settlements based on each class member's pro rata holdings of ESOP shares. *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *13 (E.D. Pa. Aug. 31, 2018) (approving a similar plan of allocation); *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *1 (W.D. Wis. Sept. 5, 2014) (same), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016); *In re United States Sugar, Corp. Litig.*, No. 08-80101-CIV, 2009 WL 10668521, at *8 (S.D. Fla. Oct. 7, 2009) (same). Thus, the method of distribution as set forth in the Plan of Allocation is based on relevant and legitimate considerations, is fair and reasonable, and merits final approval.

## III.    CONCLUSION

For the reasons stated above, Class Counsel's Motion for Final Approval of the Settlement and the Plan of Allocation should be granted.

DATED:     January 25, 2022          Respectfully submitted,

_____

Colin M. Downes (*pro hac vice*)
R. Joseph Barton, CA 212340 (*pro hac vice*)
BLOCK & LEVITON LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
(202) 734-7046
colin@blockleviton.com
jbarton@blockleviton.com

Daniel Feinberg, CA 135983 (*pro hac vice*)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
(510) 269-7998
dan@feinbergjackson.com

Sam J. Smith, Florida Bar No. 818593
Loren B. Donnell, Florida Bar No. 013429
BURR & SMITH, LLP
111 2nd Avenue N.E., Suite 1100
St. Petersburg, FL 33701
(813) 253-2010
ssmith@burrandsmithlaw.com
ldonnell@burrandsmith.com

*Counsel for the Plaintiff & the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2022, I electronically filed the foregoing Class Counsel's Unopposed Motion for Final Approval of Class Action Settlement with the Clerk of the Court using the CM/ECF system, by operation of which it was served on all counsel of record in this case.

_____
Colin M. Downes

**M.D. Fla. L.R. 3.01(g) CERTIFICATE**

I hereby certify that Class Counsel conferred with counsel for the Defendants regarding the relief sought by this motion. Defendants do not oppose the motion.

_____
Colin M. Downes